**William H. SMITH, Petitioner,**

v.

**Carl S. ANDERSON, Respondent,**

No. C-1-95-320.

United States District Court,
S.D. Ohio,
Western Division.

Feb. 22, 2000.

774

Henry Louis Sirkin, Sirkin Pinales Mezibov & Schwartz, Cincinnati, OH, Laurence E Komp, Ohio Public Defender's Office, Columbus, OH, for William H Smith, petitioner.

Charles L Wille, Assistant Attorney General, Capital Crimes Section, Columbus, OH, Betty Montgomery, Ohio Attorney General, Columbus, OH, for Carl S Anderson, respondent.

### ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Petitioner William H. Smith's Second Amended Petition for a Writ of *Habeas Corpus* (doc. 46); Respondent State of Ohio's (hereinafter, "the State" or "Respondent") Amended Return of Writ (doc. 47); and Petitioner's Traverse in Response to Respondent's Return of Writ (doc. 51). The Court also takes into consideration Respondent's Motion to Supplement the State Court Records (docs. 59, 60, & 61).

## I. *INTRODUCTION*

Petitioner William H. Smith (hereinafter, "Smith" or "Petitioner") petitions the Court for a writ of *habeas corpus* pursuant to Title 28 U.S.C. § 2254, *et seq.* [1] Specifically, Petitioner challenges the constitutional sufficiency of his state court convictions as to: Count I for murder during a rape; Count II for murder in the course of an aggravated robbery; Count III for rape; and Count IV for aggravated robbery. Petitioner also challenges the constitutionality of the state court's imposition of a sentence of death for his murder conviction.

---

1. "State Custody; Remedies in Federal Court."

## II. *FACTUAL HISTORY*

The Ohio Supreme Court set out the factual history of this case when it considered Petitioner's direct appeal of his trial court convictions highlighting the evidence adduced at Petitioner's trial. *See State v. Smith,* 61 Ohio St.3d 284, 285–87, 574 N.E.2d 510, 512–14 (1991). The Court repeats this factual history here.

On Saturday afternoon, September 26, 1987, Mary Virginia Bradford, age forty-seven, visited the Race Inn, a neighborhood bar in Cincinnati, Ohio. While at the Race Inn, she had several beers and met, talked, and danced with William H. Smith, appellant, a regular bar patron. She left the Race Inn around 11:45 p.m.

Around 4:00 p.m., on September 27, Marvin Rhodes, Bradford's boyfriend, stopped by her apartment because he had not seen her since Friday, September 25. No one answered the doorbell, but Rhodes found the door unlocked and went in. Rhodes saw blood near the front door and found Bradford in the bedroom. Feeling her face, he found no life in her body and called the police.

Responding police officers found Bradford lying stabbed to death on her bed, nude from the waist down. On the floor, near her bed, police found a woman's pants and panties, blood-stained and turned inside-out, and, on the bed, an oxygen machine used by asthmatics. Forensic examination disclosed a .13 percent blood-alcohol level and revealed sperm in her vagina and on her abdomen.

Near the front door of the apartment, police found a chair, with a pool of blood on it, and, on the floor, blood smears including a bare bloody footprint leading to the bedroom. The apartment was otherwise exceptionally neat and clean, with no signs of disorder, disarray, or a struggle, and police found no murder weapon in the apartment. One color television, one black and white television, and a stack stereo with two speakers were missing from Bradford's apartment.

Dr. Harry J. Bonnell, Chief Deputy Coroner, testified that Bradford died as a result of ten stab wounds to her upper body and consequent loss of blood. She was five feet, three inches tall, weighed one hundred sixteen pounds, and a portion of her lung was missing, which explained her asthmatic condition. Bonnell numbered the wounds one to ten for descriptive purposes (but not indicative of the order in which inflicted).

The most lethal wounds, causing incapacitation within five minutes, were wound eight, a four-inch wound into Bradford's right lung and heart, and wound nine, a four-inch wound into the sternum and the heart's right ventricle. Wound seven, a five-inch puncture into the rib and liver, and wounds eight and nine all fractured bony structures. Wound two, four inches in depth, crossed her neck from left to right. Wound ten punctured the liver and was no more than four inches in depth. Two wounds, one and five, showed no signs of hemorrhage and thus were inflicted after death when the heart was not pumping sufficient blood. Wounds one, three, four, and six were superficial. Bradford's body exhibited no other evidence of injury or trauma such as bruises or defensive wounds, and Bonnell observed no twisting motion in the stab wounds that would indicate a violent struggle. All the wounds could have been inflicted by the same single-edged knife.

On September 28, 1987 homicide detectives went to where Smith lived, the home of Bertha Reid, Smith's mother, which was about four blocks from Bradford's home. When police arrived, Smith was not at home, and Reid let the officers in. While at Reid's home, police noticed a television set matching the description of one of the two sets missing from Bradford's home. Thereafter, police secured a warrant, found the miss-

ing two televisions in Reid's home, and seized them.

Reid testified that when her son came home around 2:00 a.m. on September 27, he did not act unusual, nor did he appear to be drunk, high, or upset. However, Smith did carry into Reid's home the two televisions in question along with a large stereo system and two speakers. Reid asked where he got the televisions and stereo, and Smith replied that his girlfriend Carolyn gave them to him. Reid did not accept her son's explanation, telling him he would "have to explain to me a little more about what's going on." Later that morning, Smith and his cousin, Greg, took the stereo and two speakers away but left the televisions.

Reid also showed police clothing that her son had worn on September 26 and 27, which police seized. Subsequent forensic analysis revealed that Smith's shirt and shoes bore traces of human blood.

On September 28, 1987, police apprehended and took Smith to police headquarters for questioning. After being advised of his rights, Smith agreed to talk to the police. Smith initially asserted that he had driven Bradford home that night but he had just dropped her off. He later admitted that he had been in her apartment but had left when her boyfriend arrived.

Smith told police that he met Bradford at the Race Inn, later drove her and her girlfriend to another bar, and then drove Bradford home. While at her house, Smith claimed that someone he thought to be Bradford's boyfriend arrived, and Smith decided to leave quickly. After Smith left, he realized that he had left a packet of cocaine, worth $2,500, at Bradford's house. After he returned, Bradford's boyfriend and the cocaine were both gone. Smith then talked with Bradford.

"[W]e talked about restitution, you know. She said she'd give me some of

that body. I said okay, its good enough for me, you know, but then after I got that [had sex with her] it wasn't good enough, you know, so I asked her like you got any money and stuff, you know. She said she ain't have no money. So we start arguing and stuff and next thing you know she slid over to the kitchen and got [a] little blade—[small carving knife]."

According to Smith, Bradford was stabbed in the stomach during the ensuing struggle and fell onto a chair. He removed the knife from her stomach, and she dragged or walked by herself to the bedroom. He recalled stabbing her in the neck in the bedroom after she called him a "motherfucker," but he did not admit inflicting the other stab wounds. When she was lying on the bed, he took her clothes off and got back on top of her and had sex again. Police asked:

Q. [A]fter you had sex with her the second time, after she was stabbed, then what'd you do?

. I gathered up my things together and started taking her stuff downstairs.

. What'd you take out of there?

. Her two TV's and her stereo.

Smith said he made four trips carrying her things down to his car and that he took her things in order to sell them. Although Smith initially claimed that he did not know whether Bradford had stopped breathing, he later admitted he decided to have sex with her again because "she was still breathing then." He said that he pulled his penis out as he started to climax and finished ejaculating on her stomach. He did this because he was thinking about getting out of the apartment. Smith claimed he threw the knife into the Ohio River and sold Bradford's stereo in Dayton. However, police recovered her stereo in Cincinnati. When police interviewed Smith they also seized a pair of undershorts

from him stained with blood of the same type as Bradford's.

Smith was indicted on two counts of felony-murder, Count I alleging murder during rape, and Count II alleging murder in the course of aggravated robbery. Each count contained two death penalty specifications, one alleging aggravated murder during rape and the other alleging murder during aggravated robbery. Count III alleged rape and Count IV alleged aggravated robbery. Smith pled not guilty and not guilty by reason of insanity, but he later withdrew the insanity plea. A panel of three judges convicted Smith as charged. After a hearing, the panel sentenced Smith to the death penalty on each murder count. The court of appeals affirmed the convictions and death penalties.

*Smith,* 61 Ohio St.3d at 284–87, 574 N.E.2d at 512–14.

## III. *PROCEDURAL HISTORY*

William H. Smith was indicted on October 21, 1987, on two counts of aggravated murder, one count of rape, and one count of aggravated robbery (doc. 47). Upon arraignment, Smith first entered a plea of not guilty and not guilty by reason of insanity as to all charges (*Id.*). Prior to trial, Smith waived his right to a jury trial, subsequently withdrew the waiver, entered another waiver of a jury trial, and finally requested to be tried by a three-judge panel instead (*Id.*). The trial by panel began on April 4, 1988.

On April 6, 1988, Smith was convicted in the Court of Common Pleas of Hamilton County, Ohio by a unanimous three-judge panel[2] of two counts of Aggravated Murder under Ohio Rev.Code § 2903.01(B)[3] and two death specifications for each count under Ohio Rev.Code § 2929.04(A)(7)[4] (doc. 46). He was also convicted of one count of rape under § 2907.02 and one count of aggravated robbery under Ohio Rev.Code § 2911.01 (*Id.*). On April 14, 1988, the three judge panel also unanimously found by proof beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances (*see id.,* Exs. B & C).

Five days after the guilt phase of the trial, the penalty phase commenced, and, on April 25, 1988, the three-judge panel sentenced Smith to death on each murder count (*Id.,* Ex. B). In addition, the three-judge panel sentenced Smith to a minimum term of ten years and a maximum term of twenty-five years, with ten years actual incarceration to run consecutively, as to Count III (rape) and Count IV (aggravated robbery) (*Id.*). At his capital trial, Smith was represented by attorneys, Dale G. Schmidt and Robert J. Ranz.

Smith filed a timely appeal of said judgement to the Ohio Court of Appeals for the First Judicial District on May 10, 1988, asserting eighteen assignments of error related to his trial proceedings (doc.

2. The three-judge panel of the Ohio Court of Common Pleas consisted of the: Honorable Ralph Winkler, Honorable Robert S. Kraft, and Honorable Norbert A. Nadel.

3. Ohio Rev.Code § 2903.01(B), "Aggravated Murder," states, in pertinent part:

No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnaping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary, or escape....

*Id.*

4. Ohio Rev.Code § 2929.04(A)(7), "Criteria for Imposing Death or Imprisonment for a Capital Offense," states, in pertinent part:

The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing, or attempting to commit kidnaping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder, or if not the principal offender, committed the aggravated murder with prior calculation and design.

*Id.*

47, Exs. D & E). The State of Ohio filed its brief in response on May 12, 1989 (*Id.*, Ex. F). The court of appeals upheld Smith's convictions and sentences on June 6, 1990 (*Id.*, Ex. G). In addition, the court of appeals, pursuant to the requirements set forth in Ohio Rev.Code § 2929.05(A), "Appeals Procedure," independently reviewed and affirmed the lower court's decision (*Id.*, Ex. H).

Smith then filed a timely notice of appeal to the Ohio Supreme Court on August 1, 1990 (*Id.*, Ex. I). On September 17, 1990, Petitioner filed a brief in which he set forth sixteen propositions of law (*Id.*, Ex. J). The State filed its brief in opposition on October 18, 1990 (*Id.*, Ex. K). On July 31, 1991, the Ohio Supreme Court affirmed Petitioner's convictions and sentences with a judgement entry (*Id.*, Ex. L) and issued its opinion. *See Smith*, 61 Ohio St.3d at 297, 574 N.E.2d at 521.

Smith next filed a Motion for Rehearing in the Ohio Supreme Court, raising three issues:

1. Appellant Smith was improperly convicted and sentenced on two counts of aggravated murder for one victim;

2. The Ohio Supreme Court failed to consider, as a matter of law, viable mitigating evidence; and

3. The proportionality review conducted by the Ohio Supreme Court was constitutionally insufficient.

(*Id.*, Ex. M).

On August 21, 1991, the State filed its Memorandum in Opposition to the Motion for Rehearing (*Id.*, Ex. N). The Ohio Supreme Court denied rehearing in an entry dated September 18, 1991 (*Id.*, Ex. O). *See State v. Smith*, 62 Ohio St.3d at 1410, 577 N.E.2d at 362 (1991).

Following the Ohio Supreme Court's decision on direct appeal, Smith filed a petition for *certiorari* in the United States Supreme Court[5] (*Id.*). Shortly thereafter, the State of Ohio filed its response brief to Smith's petition. On February 24, 1992, the Supreme Court denied Smith's request for *certiorari* (doc. 47, Ex. R). *See Smith v. Ohio*, 502 U.S. 1110, 112 S.Ct. 1211, 117 L.Ed.2d 449 (1992).

On November 12, 1992, Smith filed a Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to Ohio Rev. Code § 2953.21, "Petition for Post–Conviction Relief," with the Hamilton County Court of Common Pleas (*Id.*, Ex. S). In his petition, Smith raised fifty-eight claims for post-conviction relief. The appendix to Smith's petition was filed on November 12, 1992 (*Id.*, Ex. T). On December 29, 1992, the State responded with a Motion for Summary Judgment Under Ohio Rev.Code § 2953.21 (*Id.*, Ex. U), accompanied by a separate filing of exhibits in support of its motion (*Id.*, Ex. V). Shortly thereafter, Smith filed his Response and the State filed its Reply (*Id.*, Exs. Z & AA). The Hamilton County Court of Common Pleas issued its Findings of Fact, Conclusions of Law, and Entry Denying Petition to Vacate Under Ohio Rev.Code § 2953.21(C) on April 19, 1993 (*Id.*, Ex. DD).

Continuing his quest for post-conviction relief, Smith filed a notice of appeal with the Ohio Court of Appeals, First Judicial District, on May 19, 1993 (*Id.*, Ex. EE). Smith filed his brief on October 29, 1993 and listed eight assignments of error (*Id.*, Ex. FF). The State followed with its opposition brief on December 27, 1993 (*Id.*, Ex. FF). Smith filed his reply brief on January 10, 1994 (*Id.*, Ex. HH). On June 22, 1994, the court of appeals affirmed the

---

**5.** In his petition for *certiorari*, Smith asserted the following reasons as to why the United States Supreme Court should grant his writ:

1. A death sentence should be set aside when a state requires proportionality review and the pool of cases against which the defendant's death sentence is compared for disproportionality does not include similar cases in which life sentences were imposed nor—in those capital cases where death was not imposed—are opinions being written explaining why life was appropriate.

(doc. 47, Ex. P).

decision of the Hamilton County Court of Common Pleas (*Id.*, Ex. II).

Thereafter, Smith filed a timely notice of appeal with the Ohio Supreme Court on August 8, 1994, and he submitted nine propositions of law (*Id.*, Ex. KK). The State filed its Memorandum in Response on August 30, 1994 (*Id.*, Ex. MM). The Ohio Supreme Court held that it lacked the proper jurisdiction to hear the post-conviction relief case and dismissed the appeal on November 9, 1994 (*Id.*, Ex. NN). *See State v. Smith*, 71 Ohio St.3d 1405, 641 N.E.2d 202 (1994). Smith then filed a Motion for Reconsideration with the Ohio Supreme Court on November 21, 1994 (*Id.*, Ex. OO). On November 23, 1994, the State filed a Memorandum Opposing Appellant's Motion for Reconsideration (*Id.*, Ex. PP). The Ohio Supreme Court denied Smith's motion on December 14, 1994 (*Id.*, Ex. QQ). *See State v. Smith*, 71 Ohio St.3d 1208, 642 N.E.2d 631 (1994).

On June 3, 1993, concurrent with his post-conviction relief petition, Smith also filed an Application for Delayed Reconsideration (hereinafter, "a *Murnahan* application")[6] with the Ohio Court of Appeals for the First Appellate District on the grounds that he was denied effective assistance of counsel on his direct appeal (*Id.*, Ex. RR).[7] Smith asserted that his counsel on direct appeal were ineffective because they failed to raise a total of thirty-six (36) assignments of error (*Id.*). The State filed its Memorandum in Opposition to the Application for Delayed Reconsideration on June 11, 1993 (*Id.*, Ex. SS). On June 30, 1993, the Ohio Court of Appeals for the First Appellate District denied Smith's Application for Delayed Reconsideration (*Id.*, Ex. TT).

Smith next filed an appeal to the Ohio Supreme Court on August 30, 1993 (*Id.*, Ex. UU). In his Memorandum in Support of Jurisdiction filed on September 29, 1993, Petitioner raised two propositions of law:

1. The Court of Appeals erred in denying Appellant's Application for Delayed Reconsideration; and that

2. the failure to exercise reasonable professional judgment in raising and preserving constitutional issues in the direct appeal of a capital case denied the [d]efendant the effective assistance of appellate counsel as guaranteed by the

---

**6.** *State v. Murnahan*, 63 Ohio St.3d 60, 65–66, 584 N.E.2d 1204, 1209 (1992), set forth the proper procedure that courts must consider for a delayed claim of ineffective assistance of counsel:

> Where the time period for reconsideration in the court of appeals and direct appeal to the Ohio Supreme Court has expired, a delayed claim of ineffective assistance of appellate counsel must first be brought in an application for delayed reconsideration in the court of appeals where the alleged error took place, and if delayed reconsideration is denied, then defendant may file for delayed appeal in the Ohio Supreme Court.

*Id.*

**7.** The Court has previously held that prior to *Murnahan*, Ohio law was not firmly established a claim of ineffective assistance of appellate counsel. *See Id.*, 63 Ohio St.3d at 65–66, 584 N.E.2d at 1209. To be sure, until *Murnahan* was decided in 1992, on a statewide basis, the rules regarding how to raise an ineffective assistance of appellate counsel claim varied significantly. *Compare, e.g., Howard*, 42 Ohio St.3d at 23, 26, 537 N.E.2d

188 (considering ineffective assistance of appellate counsel claim on post-conviction); *State v. Miller*, 44 Ohio App.3d 42, 43, 541 N.E.2d 105 (Wood Cty.1988) (same); *State v. Sawyer*, No. CA–85–12–160, 1986 WL 7116, at *2 (Butler Cty. June 23, 1986) (same); *State v. Kaldor*, No. 83–B–12, 1985 WL 10432, at *1 (Belmont Cty. Apr. 29, 1985) (same); *with, e.g., Ohio v. Mitchell*, 53 Ohio App.3d 117, 118–9, 559 N.E.2d 1370 (Cuyahoga Cty.1988) (holding ineffective assistance of appellate counsel claims not cognizable on post-conviction); *Ohio v. Rone*, No. 820640, 1983 WL 5172 (Ohio Ct.App. Aug.31, 1983) (same); *State v. Fraley*, No. 88–AP–180, 1988 WL 55434, at *2 (Franklin Cty. May 17, 1988) (stating same); *see also Manning v. Alexander*, 912 F.2d 878, 881–883 (6th Cir.1990) (finding that by 1990 the Ohio Supreme Court had not spoken clearly as to how to initiate claims of ineffective assistance of appellate counsel and that Ohio law appeared to permit an ineffective assistance of appellate counsel claim to be raised in post-conviction).

due process clause of the Fourteenth Amendment.

(doc. 47, Ex. VV).

The State filed its Memorandum in Opposition to Jurisdiction on October 8, 1993 (doc. 47, Ex. WW). The Ohio Supreme Court affirmed the judgment of the court of appeals (*Id.*, Ex. XX). *See State v. Smith*, 68 Ohio St.3d 1404, 623 N.E.2d 562 (1993)). Smith filed a Motion for Rehearing in the Ohio Supreme Court on December 27, 1993 (*Id.*, Ex. YY). On December 30, 1993, the State filed its Memorandum in Opposition (*Id.*, Ex. ZZ). On January 19, 1994, a rehearing was denied by the Ohio Supreme Court (*Id.*, Ex. AAA). *See State v. Smith*, 68 Ohio St.3d 1437, 625 N.E.2d 625 (1994). Smith subsequently filed another petition for *certiorari* with the United States Supreme Court on April 19, 1994 [8] (*Id.*, Ex. BBB). The State filed its brief in opposition on April 29, 1994 (*Id.*, Ex. CCC). On June 27, 1994, the Supreme Court denied Smith's petition for *certiorari* (doc. 47, Ex. DDD). *See Smith v. Ohio*, 512 U.S. 1246, 114 S.Ct. 2768, 129 L.Ed.2d 882 (1994).

Thereafter, Smith filed with the Ohio Supreme Court a Motion for Reconsideration Based Upon Ineffective Assistance of Counsel in Direct Appeal as of Right (*Id.*, Ex. EEE). Smith's Motion for Reconsideration asserted that, while a traditional *Murnahan* motion could be filed to allege a claim of ineffective assistance of counsel in the Ohio Court of Appeals, Smith lacked such a vehicle in order to allege the same claim in the Ohio Supreme Court (*Id.*). The State filed its Memorandum in Opposition on September 28, 1994 (doc. 47, Ex. FFF). On December 14, 1994, the Ohio Supreme Court denied the Motion for Reconsideration (*Id.*, Ex. GGG). *See State v. Smith*, 71 Ohio St.3d 1208, 642 N.E.2d 631 (1994).

On April 27, 1995, Petitioner filed his first Petition for a Writ of Habeas Corpus with this Court (doc. 7) and Petitioner amended his first Petition over a year later (*see* doc. 21). Petitioner then filed the current Second Amended Petition for a Writ of Habeas Corpus (hereinafter, "Second Amended Petition") pursuant to Title 28 U.S.C. § 2254 on April 23, 1997 (doc. 46). This was followed by Respondent's Amended Return of Writ (hereinafter, "Amended Return") (doc. 47), which was filed on June 9, 1997. On July 9, 1997, Petitioner filed his Traverse in Response to Respondent's Return of Writ (hereinafter, "Traverse") (doc. 51). In addition, Respondent also filed with the Court an Addendum/Supplement of the Record (docs. 59, 60 & 61) pursuant to a previous Order of this Court (*see* doc. 58). Furthermore, in the interest of justice and fundamental fairness, the Court hereby GRANTS Respondent's Motion to Supplement the State Court Records (docs. 59, 60, & 61) and we will consider these additional records in our deliberations. The Court will take into consideration when making our ruling the additional records supplied by Respondent in this action.

## IV. STANDARD OF REVIEW

In the instant matter, Petitioner seeks relief under Title 28 U.S.C. § 2254. Section 2254, Title 28 of the United States Code, provides that "a district court shall entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a[s]tate court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." Title 28 U.S.C. § 2254(a) (1994).

■ Under the pre-April 24, 1996 version of § 2254, which governs this action, federal courts generally accord "a pre-

---

**8.** In his petition for *certiorari* to the United States Supreme Court, Smith asserted the following reason as to why the Court should grant the writ:

1. A state must provide a forum to raise a claim of ineffective assistance of appellate counsel when that claim cannot be raised in the direct appeal process.

(doc. 47, Ex. BBB).

sumption of correctness" to state court factual findings. Title 28 U.S.C. § 2254(d); see Marshall v. Lonberger, 459 U.S. 422, 431–32, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). Whereas an appellate court on habeas review decides federal law questions de novo, Marshall, 459 U.S. at 431, 103 S.Ct. 843, the federal reviewing court is generally bound by the state court interpretations of state law. Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In order "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A § 2254 habeas prisoner must prove that a state court trial error had denied him a federal constitutional right, and that such denial had caused him "actual prejudice" in that it "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting Kotteakos v. United States Regenbogen, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); see also O'Neal v. McAninch, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (holding that a constitutional error should be deemed prejudicial if "grave doubt" exists regarding whether its effect on the jury's verdict was harmless).

## V. APPLICABILITY OF THE AEDPA

On April 24, 1996, President William Jefferson Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter, "AEDPA" or the "Act") into law. See Pub.L. 104–132, 110 Stat. 1217 (1996). While the Act does not contain an effective date, we conclude that it became effective on the date of enactment. See Zuern v. Tate, 938 F.Supp. 468, 470 (S.D.Ohio 1996). Furthermore, even though the Act amends certain provisions of the preexisting habeas corpus statutes that are codified in Chapter 153 of the Judicial Code, and creates a new Chapter 154 of the Judicial Code that contains a set of "Special Habeas Corpus Procedures in Capital Cases," the new subsection of § 2254, namely § 2254(d), is inapplicable to cases under Chapter 153 that were pending on the date the Act became effective. See Lindh v. Murphy, 521 U.S. 320, 322–23, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); Groseclose v. Bell, 130 F.3d 1161, 1164 (6th Cir.1997); Powell v. Collins, C–1–94–656 (S.D. Ohio June 15, 1998). Accordingly, the amended sections of the habeas corpus statute falling under the Act's Chapter 153 do not apply to the instant Second Amended Petition because Petitioner's first Petition was filed prior to its enactment.

As for Chapter 154 of the Act, it states that it shall apply to cases pending on or after the date of enactment of the Act. The special procedures in Chapter 154 provide a system of expedited review to states that qualify under the opt-in procedures set forth in Title 28 U.S.C. § 2261 (1996). These procedures pertain to requirements for the appointment of counsel for petitioners seeking post-conviction review of their capital sentences in the state court system. Having previously examined this topic, we again conclude that the State of Ohio has not "opted-in." See Jamison v. Collins, 100 F.Supp.2d 521, 533–35 (S.D.Ohio 1998). Therefore, we find that Chapter 154 does not apply to this case. See Mills v. Anderson, 961 F.Supp. 198, 199 (S.D.Ohio 1997); Scott v. Anderson, 958 F.Supp. 330, 334–35 (N.D.Ohio 1997); Hamblin v. Anderson, 947 F.Supp. 1179, 1183 (N.D.Ohio 1996); Landrum v. Anderson, C–1–96–641 (S.D.Ohio Dec. 9, 1996). Accordingly, pre-AEDPA law applies to the instant petition.

## VI. HABEAS CORPUS PROCEEDINGS

### A. Introduction

Article I, Section 9 of the United States Constitution provides for the writ of habeas corpus to redress errors in the administration of criminal justice that result in

deprivations of life or liberty. *Cooey v. Anderson,* 988 F.Supp. 1066, 1072 (N.D.Ohio 1997). In general, a prisoner may petition a federal district court for the writ of *habeas corpus* whenever the prisoner believes that he is being detained in violation of the Constitution or other federal laws. *Id.,* at 1072. This right to petition for the writ is not, however, unlimited. For example, a prisoner must usually exhaust all available remedies in the state courts before turning to the federal courts for relief. *See Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

■ Under the doctrine of procedural default, a federal district court may not ordinarily consider the merits of a prisoner's federal claim if a state court previously dismissed the claim for failure to comply with state procedural law. *Cooey,* 988 F.Supp. at 1072. As a preliminary matter, we must address each of the claims that Respondent asserts Petitioner procedurally defaulted. After the court determines conclusively which, if any, of Petitioner's claims are procedurally barred, the Court will address all of the claims that can be heard on the merits. Accordingly, we now proceed directly to a discussion about the doctrines of exhaustion and procedural default.

### B. *The Doctrine of Exhaustion*

■ A petitioner must have exhausted his state court remedies before a writ of *habeas corpus* can be granted. 28 U.S.C. § 2254(b)(1)(A). Furthermore, the failure of a petitioner to present the federal grounds for relief to the state courts constitutes a procedural default or waiver barring federal habeas review. The recent United States Supreme Court decision of *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) is on point, and, thus, controlling herein. In *O'Sullivan,* the Supreme Court explained why it is a petitioner's duty to first present his claims in a state court proceeding:

In order to satisfy the exhaustion requirement, a state prisoner must present his claims to a state supreme court in a petition for discretionary review when that review is part of the state's ordinary appellate review procedure. As a matter of comity, § 2254(c)—which provides that a habeas petitioner 'shall not be deemed to have exhausted [his state court] remedies ... if he has the right under [state] law ... to raise, by any available procedure, the question presented'—requires that state prisoners give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.[9] State prisoners must give state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process ....

In this case, we are asked to decide whether a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement. We conclude that he must.

*Id.,* 119 S.Ct. at 1730–31 (internal citations omitted); *see also Dennis v. Mitchell,* 68 F.Supp.2d 863, 878 (N.D.Ohio 1999).

In *O'Sullivan,* the Supreme Court concluded that federal habeas relief was not available to the state prisoner therein because he had failed to "satisfy the exhaustion requirement" by presenting his claims to the state's supreme court in a petition for discretionary review. *Id.* at 1730–31. Moreover, this failure to present his claims to the state's supreme court constituted a "procedural default":

Boerckel's amended federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court—is no longer available to Boerckel; the time for filing

---

9. *See Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989).

such a petition has long since past.... Thus, Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.

*Id.*, 119 S.Ct. at 1731–32; *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Shakoor v. Collins*, 63 F.Supp.2d 858, 863 (N.D.Ohio 1999).

To determine whether the exhaustion requirements are met, the Court must examine whether the petitioner "has the right under the law of the state to raise, by any available procedure, the question presented." *Dennis*, 68 F.Supp.2d at 878–79 (citing 28 U.S.C. § 2254(c)). In the instant case, just as in *Boerckel*, Petitioner's failure to initially present any federal claims set forth in his Second Amended Petition for relief in the Ohio state courts on direct appeal, post-conviction, or discretionary review would constitute a procedural default. *See Boerckel*, 119 S.Ct. at 1730–32; *see also Shakoor*, 63 F.Supp.2d at 863–64.

In the case at bar, Respondent readily concedes that Petitioner has resorted to all levels of state appellate review and to all avenues for state post-conviction relief (doc. 47). Therefore, Respondent submits, Petitioner has readily exhausted all available state court remedies. *See also Steffen*, 31 Ohio St.3d at 123–25, 509 N.E.2d at 394–95. However, Respondent does assert that a number of Petitioner's claims and sub-claims are procedurally defaulted.

## C. *The Doctrine of Procedural Default*

The principles of procedural default are triggered whenever the state argues that *habeas corpus* relief is precluded due to a petitioner's failure to comply with a state procedural rule. Generally, under the doctrine of procedural default, if a state court previously dismissed a state prisoner's federal claim on the grounds that the prisoner failed to comply with a state procedural rule, a federal district court cannot consider the merits of that federal claim. In *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court explained the reasons for the doctrine in the context of a state restriction on non-contemporaneous objections:

The failure of the federal habeas courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible, all issues which bear on this charge should be determined in this proceeding: the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification.

We believe the adoption of the *Francis* rule in this situation will have the salutary effect of making the state trial on the merits the "main event," so to speak, rather than a "tryout on the road" for what will later be the determinative federal habeas hearing. There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas

hearing a full airing of the federal constitutional claims which were not raised in the state proceedings. If a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making his objection.

*Wainwright,* 433 U.S. at 90–91, 97 S.Ct. 2497; *see also Lambrix v. Singletary,* 520 U.S. 518, 522–23, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) ("[A]pplication of the 'independent and adequate state ground' doctrine to federal habeas review is based upon equitable considerations of federalism and comity.").

■ To determine whether the district court may consider the merits of an inmate's federal claim, the court must engage in a complicated analysis. In *Maupin v. Smith,* 785 F.2d 135 (6th Cir.1986), the Sixth Circuit Court of Appeals set out the analytical framework for determination of claims that have procedurally defaulted. "When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated [four step] analysis." *Maupin,* 785 F.2d at 138.

First, the federal district court must determine whether a state procedural rule exists that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. *Id.* at 138. Second, the federal district court must decide whether the state courts actually enforced the state procedural violation. *Id.* In other words, the highest state court to rule on the claim must have clearly and unambiguously relied upon the procedural violation as the reason for rejecting the claim. Third, the federal district court must decide whether the state procedural violation provided an "adequate and independent state ground" for denying the petitioner's federal constitutional claim. *Id.; see also Harris v. Reed,* 489 U.S. 255, 260–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The application of the "adequate and independent" state ground doctrine is grounded in concerns of comity and federalism because, without the rule, a federal district court would be able to do in *habeas corpus* what the state court could not do on direct appeal. *Coleman,* 501 U.S. at 730–31, 111 S.Ct. 2546.

Fourth, if the federal district court determines that the petitioner failed to comply with a state procedural rule, that the rule was actually enforced by the state courts and that the rule was an adequate and independent state ground, then the petitioner can still have the procedural default bar removed by either: 1) demonstrating that there was "cause" for him to not follow the procedural rule *and* that he was actually "prejudiced" by the alleged constitutional error, or 2) establishing that his case falls within a category of cases where the court's failure to consider the claims will result in a "fundamental miscarriage of justice." *Maupin,* 785 F.2d at 138; *see also Coleman,* 501 U.S. at 749–50, 111 S.Ct. 2546; *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright,* 433 U.S. at 87, 97 S.Ct. 2497; *Leroy v. Marshall,* 757 F.2d 94, 99 (6th Cir.1985).

The Supreme Court has not precisely established the contours of the "cause" standard for courts to apply in the context of procedural default. *Amadeo v. Zant,* 486 U.S. 214, 221–22, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). Generally, a petitioner may show "cause" by demonstrating a substantial reason to excuse the procedural default. *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994). As stated, once "cause" for the procedural default is demonstrated, the petitioner must still show that he was actually "prejudiced" by the claimed constitutional error. *Frady,* 456 U.S. at 170, 102 S.Ct. 1584. The prejudice prong is not satisfied if there is strong evidence of the petitioner's guilt and a lack of evidence to support his claimed constitutional error. *Rust,* 17 F.3d at 161–62.

Nonetheless, however, the Supreme Court has held that a petitioner may establish adequate "cause-and-prejudice" by

offering proof of either ineffective assistance of counsel or an objective factor that impeded his counsel's efforts to comply with state procedural law, such as the novelty of the proposed claim. *See Reed v. Ross,* 468 U.S. 1, 13, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *see also Murray,* 477 U.S. at 488–89, 106 S.Ct. 2639.

We note that unless the last state court rendering a judgment in a case "clearly and expressly" states that its judgment rests upon a state procedural ground that has been violated, federal courts on habeas review typically presume that a procedural default does not bar consideration of a federal claim. *Harris,* 489 U.S. at 263, 109 S.Ct. 1038. This presumption, however, only applies to cases where the decision of the last state court rendering judgment in the case "fairly appears to rests primarily on federal law, or to be interwoven with federal law." *Coleman,* 501 U.S. at 734–36, 111 S.Ct. 2546; *Ylst v. Nunnemaker,* 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). In a case where the last decision rendered by the state court is unexplained or unclear as to the grounds for the decision, a federal court may "look through" the unexplained order to the last reasoned state court order on the matter and presume that the later unexplained order rests on the same grounds as the explained order. *Ylst,* 501 U.S. at 802–804, 111 S.Ct. 2590.

The burden is on the petitioner to show cause for not complying with the procedural rule and actual prejudice from the claimed error. *Engle,* 456 U.S. at 129–30, 102 S.Ct. 1558; *Maupin,* 785 F.2d at 138–39. Failure to demonstrate cause and prejudice is excused only "where a constitutional violation has probably resulted in the conviction of one who is actually inno-

cent." *Murray,* 477 U.S. at 496, 106 S.Ct. 2639.

It is well established in Ohio that, under the doctrine of *res judicata,* a final judgment of conviction generally bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was not raised or could have been raised by the defendant at the trial that resulted in that conviction, or an appeal from that judgment. *State v. Perry,* 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). An exception is made, of course, for a defendant who asserts a constitutional claim in post-conviction proceedings the factual basis of which could not have been discovered until after conviction. *Id.,* 10 Ohio St.2d at 181, 226 N.E.2d 104.

### D. *Title 28 U.S.C. § 2254(d)*

█ This is a capital case. Petitioner has been sentenced to death by the State of Ohio. This sentence, Petitioner argues, was secured as a result of at least twenty-four errors at trial and on appeal that individually and collectively denied him of his right to a fair trial (doc. 46). In general, when reviewing any habeas petition, including a petition in a capital case, a federal district court must defer to the findings of fact made by the state trial court. *Cooey,* 988 F.Supp. at 1074. Congress has long provided for such deference by the federal courts to state court findings of fact under 28 U.S.C. § 2254(d).

Under § 2254(d), the federal district court must initially determine if there was a determination of a factual issue in a state court proceeding that is evidenced by written indicia.[10] *Id.* The federal district court

---

10. In *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the Supreme Court explained what is a "factual issue" in a state court proceeding:

> [Section 2254(d)] makes no distinction between the factual determinations of a state trial court and those of a state appellate court. Nor does it specify any proce-

dural requirements that must be satisfied for there to be a "hearing on the merits of a factual issue," other than that the habeas applicant and the state or its agent be parties to the state proceeding and that the state-court determination be evidenced by a "written finding, written opinion, or other reliable and adequate written indicia."

must then presume that the determination was correct, unless the applicant can demonstrate any one of the following eight statutory factors:

(1) That the merits of the factual dispute were not resolved in the state court hearing;

(2) that the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the state court hearing;

(4) that the state court lacked jurisdiction of the subject matter or over the person of the applicant in the state court proceeding;

(5) that the applicant was an indigent and the state court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the state court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the state court proceeding; or

(7) that the applicant was otherwise denied due process of law in the state court proceeding; or

(8) unless that part of the record of the state court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the federal court, on a consideration of such part of the record as a whole, concludes that such factual determination is not fairly supported by the record.

*Cooey,* 988 F.Supp. at 1074 (quoting 28 U.S.C. § 2254(d) (1994)).

In *Sumner,* the Supreme Court summarized the public policy rationale of § 2254 by stating that:

> Section 2254(d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court.

"In addition to minimizing the 'friction' between the state and the federal courts, the limited nature of the review provided by § 2254 also serves the interest that both society and the individual criminal defendant have in insuring that there will at some point be the certainty that comes with an end to litigation...."

*Id.,* 449 U.S. at 550, 101 S.Ct. 764 (quoting *Sanders v. United States,* 373 U.S. 1, 24–25, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)) (Harlan, J., dissenting); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 262, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring).

In the following sections, the Court will first state each of Petitioner's claims as he has framed it in either his Second Amended Petition (doc. 46) or his Traverse (doc. 51). Next, the Court will address whether or not Respondent asserts in his Amended Return (doc. 47) that Petitioner's claims are procedurally defaulted or whether they can be addressed on the merits. Finally, once the Court is satisfied that the particular claim has not been procedurally defaulted, then we will address the individual merits of Petitioner's and Respondent's arguments in relation to that claim.

## VII ANALYSIS OF PETITIONER'S CLAIMS

### A. Introduction

Regarding the first step of the *Maupin* analysis, Respondent points to three different Ohio procedural rules applicable to several of Petitioner's claims with which Petitioner failed to either fully or only partially comply (doc. 47). Specifically, Respondent asserts that: (1) Petitioner's grounds for relief are procedurally barred because Petitioner did not raise these grounds on direct appeal, as Ohio requires

*Id.,* 449 U.S. at 546–47, 101 S.Ct. 764.

pursuant to Ohio R.App. P. 16(A)(4)[11] and *Perry,* 10 Ohio St.2d at 180, 226 N.E.2d at 108; or (2) Petitioner's grounds for relief are procedurally barred because Petitioner did not make a contemporaneous objection at trial, as Ohio requires pursuant to *State v. Glaros,* 170 Ohio St. 471, 475, 166 N.E.2d 379, 382 (1960) and Ohio R.Crim. P. 30(A);[12] or (3) Petitioner's grounds for relief are procedurally barred because Petitioner has not presented these grounds to any Ohio court, either on direct appeal or during post-conviction proceedings, as is required before the State can address these issues.

Petitioner attacks Respondent's procedural bar arguments in two ways. First, Petitioner undertakes an individualized *Maupin* analysis with respect to each of the grounds that Respondent argues Petitioner has waived. The Court examines these arguments below in the context of its analysis of each individual ground.

■ Second, Petitioner presents several broad defenses, challenging Respondent's procedural arguments in general. For example, Petitioner asserts that this Court must decide the *Maupin* analysis in his favor, as a matter of law, as to every ground he has allegedly waived by not raising it first on direct appeal, because Petitioner alleges that this Court cannot find under the second prong of the *Mau-*

*pin* test that Ohio "courts actually enforce the state procedural sanction" through a valid process. *See, Maupin,* 785 F.2d at 138. More specifically, Petitioner argues that, although the Ohio courts enforced state procedural sanctions against him, the entire post-conviction process in Ohio is constitutionally defective, and, thus, this Court should consider the state court's enforcement of Ohio's procedural sanctions as totally void or voidable.

This Court is not persuaded by this argument. First, Petitioner cannot excuse his own failure to present claims to the state appellate courts based on the allegation that the entire post-conviction review process is constitutionally flawed. *See Scott,* 58 F.Supp.2d at 780. To quote another district court that rejected this same argument:

> Petitioner's argument that the *Perry* rule rests on an Ohio post-conviction system which does not meet the requirements of due process lacks merit. Petitioner knew of the availability of direct appeal of record claims and knew that if he failed to present the claims on direct appeal, they were waived. Any perceived deficiencies in Ohio's post-conviction system did not relieve petitioner of the obligation to raise these waived claims on direct appeal. He was not

---

11. Ohio R.App. P. 16(A)(4) states, in pertinent part, that:

> [t]he appellant shall include in its brief ... [a] statement of the assignments of error presented for review.... The *"Perry* rule" states that "[u]nder the doctrine of res judicata, a final judgment of conviction bars a convicted defendant [who was represented by counsel] from raising and litigating in any proceeding, except on an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment or conviction, or on an appeal from that judgment.

*Scott v. Anderson,* 58 F.Supp.2d 767, 779 n. 8 (N.D.Ohio 1998) (quoting *Perry,* 10 Ohio St.2d at 180, 226 N.E.2d at 108).

12. The court in *Glaros* stated, in pertinent part, that:

> [I]t is a general rule that an appellate court will not consider any error, which counsel for a party complaining of the trial court's judgment, that could have been called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.

*Scott,* 58 F.Supp.2d at 779 n. 9 (quoting *Glaros,* 170 Ohio St. at 474, 166 N.E.2d at 382).

The Ohio Rule of Criminal Procedure 30(A) states, in pertinent part, that:

> [o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds for the objections.

*Id.*

misled in any way by the Ohio courts about what remedy he could pursue.

*Beuke v. Collin,* No. C–1–92–507, slip op., at 19 (S.D.Ohio Oct.19, 1995).

■ In addition, Petitioner presents another broad defense challenging Respondent's procedural arguments in general: Petitioner asserts that this Court must decide the *Maupin* analysis in his favor, as a matter of law, as to every ground he has allegedly waived, because the Court cannot find under the third prong of the *Maupin* test that any of the state procedural rules relied upon by Respondent are "adequate." A procedural rule is considered "adequate" unless, among other things, it is not regularly and consistently applied by the state courts. *Scott,* 58 F.Supp.2d at 780–81 (citing *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir.1992)). Petitioner argues that Ohio courts are very inconsistent in their application of the procedural rules upon which Respondent bases his waiver arguments, especially the *Perry* rule when applied to capital cases, and, thus, he cannot be held to have procedurally defaulted under *Maupin.*

Again, the Court is not persuaded by this argument. While the Ohio Court of Appeals are not always consistent in their rulings on this issue, nonetheless, they do not ignore or arbitrarily deny Ohio's procedural bars, including the *Perry* rule, on a regular basis. *See Beuke,* No. C–1–92–507, slip op., at 65 ("Petitioner has not cited a single case holding that a consistently enforced state procedural bar, which on some occasions is not invoked for unexplained reasons generally consistent with plain error review, should not be enforced in federal *habeas corpus.*").

Petitioner also presents a few other broad defenses to Respondent's procedural arguments in general. The Court addresses these arguments below, to the extent necessary, in its discussion of each of Petitioner's individual grounds for relief.

For the reasons stated below, the Court concludes that all of Petitioner's challenges to his underlying convictions are either procedurally defaulted or without merit, and, therefore, we hereby DENY Petitioner's application for a writ of habeas corpus (doc. 46).

## B. *Petitioner's First Ground for Relief: Claim 1:*

**The Sixth Amendment Guarantees A Criminal Defendant The Right To A Jury Trial. When A Defendant Does Not Knowingly, Voluntarily, And Intelligently Waive His Right To A Jury Trial, Due Process, Equal Protection, And His Right Against Cruel And Unusual Punishment Are Therefore Violated (doc. 46).**

### 1. *Claim 1 Is Procedurally Defaulted*

In his first claim for relief, Petitioner alleges that, due to his low Intelligent Quotient Scoring of 70 (hereinafter, "IQ"), he was not capable of making a knowing, intelligent, and voluntary waiver of his right to a trial by jury as guaranteed by the Sixth Amendment of the United States, Article I, § 5 of the Ohio Constitution, and Ohio Rev.Code § 2945.17 (doc. 46). Petitioner asserts that he has an IQ that places him on the borderline of mental retardation. In addition, Petitioner submits that he suffers from an organic brain impairment of unknown specificity, and that at the time of his alleged waiver, he was under the influence of an "extreme cocaine, cannabis, and alcohol addiction" (*Id.*). Thus, Petitioner argues that, due to his limited intelligence, organic brain syndrome and drug addictions, he simply could not have made a constitutionally effective waiver of his right to a trial by jury.

Respondent asserts that Petitioner's first claim for relief is procedurally barred from federal habeas review (doc. 47). Respondent alleges that, although Petitioner presented this claim originally as claim thirty-four in his post-conviction petition, the trial court barred the claim due to *res judicata* grounds because Petitioner failed

to raise it in his direct appeal (*Id.*). In addition, the trial court's determination was upheld on appeal by the Ohio Court of Appeals and the Ohio Supreme Court subsequently dismissed Petitioner's appeal without opinion (*Id.*, Exs. II & NN).

In his Traverse, Petitioner offers several reasons as to why claim 1 has not been procedurally defaulted (doc. 51). First, Petitioner asserts that, whether a defendant has knowingly, intelligently, and voluntarily waived his right to a jury must be raised in a collateral challenge to a conviction because resolution of the issue necessarily entails a review of materials not contained in the direct appeal record. *See also Perry*, 10 Ohio St.2d at 180, 226 N.E.2d at 108 (concluding that issues that could be litigated on direct appeal could not be litigated in state post-conviction relief). Second, Petitioner argues that, even if *res judicata* is applicable, *res judicata* is not an "independent and adequate" basis for a procedural default because it is inconsistently applied. *See James v. Kentucky*, 466 U.S. 341, 348–49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984) (finding that a state procedural bar must be consistently applied and firmly established in order to be worthy of respect in federal court). Petitioner next argues that even if *res judicata* applies, he has not been afforded a fair and reasonable opportunity to present this claim. *See Parker v. Illinois*, 333 U.S. 571, 574, 68 S.Ct. 708; 92 L.Ed. 886 (1948) (for a state procedural rule to be honored by a federal court, the state procedure or rule must give the plaintiff a fair and reasonable opportunity to have the claims discovered, heard, and determined by the state courts).

■ Nonetheless, after reviewing the procedural background as to claim 1, the Court finds Petitioner's first habeas claim is barred by procedural default. This claim was not raised on direct appeal. It was asserted before the trial court in post-conviction proceedings as the thirty-fourth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

By failing to raise the foregoing claim on direct appeal, Petitioner effectively waived this claim. The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata*. *State v. Cole*, 2 Ohio St.3d 112, 113, 443 N.E.2d 169, 171 (1982). Absent a showing of cause and prejudice, the procedural default rule set forth in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), precludes a federal district court from hearing an issue to which the state appellate courts applied a procedural bar. *See also Maupin*, 785 F.2d at 138.

Having reviewed the record, this Court finds no cause or prejudice sufficient to excuse or justify Petitioner's failure to raise this claim on direct appeal. The Court recognizes that the cause and prejudice requirements may be overlooked if a petitioner presents an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 496, 106 S.Ct. 2639. However, the Court finds that this Petitioner has not demonstrated or asserted a claim of factual innocence.[13]

Furthermore, Petitioner has also not demonstrated that the failure of this Court to consider his first claim for relief will result in a "fundamental miscarriage of justice" in this matter. Accordingly, based on the foregoing application of the standards set forth in *Sykes* and *Maupin*, the

---

**13.** To establish "actual innocence," Petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 614, 118 S.Ct. 1604.

"Actual innocence" means factual innocence, not mere legal insufficiency." *Shakoor*, 63 F.Supp.2d at 867 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).

Court finds that claim 1 is procedurally defaulted. Nevertheless, we also find that even if the procedural default rule did not apply to this claim, claim 1 should also be denied as to its merits.

### 2. *Claim 1 Is Without Merit*

Petitioner alleges that the trial court inadequately inquired into the sufficiency of his waiver of a jury trial and that he was incapable of waiving his right to a jury (doc. 46). Furthermore, Petitioner alleges that he was forced into an unconscionable "agreement" that he did not expressly accept and for which he did not receive any "consideration" or "benefit" (*Id.*).

■ A jury waiver must be voluntary, knowing, and intelligent. *State v. Ruppert,* 54 Ohio St.2d 263, 271, 375 N.E.2d 1250, 1255 (1978). Waiver may not be presumed from a silent record; however, if the record shows a jury waiver, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268 (1942). In *Martin,* the Sixth Circuit explicitly held that "[t]here is no constitutional requirement that a court conduct an on the record colloquy with the defendant prior to the jury waiver." *Id.,* 704 F.2d at 274. Moreover, in federal practice, "the failure of a district judge to conduct such an interrogation does not violate the Constitution" and does not result in reversible error. *See United States v. Cochran,* 770 F.2d 850, 851 (9th Cir.1985). A valid waiver has four elements:

> First, the waiver must be in writing. Second, the government attorney must consent to the waiver. Third, the trial court must approve the waiver. Fourth, the defendant's waiver must be voluntary, knowing, and intelligent.

*United States v. Martin,* 704 F.2d 267, 271 (6th Cir.1983); *see also United States v. Sammons,* 918 F.2d 592, 596 (6th Cir. 1990).

■ The Court finds for the following reasons that in the case at bar, the above elements were all present in the waiver by Petitioner. First, contrary to Petitioner's arguments, no specific colloquy is constitutionally mandated in order to determine that a waiver has been voluntarily, knowingly, and intelligently given.

■ Second, Petitioner suggests that his claimed inability to appreciate the legal ramifications of his waiver rendered it involuntary. However, in *United States v. Sammons,* the Sixth Circuit noted that "a technical knowledge of the jury trial right is not required for a waiver to be effective." *Id.,* 918 F.2d at 596–97. The Sixth Circuit went on to further define the knowingness and intelligence requirements of an effective waiver:

> "A defendant is sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous and that a judge alone will decide guilt or innocence should he waive his jury trial right."

*Martin,* 704 F.2d at 273.

In addition, the trial court is not required to inform a defendant of all of the possible implications of a jury waiver. *See State v. Jells,* 53 Ohio St.3d 22, 26, 559 N.E.2d 464, 468 (1990). Moreover, the absence of any merit to Petitioner's claim is ultimately evidenced by the record (doc. 47, Attach.2). The trial court ensured that Petitioner understood that he had the right to a jury trial and that the waiver was entered knowingly, voluntarily, and intelligently (*Id.*). The transcript of the hearing during which Petitioner entered his second waiver of a jury clearly establishes the procedural adequacy of the trial court's inquiry (*Id.*). The record also indicated that: (1) the judge's inquiry was sufficient; (2) Petitioner's answers were clear and direct; (3) Petitioner executed a written waiver; and (4) Petitioner's waiver of his right to a jury was done with the

advice, consent, and presence of his trial counsel (*Id.*).[14]

It is important for the Court to note that Petitioner initially waived his right to a jury and chose to be tried by a three-judge panel. The panel was selected, and then Petitioner decided to reverse his decision and he was granted a trial by jury. After the trial court judge made an extensive on-the-record inquiry with Petitioner as to his choice of a second jury waiver, with his counsel at his side, Petitioner decided that he wanted another "bite at the apple" and again chose to be tried by a three-judge panel. Now that the panel has convicted Petitioner and sentenced him to death, Petitioner pleads, in essence, for a third bite at the apple in his request for habeas relief. It appears to the Court that it was Petitioner's strategy to attempt to manipulate the State's jury waiver process, possibly because he did not want or did not like the judges selected onto the panel. The Court will not tolerate any attempt or strategy on the behalf of Petitioner to manipulate the jury waiver process.

For the reasons set forth above, this Court finds that Petitioner's waiver of his right to a trial by jury was made with his voluntary, knowing, and intelligent consent, and, thus, we find claim 1 to be without merit.

## C. Petitioner's Second Ground For Relief; Claim 2

**The Fifth And Fourth Amendments Were Violated By The Submission At Trial Of a Coerced and Involuntary Statement (doc. 49).**

### 1. Claim 2 Ripe For Federal Habeas Review

Respondent concedes that claim 2 has not procedurally defaulted and is ripe for

federal habeas review by this Court (doc. 47). The Court notes that claim 2 was raised on direct appeal before the Ohio Court of Appeals as the Fourteenth Assignment of Error; and on direct appeal before the Ohio Supreme Court as Proposition of Law Number One. This claim was also asserted before the trial court in post-conviction relief; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Thus, having reviewed the record before us, this Court finds that claim 2 is ripe for federal habeas review as to the merits.

### 2. Claim 2 Is Without Merit

Petitioner alleges that his confession was the product of intimidation and fear of his physical well-being (doc. 46). Petitioner further avers that he had been beaten, choked, and physically manhandled by the interviewing officers. Moreover, Petitioner asserts that, in order to escape the interview room and the police officers who were threatening his life, he made incriminating statements that were the result of coercion, involuntariness, and a lack of legal counsel. Petitioner summarizes by contending that "the physical beatings and verbal threats coupled with Petitioner's drug use, organic brain impairment and low IQ, establishes that Petitioner's confession was the product of coercion and involuntariness" (*Id.*). Respondent counters that Petitioner's claim is because there is no evidence to support it (doc. 47).

This claim is based on Petitioner's assertion that he did not voluntarily and knowingly waive his *Miranda* rights [15] prior to making inculpatory statements during an interrogation by officers of the Cincinnati Police Department. In *North Carolina v. Butler*, the Supreme Court held that, when

14. *See also* Dep. of Robert Ranz at 106–107.

15. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held that, under the Fifth Amendment, a defendant is guaranteed the right to remain silent and to the assistance of counsel during custodial in-

terrogation and that the statements obtained in violation of these rights cannot be used by the prosecution. A defendant, however, can waive these rights as long as the waiver is voluntary, knowing, and intelligent. *Id.*

a waiver is at issue, the court must examine "the particular facts and circumstances surrounding that case, including the background, experience, and the conduct of the accused." *Id.*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The Supreme Court went on to state that, "an express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver." *Id.* at 373, 99 S.Ct. 1755.

For, a waiver to be upheld, the Supreme Court has also consistently held that a state need only show by a preponderance of the evidence that the waiver was voluntary and knowing. For instance, whenever the state bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of *Miranda*, the state need only prove waiver by a preponderance of the evidence. *Id.* at 373–74, 99 S.Ct. 1755; *see also Withrow v. Williams,* 507 U.S. 680, 690, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993); *Schneckloth,* 412 U.S. at 226–27, 93 S.Ct. 2041; *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

■ On federal habeas review, a reviewing court must defer to the trial court when it makes findings of fact or determinations of credibility. *Davis v. North Carolina,* 384 U.S. 737, 741, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Haynes,* 373 U.S. at 515, 83 S.Ct. 1336, *Culombe v. Connecticut,* 367 U.S. 568, 603–604, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). However, the ultimate issue as to the voluntariness of a confession is a question of law for the reviewing court to decide. *See Arizona v. Fulminante,* 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

The Sixth Circuit has employed the following three-prong test to determine the voluntariness of a confession: (1) whether the police engaged in objectively coercive activity; (2) whether the coercive activity was sufficient to overcome the will of the accused; and (3) whether the accused will was actually overborne. *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988). If all there prongs of the test are met, a confession is considered involuntary and may not be admitted into evidence. *Id.,* 863 F.2d at 459.

■ After a review of the transcript from the suppression hearing (doc. 47, Attach.3), the Parties' briefs, and the other evidence in this case, the Court finds that Petitioner's confession was voluntary based on the following: (1) Smith was questioned by police for a total of less than two hours; (2) no credible or independent evidence of brutality, force, or undue coercion by the interviewing officers has ever been presented either at trial or in Petitioner's writ; (3) the interviewing officers testified that Petitioner had denied recent drug use and exhibited no evidence of being under the influence of drugs when arrested or interrogated; (4) Petitioner signed a written waiver and repeated the confession again while being tape recorded; and (5) Petitioner offers no basis upon which to connect his alleged "severe addiction to drugs," "organic brain disorder," and "borderline retardation" with any coercion on the part of the interviewing officers who took his confession.

In addition, Petitioner claims that the police had to resort to brute force to get him to confess (docs. 46 & 51). It is well established that a defendant's mental condition, by itself and apart from its relation to official coercion, does not support a claim of involuntariness. *Colorado v. Connelly,* 479 U.S. 157, 169–70, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). This Court finds no reason to reverse the trial court's determination of a voluntary confession in this matter and the mere assertion of "involuntariness," coupled with unsubstantiated allegations of abuse, is insufficient for this Court to overturn those findings.

Having reviewed this matter, the Court finds Petitioner's second claim to be without merit.

### D. *Petitioner's Third Ground For Relief; Claim 3*

**Smith Was Denied The Effective Assistance Of Trial Counsel In Violation of His Sixth Amendment Rights To Counsel And His Right To Due Process As Guaranteed By The Fourteenth Amendment to the United States Constitution (doc. 46).**

#### 1. *Claim 3 Is Ripe For Federal Habeas Review*

■ ▪ Petitioner alleges a broad claim that his rights under the Sixth and Fourteenth Amendments were violated because he was denied the right to effective assistance of counsel at both the trial and penalty phases of his capital trial (doc. 46). Petitioner submits that his trial counsel's lack of preparation and investigation of his case resulted in Petitioner having no legal counsel at all. Respondent counters that Petitioner has procedurally defaulted his ineffective assistance of counsel under claim 3 because the grounds for reversal now being asserted by Petitioner were not raised on his direct appeal, and, thus, were procedurally defaulted (doc. 47).

Petitioner was represented by Dale Schmidt and Robert Ranz during his capital trial (docs. 47 & 51). Messrs. Schmidt and Ranz continued their representation of Petitioner before the Ohio Court of Appeals in Petitioner's direct appeal as a matter of right to that same appellate court. In reviewing Petitioner's direct appeal, it is apparent that counsel failed to raise their own ineffectiveness.

Several federal courts have recognized that having the same counsel on appeal as at trial creates a conflict of interest in trying to raise ineffective assistance of counsel claims on direct appeal. *See, e.g., English v. Cody*, 146 F.3d 1257, 1263–64 (10th Cir.1998) (stating in *dicta* that *Kimmelman v. Morrison*, 477 U.S. 365, 378,

106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), and Tenth Circuit case law "mandate" that federal courts never apply a state procedural bar to a claim of ineffective assistance of counsel where the trial and appellate counsel are the same); *Holmes v. Norris*, 32 F.3d 1240, 1240–41 (8th Cir.1994) (finding "cause" to excuse the failure to raise trial counsel's ineffectiveness in the first federal habeas petition, thereby overcoming the abuse-of-writ defense, because petitioner had the same attorney at trial, on direct appeal, in state post-conviction proceedings, and in his first federal habeas petition); *Alston v. Garrison*, 720 F.2d 812, 816 (4th Cir.1983) (holding that having the same counsel on appeal as at trial was considered to be sufficient "cause" for failing to raise ineffective assistance of counsel claim at trial and on direct appeal).

Furthermore, in *State v. Cole*, the Ohio Supreme Court addressed the issue of the failure of *new* appellate counsel to raise the issue of the ineffectiveness of the previous trial counsel:

> Where defendant, represented by *new counsel* upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without evidence dehors the record, *res judicata* is a proper basis for dismissing defendant's petition for post-conviction relief.

*Id.* at 112, 443 N.E.2d 169 (citing *State v. Hester*, 45 Ohio St.2d 71, 74, 341 N.E.2d 304, 307 (1976)) (emphasis added).

However, one can inversely reason that a defendant, who is represented by his trial counsel during his direct appeal, cannot raise an ineffective assistance of counsel claim in his post-conviction relief without fearing the imposition of *res judicata*. The *Cole* court also recognized that "[s]ince our pronouncements in *State v. Perry*, this court and several lower courts have recognized exceptions to the absolute application of the doctrine of *res judicata* in proceedings for post-conviction relief where ineffective assistance of counsel is

claimed." *Id.* at 113 (citing *State v. Carter,* 36 Ohio Misc. 170, 173, 304 N.E.2d 415, 417 (1973)); *see also Hester,* 45 Ohio St.2d at 71, 341 N.E.2d at 304 n. 12 (citing *Carter,* 36 Ohio Misc. at 173, 304 N.E.2d at 417). One of the exceptions was a defendant who was represented on his direct appeal by his trial counsel. *See State v. Milanovich,* 42 Ohio St.2d 46, 325 N.E.2d 540 (1975).

The reason for the *Cole* court's analysis was because "counsel cannot realistically be expected to argue his own incompetence." *Carter,* 36 Ohio Misc. at 173, 304 N.E.2d at 417 [16]; *see also Robinson v. Norris,* 60 F.3d 457, 459–60 (8th Cir.1995); *Ciak v. United States,* 59 F.3d 296, 304–05 (2d Cir.1995); *United States v. Galloway,* 56 F.3d 1239, 1241 (10th Cir.1995).

Moreover, other federal courts have recognized the *Cole* exception to the application of *res judicata* for ineffective assistance of counsel. *See Terrell v. Morris,* 493 U.S. 1, 2–3, 110 S.Ct. 4, 107 L.Ed.2d 1 (1989) (recognizing that *Cole* provided guidance as to when *res judicata* would bar the consideration of ineffective assistance of counsel claims initially raised in a post-conviction petition); *Strickland v. Marshall,* 632 F.Supp. 590, 601 (S.D.Ohio 1986) (finding that a claim for ineffective assistance of counsel "could have been raised on direct appeal because defendant had new counsel for the latter proceedings").

The Court finds it important to note that, Elizabeth Agar undertook Petitioner's representation during his direct appeal to the Ohio Supreme Court (docs. 47 & 51). The fact that Petitioner was represented by new counsel in his direct appeal to the Ohio Supreme Court does not affect the above analysis. This is because according to Ohio Supreme Court rules and precedents, the Ohio Supreme Court will not consider federal constitutional claims that have not been initially presented to the court of appeals. *See State v. Phillips,* 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971). In fact, the Ohio Supreme Court refused to consider Petitioner's ineffective assistance of counsel claim because Petitioner had not previously presented the constitutional claim to the appeals court. *Smith,* 61 Ohio St.3d at 293–94 574 N.E.2d at 518–19.

█ In addition, the issue of whether claim 3 is actually procedurally defaulted centers on the question of whether there existed an "adequate and independent state procedural rule" so as to bar federal habeas review. Indeed, federal habeas review is barred where the state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule unless certain exceptions apply. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. A state procedural rule that was not firmly established at the time it should have been complied with by the petitioner, and therefore is applied retroactively, is not an adequate state ground that bars federal habeas review. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992) (holding that where *Cole* was decided in 1982 and the petitioner's time for direct appeal was in 1980, there was no clearly established precedent requiring ineffective assistance of trial counsel claims to be raised on direct appeal at the time the petitioner would have filed a direct appeal and therefore the procedural bar

---

**16.** One can imagine the impossibility or difficulty (as a practical matter) of a defendant, on trial, accusing—by himself—his retained trial counsel of incompetency or inadequacy of representation. The court stresses the fact that for this issue to be raised at any stage of the trial proceedings, the defendant would have to raise the issue himself. Certainly, his retained counsel could not logically be expected to urge the argument of his own inadequacy or incompetency upon the trial court. One cannot realistically expect trial counsel to argue the issue and likewise, one cannot logically expect the defendant, himself, to take over the proceedings from his attorney so as to argue the issue on his own.

*Carter,* 36 Ohio Misc. at 173, 304 N.E.2d at 417

based on *Cole* was inadequate); *accord Reynolds v. Berry*, 146 F.3d 345, 349 (6th Cir.1998); *see also Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir.1998); *State v. Zuern*, Nos. C–900481, C–910229, 1991 WL 256497 (Ohio Ct.App. Dec.4, 1991) . .

Furthermore, the Court finds that neither *State v. Cole*[17] nor *State v. Sowell*, addressed the situation as presented here, where there were the same co-counsel on direct appeal representing Petitioner as there were representing Petitioner during his trial court proceedings. Only *Zuern* applied *Cole* to a situation similar, but nonetheless distinguishable, to the facts that are now before this Court, stating that:

> [u]nless we presume, as Zuern would have us, that new co-counsel entering upon a criminal case at the appellate level would deliberately not exercise his professional judgment or duty to assert the ineffectiveness of his co-counsel at trial if the record demonstrated a basis for such a claim, a presumption we adamantly reject, we perceive no reason why the reference in *Cole* to 'new counsel' would not embrace new co-counsel as well as new independent counsel. Thus, we conclude that *Cole* is applicable to the case *sub judice*, and that the doctrine of *res judicata* may be invoked to bar assertion of his claims of ineffective assistance of counsel which do not rely on evidence dehors the record.

*State v. Zuern*, 1991 WL 256497, at *12.

The Court finds the procedural rule announced in *Zuern* requiring counsel to raise the ineffective assistance of trial counsel claims of his co-appellate counsel on direct appeal is not an adequate and independent state ground. It was not firmly established at the time Petitioner would have been required to comply with the rule. Moreover, *Zuern* had not been decided at the time Petitioner would have been expected to comply with its procedural rule on direct appeal. *Zuern* was decid-

ed on December 4, 1991; however, Petitioner's direct appeal was not completed until September 18, 1991, several months prior to the decision in *Zuern*. Moreover, the facts of *Zuern* are clearly distinguishable from the facts at bar. In the petition now before us, Petitioner had the exact same counsel in his trial as he did on his first direct appeal, as opposed to the "new co-counsel" referred to in *Zuern*.

Although *Cole* had been decided prior to Petitioner's direct appeal, it did not expressly state the procedural rule as announced in *Zuern*. *Cole* left room for interpretation by its limiting phrase "new counsel who was *in no way* enjoined from asserting the ineffectiveness of appellant's trial counsel," 2 Ohio St.3d at 114, 443 N.E.2d 169 (emphasis added), such that it was uncertain until *Zuern* how *Cole*'s holding would be applied to a situation where both of the trial attorneys were also the same appellate counsel.

On the other hand, prior to *Zuern*, one might argue that *Cole*'s application reasonably would depend upon whether trial/appellate counsel alone had been assigned the duty of choosing the claimed trial errors that should be raised on appeal. Therefore, at the time when Petitioner should have complied with *Zuern* and its interpretation of *Cole*, which would have been on direct appeal where the ineffective assistance of trial counsel claims based on evidence in the record should have been raised, *Zuern* had not been decided. Accordingly, we find there was no clearly established precedent requiring Petitioner to raise ineffective assistance of trial counsel on direct appeal where the same two trial attorneys were also Petitioner's appellate counsel. Therefore, Petitioner did not violate a state procedural rule that was an adequate and independent state ground upon which federal habeas review could be barred.

Thus, a post-conviction petition is the appropriate remedy for asserting ineffec-

---

17. *Id.*, 2 Ohio St.3d at 112, 443 N.E.2d 169.

tive assistance of counsel claims when a defendant is represented by his trial counsel in his direct appeal to the Ohio Court of Appeals; and there was no clearly established precedent holding otherwise. This would hold true regardless of whether there was a change of counsel when that same appeal reached the Ohio Supreme Court.

Having found that Petitioner's third claim is ripe for federal *habeas* review, this Court must now review claim 3 as to its merits.[18]

### 2(a). *The Guilt Phase; Strickland v. Washington*

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court considered for the first time a claim involving ineffective assistance of counsel. The Court noted that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland,* 466 U.S. at 684, 104 S.Ct. 2052. The Supreme Court had previously recognized that the Sixth Amendment guarantees "the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Prior to its decision in *Strickland,* however, the Court had not elaborated on the meaning of the effective assistance requirement. *See Strickland,* 466 U.S. at 686, 104 S.Ct. 2052; *see also Tucker v. Prelesnik,* 181 F.3d 747, 754 (6th Cir.1999).

In *Strickland,* the Supreme Court established that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 684, 104 S.Ct. 2052. The Court enunciated

two essential components of a successful ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052; *see also Tucker,* 181 F.3d at 754.

The *Strickland* Court confirmed that "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687, 104 S.Ct. 2052. In order to prove ineffectiveness, therefore, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052.

Accordingly, a court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identi-

---

**18.** The Court notes that after a review of the record, the following sub-claims to claim 3 have never been raised in any state court proceeding and are therefore found to be procedurally defaulted, and, thus will not be addressed on the merits: (1) the failure by counsel to develop Petitioner's borderline mental retardation; (2) the failure by trial counsel to rebut Dr. Schmidtgoessling's "lack of remorse" testimony; (3) trial counsel's reading of Petitioner's unsworn statement; and (4) trial counsel's failure to file for a new trial.

fied acts or omissions were outside the wide range of reasonable professional assistance." *Tucker*, 181 F.3d at 754 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if the counsel's error had no effect on the judgment. *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. The purpose of the Sixth Amendment's guarantee of counsel is "to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Id.* at 691–92, 104 S.Ct. 2052. Therefore, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance of counsel under the Constitution." *Id.* at 692, 104 S.Ct. 2052. The *Strickland* Court enunciated the following more precise test for prejudice:

> The defendant must show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Tucker*, 181 F.3d at 754–55 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052) (emphasis added).

### 2(b). *The Mitigation Phase: Strickland v. Washington*

■ A capital sentencing proceeding, also known as the mitigation phase of a capital trial, is subject to the same standards and principles concerning ineffectiveness claims as in the guilt phase of the trial. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052.

In order to succeed on this claim, a petitioner must "show both that his counsel's performance 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Glenn*, 71 F.3d at 1206 (quoting *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052). Regarding the first prong of this test, "[t]he Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner." *Scott*, 58 F.Supp.2d at 810–811 (quoting *Boyde v. California*, 494 U.S. 370, 377–78, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). Thus, trial counsel must undertake a reasonable amount of preparation for the sentencing phase of the trial, which must include a reasonable investigation of what mitigating circumstances exist. *Scott*, 58 F.Supp.2d at 811. The importance of this preparation and investigation is underscored by the reality that the sentencing phase is likely to be "the stage of the proceedings where counsel can do his or her client the most good." *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir.1989). Mitigation investigation in Ohio "is literally of life and death importance, for if the mitigation evidence is insufficient, the jury must recommend that the defendant be sentenced to death." *O'Guinn v. Dutton*, 88 F.3d 1409, 1424 (6th Cir.1996) (Merritt, J., concurring); *see also* Ohio Rev.Code § 2929.03(D)(2).

Given the importance of presenting mitigating circumstances at the penalty phase of trial, it is objectively unreasonable to wait until after the jury's verdict in the guilt phase to begin assembling mitigation witnesses and evidence. *Glenn*, 71 F.3d at 1207 (citing *Blanco v. Singletary*, 943 F.2d 1477, 1501–02 (11th Cir.1991). Of course, trial counsel may make a reasoned, tactical decision not to present certain evidence in mitigation, perhaps because the evidence carries with it the danger of negatively influencing the jury. *See Scott*, 58 F.Supp.2d at 811; *see also Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir.1997) (finding that counsel made a reasonable decision not to introduce evidence that a defendant took care of his friend's pets "because it could indicate that although [he] was capable of compassion, he reserved it for animals, not human beings"); *Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir.1984) ("Where there is more than one possible defense, and counsel conducts a

substantial investigation into the possible defenses, the strategic choices made as a result of the investigation is 'virtually unchallengeable.' ").

In addition, trial counsels may make reasonably diligent efforts to unearth mitigation evidence, but simply fail to locate a witness who would have proved helpful. *Scott,* 58 F.Supp.2d at 811. Furthermore, "resources are never unlimited, and attorneys must always make choices as to what avenues of investigation they are going to pursue." *Brown v. Cain,* No. C–2250, 1995 WL 495890 at, *19 (E.D.La. Aug. 18, 1995). In these instances, trial counsel's efforts cannot be called "objectively unreasonable." But a failure by trial counsel to actually investigate his options regarding the presentation of mitigating circumstances, and the failure to make a thoughtful, strategic choice, is objectively unreasonable. *Horton v. Zant,* 941 F.2d 1449, 1462–63 (11th Cir.1991) ("reject[ing] the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them"); *see also Austin v. Bell,* 126 F.3d 843, 848–49 (6th Cir. 1997) (granting partial habeas relief because "Mr. Livingston failed to conduct sufficient investigation, failed to prepare, failed to present evidence, failed to make necessary motions, and failed to function as a meaningful adversary to the government"); *Cave v. Singletary,* 971 F.2d 1513, 1519–20 (11th Cir.1992) (granting habeas relief because counsel's failure was as "a result of a lack of preparation rather than any particular strategy or because witnesses were unavailable").

Even if Petitioner can show that his trial counsel failed to undertake objectively reasonable efforts to investigate and present mitigating circumstances during the penalty phase of his trial, Petitioner does not prevail on his claim of ineffective assistance of counsel unless he also shows that his counsel's alleged failures caused him prejudice—the second prong of the *Strickland* test. To show prejudice, Petitioner must show a "reasonable probability" that, "but for his counsel's unprofessional errors," the results would have been different. *Scott,* 58 F.Supp.2d at 811–12 (citing *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). Petitioner "does not have to show that his counsel's deficient conduct 'more likely than not altered the outcome in the case.'" *Glenn,* 71 F.3d at 1210 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Rather, the question "is whether counsel's errors were serious enough to deprive the petitioner of a proceeding the result of which was 'reliable,'—'whether counsel's conduct so undermined the proper functioning of the adversarial system that the trial [a term that includes capital sentencing proceedings] cannot be relied upon as having produced a just result.'" *Id.* at 1210–11 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052) (brackets in the original).

Finally, this Court "must defer to state court factual findings, according [them] a presumption of correctness that [Petitioner] may rebut only with clear and convincing evidence." *Groseclose,* 130 F.3d at 1163–64. "The presumption only applies to basic, primary facts, and not to mixed questions of law and fact"—such as the ultimate question of the ineffectiveness of counsel—which receives *de novo* review by the reviewing court. *Id.* at 1164. Thus, this Court must presume correct any underlying state court factual findings relating to Petitioner's claim of ineffectiveness of trial counsel during the mitigation phase of trial, but must not defer to the state court's ultimate conclusion of whether counsel was ineffective.[19]

---

19. As noted earlier; because the AEDPA amendments do not apply retroactively to cases pending as of the date of enactment, those amendments are not applicable to this case. *See Lindh,* 521 U.S. at 326–27, 117 S.Ct. 2059. Thus, this Court applies the former statute's presumption of correctness regarding a state court determinations of fact and law, 28 U.S.C. § 2254(d) (1994), rather than the new standards requiring greater def-

### 3. *Claim 3 Is Without Merit: The Guilt Phase*

Petitioner cites to numerous instances of allegedly ineffective assistance of counsel in the guilt, mitigation and penalty phases of Petitioner's trial. Having reviewed this matter, the Court finds that Petitioner's claim of ineffective assistance of counsel is without merit for the following reasons.

### 3(a). *Waiver Of Jury* [20]

■ Petitioner alleges that his trial counsel were ineffective because "they twice allowed their client to waive his right to a jury trial" (doc. 46). Petitioner contends that he gained nothing by waiving his right to a trial by jury, and, in contrast, he lost many substantial constitutional protections by choosing a three-judge panel instead. The Court believes it is important to highlight for the sake of completeness the relevant portions of the trial transcript [21] in which Petitioner entered his second waiver of a trial by jury:

> **Mr. Schmidt:** Your Honor, we have at this time spoken to our client. Our client has chosen to execute another waiver in this case of his right to a trial by jury and we have presented that to the court, endorsed by my client, or by our client and ourselves.
>
> **The Court:** All right, just when you think you've seen everything in this business, it turns out you haven't. This is unusual in that the defendant previously waived the trial by jury in this case, withdrew the waiver and now wants to waive again,
>
> So, Mr. Smith, I want you to listen to what I have to say because I want to make sure that you really do want to waive a jury. I'll read this into the record.
>
> It says I, William H. Smith, defendant in the above case, hereby voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a three-judge panel as provided in Section 2945.06 of the Ohio Revised Code of the court in which the said cause, that means case, may be pending. I fully understand under the laws of this state that I have a constitutional right to a trial by jury and the form is signed by William H. Smith, defendant. And I see Mr. Ranz's signature and Mr. Schmidt's signature which I recognize.
>
> On this signature here, Mr. Smith, can you see where I'm pointing?
>
> **Defendant Smith:** Yes, sir.
>
> **The Court:** It says William H. Smith above the word defendant. Did you write that?
>
> **Defendant Smith:** Yes, sir.
>
> **The Court:** Did you go over this form with your lawyers thoroughly before you signed it?
>
> **Defendant Smith:** Yes, sir.
>
> **The Court:** And do you really want to waive a jury again? Is that what you want to do?
>
> **Defendant Smith:** Yes, sir.
>
> **The Court:** Do you know that when you waive a three-judge panel there's a possibility that you could still receive the death penalty; do you understand that?
>
> **Defendant Smith:** Yes, sir.
>
> **The Court:** In other words, by waiving a jury, that doesn't mean you're going to avoid the death penalty; do you understand that?
>
> **Defendant Smith:** Yes, sir.

erence to the state courts as provided in the amended statute, 28 U.S.C. § 2254(e) (1999).

**20.** This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the fifty-sixth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(a) is not procedurally defaulted and is ripe for federal habeas review as to the merits.

**21.** *See* doc. 47, Attach. 2, p. 7–12, March 1–4, 1988.

**The Court:** You understand when you have a three-judge panel, the three judges sit right here and we hear all the evidence and we make all the decisions in the case the same way a jury would make it; you understand that?

**Defendant Smith:** Yes, sir.

**The Court:** Now I know you've talked with your lawyers about this. You have talked with him extensively about this, Mr. Schmidt and Mr. Ranz?

**Mr. Schmidt:** Yes, sir.

**Mr. Ranz:** Yes, sir.

**The Court:** Is your waiver voluntary? Is anybody forcing you to waive a jury?

**Defendant Smith:** No, sir.

**The Court:** You're doing this of your own free will?

**Defendant Smith:** Yes, sir.

**The Court:** You understand everything I've asked you so far?

**Defendant Smith:** Yes.

**The Court:** Do you have any questions of me? Is there anything you want to ask me about the waiver?

**Defendant Smith:** No, sir.

**The Court:** All righty, and you've been locked up?

**Mr. Schmidt:** There was a different matter, Your Honor.

**The Court:** You've been locked up for a long time, Mr. Smith. I assume you're not under the influence of any medication or drug at this time, are you?

**Defendant Smith:** No.

**The Court:** And are you going to stick with this waiver or try to withdraw it again?

**Mr. Schmidt:** No, sir. We talked this over with Mr. Smith and I don't mind telling the court in open court that Mr. Smith has agreed if he waives his jury, he will stick with the agreement.

**Defendant Smith:** Right.

**The Court:** You think it's voluntary, Mr. Schmidt?

**Mr. Schmidt:** Yes, sir.

**The Court:** You think it's voluntary?

**Defendant Smith:** Yes, sir.

**The Court:** Mr. Smith, you've had plenty of time to talk to Mr. Schmidt and Mr. Ranz about it?

**Defendant Smith:** Yes.

**The Court:** You're satisfied with their representation?

**Defendant Smith:** Yes, sir.

**The Court:** Okay, well the Court believes the waiver is voluntary. I accept the waiver and the case will proceed to trial as a three-judge panel case....

(doc. 47, Attach.2).

Petitioner notes that the record does not reflect whether his trial counsel advised him of the full consequences of waiving the jury. However, the Court emphasizes that it is Petitioner's burden to show that counsel rendered ineffective assistance. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373, 380 (1989). The fact that counsel did not advise Petitioner on the record hardly suggests that counsel failed to advise him at all. Lawyers normally advise their clients in private rather than on the record. Petitioner has failed to affirmatively show that his lawyer did not advise him of the full consequences of waiving a jury. Additionally, the record contradicts Petitioner's allegations that he had been instructed that his waiver was absolute. Petitioner had previously waived a jury and rescinded the waiver. Counsel merely represented to the trial court that Petitioner had decided he would waive his right to a jury trial and that such was his final decision.

Having reviewed this issue thoroughly, the Court finds that it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland*. In particular, Petitioner fails to establish that his counsel were in fact ineffective and Petitioner did not establish that he suffered prejudice from any of the alleged deficiencies of his trial counsel, especially in light of the overwhelming evidence that

affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(a).

### 3(b). *Failure To Request A Criminal Investigator* [22]

 Petitioner next contends that if his trial counsel had requested an investigator or conducted an investigation on their own, they could have discovered the following important information:

(1). Janice Echols could not identify Smith as the individual that was out drinking with Mary Bradford and Ms. Echols, the night Ms. Bradford was murdered;

(2). Brenda Henson, who identified Smith at trial as the individual with Mary Bradford, initially identified the individual with Ms. Bradford as a perfume salesman who had previously been to the bar;

(3). Janice Echols and Mary Bradford were driving around with an individual who was driving a blue car, not the brown car that Smith owned;

(4). A police officer observed a blue car with the back window out in the same neighborhood in which the killing occurred;

(5). Witnesses described the individual with Mary Bradford as being tall and very skinny.

(doc. 46).

Petitioner submits that the information set forth above could have been helpful to Petitioner's defense if trial counsel had been diligent in preparing and investigating Petitioner's case. However, Petitioner has not set forth a substantial basis for a finding that his counsel's alleged failure to obtain the employment of a criminal investigator deprived him of a fair trial. Mr. Ranz recalled in his deposition that, although a private investigator had not been used, a pretrial investigation had been conducted (Ranz Dep. at 28–34). Hence, on this record, Petitioner's claim of prejudice from counsel's failure to employ the services of a criminal investigator is merely speculative.

Having reviewed the alleged failure of trial of trial counsel to request a criminal investigator, this Court finds that it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland*. In particular, Petitioner fails to establish that counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and the imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(b).

### 3(c). *Failure To Request A Criminalist* [23]

 Petitioner next asserts that trial counsel failed to challenge an expert witness that was presented by the State via an independent defense expert (doc. 46). Moreover, Petitioner submits that this was a significant misstep considering that the State's experts could not conclusively im-

---

**22.** This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the thirty-first claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(b) is not procedurally defaulted and is also ripe for federal habeas review as to the merits.

**23.** This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the fifty-fifth and fifty-sixth claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignments of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(C) is not procedurally defaulted and is ripe for federal habeas review on the merits.

plicate Petitioner and a defense expert could have presented an alternative suspect for the trier of fact to consider.

Petitioner has not set forth a substantial basis for a finding that his counsel's alleged failure to obtain a criminalist deprived him of a fair trial. Indeed, as noted by the trial court, Petitioner makes no showing whatsoever as to what, if any, evidence would have been found by a criminalist (doc. 47, Ex. DD). Thus, on this record, Petitioner's claim of prejudice from counsel's failure to employ a criminalist is merely speculative.

Having reviewed Petitioner's allegation regarding the failure of his counsel to request a criminalist, this Court finds that it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland*. In particular, Petitioner fails to establish that he his counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(c).

### 3(d). *Failure To Hire An Independent Pathologist* [24]

Petitioner further alleges that counsel erred to his fundamental prejudice by failing to employ an independent pathologist in order to review the findings of the state's pathology expert, Dr. Bonnell (doc. 46).

Here it is apparent on the face of the record that trial counsel made a strategic decision not to contest the cause of death. Petitioner has not set forth a substantial basis for a finding that his counsel's alleged failure to obtain an independent pathologist deprived him of a fair trial.

Having reviewed trial counsels' alleged failure to obtain an independent pathologist, this Court finds that. it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland*. In particular, Petitioner fails to establish that his counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(d).

### 3(e). *Failure To Object Or Take Corrective Action* [25]

Petitioner asserts that counsel's failure to object to the numerous constitutional improprieties or to take corrective action at numerous points of Petitioner's trial resulted in the ineffective assistance of counsel (doc. 46).

Petitioner has not set forth a substantial basis for a finding that his counsel's alleged failure to obtain an independent pathologist deprived him of a fair trial. Furthermore, no prejudice occurred as Petitioner presents no evidence that would establish he would not have been convicted of the murder of Mary Bradford "but

---

24. This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the forty-eighth and fifty-sixth claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(d) is not procedurally defaulted and is ripe for federal habeas review as to the merits.

25. This sub-claim was not raised on direct appeal. It was asserted in part at the trial court during post-conviction proceedings as the fifty-sixth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(e) is not procedurally defaulted and is ripe for federal habeas review as to the merits.

for" counsel's failure to present this line of defense. Therefore, on this record, Petitioner's claim of prejudice from counsel's failure to object at various points of Petitioner's trial is merely speculative.

Having reviewed the alleged failure of trial counsel to object or to take corrective action at numerous points during Petitioner's trial, this Court finds that it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland.* In particular, Petitioner fails to establish that his counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(e).

### Claim 3 Is Without Merit: The Mitigation Phase

**3(f). Failure To Investigate And Prepare** [26]

In his Second Amended Petition, Petitioner alleges that, although the trial court indicated that it would approve of funding for Maggie Liverani to work for the defense team as a mitigation specialist, trial counsel was dilatory in securing the court's approval and in obtaining the necessary records (doc. 46). Petitioner asserts that this delay resulted in Ms. Liverani having insufficient time with which to do her investigation. Moreover, Petitioner submits that, according to Stacey Michael, a mitigation specialist who has worked on approximately 85 cases in Ohio, Petitioner was prejudiced in many significant respects, including:

---

26. This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the fifty-second, fifty-sixth, and fifty-seventh claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(f) is not proce-

(1) Petitioner's case was never adequately investigated;

(2) no coherent theory of mitigation was ever developed or presented by counsel;

(3) the court psychologist had insufficient information upon which to make her evaluation;

(4) Petitioner's drug dependency was never diagnosed or fully developed; and

(5) Petitioner's organic brain damage was never diagnosed or fully developed.

(doc. 46, Ex. 15).

Ms. Michael concludes by asserting that, in her opinion, the "lack of adequate investigation and preparation in the mitigation phase of Mr. Smith's trial led to significant information not being presented to the trier of fact on Mr. Smith's behalf, and that this information would have had a bearing on the sentencing decision in this case" (*Id.*).

Respondent counters that, under *Strickland v. Washington,* in order to show that counsel was ineffective, a *habeas corpus* petitioner first must demonstrate that counsel's performance was deficient, and second, that such performance prejudiced the defense (doc. 47). *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Respondent contends that, in order to demonstrate prejudice, an error must be such that there is a "reasonable probability ... that *but for* the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Therefore, Respondent argues that, in a death penalty sentencing context, the sentencer (i.e., the three-judge panel) would not have imposed a death sentence had the prejudice not existed. *Id.* at 695, 104 S.Ct. 2052.[27] Moreover,

---

durally defaulted and is ripe for federal habeas review as to the merits.

27. The Supreme Court noted:

When a defendant challenges a death sentence such as the one at issue in this case, the question is whether a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the

Respondent asserts that Petitioner's allegations of ineffective assistance of counsel during the guilt phase of Petitioner's trial fails as to both prongs of the *Strickland* test, and that, therefore, the writ should be denied.

In reviewing the merits of this claim in relation to Petitioner's post-conviction proceedings, the trial court in essence concluded that Petitioner's counsel had pursued lines of investigation comparable to the ones now suggested, and that, accordingly, Petitioner made no showing of deficient performance (doc. 47, Ex. DD). In light of the findings of the trial court, Petitioner cannot overcome the presumption that the particular means used by his counsel to investigate and prepare were sufficient as viewed by trial counsel at the time in question. Thus, Petitioner fails to demonstrate sufficient deficiencies in his counsel's investigation and preparation during the mitigation phase of his trial.

Furthermore, Petitioner fails to satisfy the second prong of the *Strickland* test. Prejudicial ineffective assistance of counsel under *Strickland* cannot be established on the general claim that additional witnesses should have been called in mitigation. *See Briley v. Bass*, 750 F.2d 1238, 1248 (4th Cir.1984); *see also Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir.1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial. Moreover, a defendant whose counsel does not offer additional witnesses or evidence that is merely cumulative is not ineffective. *See Brecheen v. Reynolds*, 41 F.3d 1343, 1367 n. 20 (10th Cir.1994); *Devier v. Zant*, 3 F.3d 1445, 1452 (11th Cir.1993); *Mathenia v. Delo*, 975 F.2d 444, 448 (8th Cir. 1992).

In the present case, Petitioner contends that a "mitigation specialist" would have aided him in presenting a more effective mitigation case. However, the record reveals that counsel presented significant evidence in mitigation. Trial counsel called as witnesses family members, former employers, a psychologist, and Petitioner's former minister. In addition, the defense also obtained the services of, and called as an expert witness, its mental health expert, Dr. Schmidtgoessling, to assist the defense with the formulation of a mitigation strategy. In her deposition, Dr. Schmidtgoessling acknowledged that Petitioner's psychological background included information that did tend to establish several mitigating factors in her efforts to prevent capital punishment in Petitioner's case (doc. 47, Dr. Schmidtgoessling's Dep.).

Having reviewed trial counsels' alleged failure to investigate and prepare an adequate defense in the mitigation phase of Petitioner's trial, this Court finds that it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland*. In particular, Petitioner fails to establish that counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency, in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(f).

### 3(g). Failure To Obtain A Neurologist [28]

█ Petitioner contends that he was prejudiced by trial counsels' failure to ob-

---

extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
*Strickland*, 466 U.S. at 695, 104 S.Ct. 2052.

**28.** This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the for-

ty-fifth, fifty-sixth, and fifty-seventh claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(g) is not procedurally de-

tain an independent neurologist and a neuro-physical evaluation because such an evaluation would have shown evidence of cerebral dysfunction contributing to adaptive deficits that impacted upon all phases of his trial (doc. 46). For example, Petitioner submits that Dr. Kathleen Burch, a clinical psychologist, performed a neuropsychological evaluation of Petitioner after his death sentence and reported:

(1) The neuropsychological evaluation of Petitioner yielded results that are consistent with the presence of mild diffuse cerebral dysfunction;

(2) Petitioner's test results indicated that deficits appear on tasks involving functions associated with frontal lobe activity;

(3) The pattern of results suggest either the diagnosis of diffuse traumatic brain damage or of chronic alcohol abuse; and

(4) The deficits observed would be reflected in his daily life in deficient planning ability, impaired efficiency of problem solving, poor impulse control, and difficulty making accurate, quick decisions based on changing situational demands.

(doc. 46, Ex. 23).

For Petitioner to prevail, he must show the presence of a "neuropsychological" condition that would have been a mitigating factor in his crime that, a reasonable attorney would have identified as mitigating evidence, and that "neuropsychological" testimony on the issue would have prevented the imposition of the death penalty. *See Stewart*, 74 F.3d at 134. Petitioner has not made the required showings, and in fact, he has offered nothing to substantiate his bare allegations. Further, it is apparent that trial counsel made a strategic decision after an investigation of the facts not to pursue this line of defense.

When Petitioner initially pled "Not Guilty by Reason of Insanity," counsel had the benefit of multiple psychological examinations of Petitioner. Once the initial examinations were completed, Petitioner's plea was later changed to not guilty. To require investigations into every possible mitigation defense, regardless of any basis for such, creates an impossible standard of effectiveness and imposes a burden upon defense counsel that is not now required by the Supreme Court.

Having reviewed trial counsels' alleged failure to obtain an independent neurologist and neuropsychological evaluation in the mitigation phase of Petitioner's trial, this Court finds that it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland*. In particular, Petitioner fails to establish that counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency, in light of the overwhelming evidence that affirms the reliability of both the findings of guilt and the imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(g).

**3(h). *Failure To Obtain A Psychologist*** [29]

■ Petitioner next alleges that trial counsel's failure to request an independent psychologist impacted upon all phases of Petitioner's trial (doc. 47). In addition, Petitioner argues that if an independent psychologist had been appointed, the result of his trial would have been different.

The Court concludes that Petitioner's constitutional rights under *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84

---

faulted and is ripe for federal habeas review as to the merits.

**29.** This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the forty-fifth, fifty-sixth, and fifty-seventh claims for relief; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number. This Court finds that subclaim 3(h) is not procedurally defaulted and is ripe for federal habeas review as to the merits.

L.Ed.2d 53 (1985) were not violated.[30] *Ake*'s guarantee of a state-funded *psychiatrist*[31] arises only after the defendant shows that his sanity will be "a significant factor at trial." *Id.*, 470 U.S. at 83, 105 S.Ct. 1087; *see also Harris v. Vasquez*, 949 F.2d 1497, 1516 (9th Cir.1990); *Cartwright v. Maynard*, 802 F.2d 1203, 1211 (10th Cir.1986); *Volson v. Blackburn*, 794 F.2d 173, 176 (5th Cir.1986); *Bowden v. Kemp*, 767 F.2d 761, 763 (11th Cir.1985). This Court also finds that the issue of Petitioner's sanity was never presented as "a significant factor at trial," and, thus, Petitioner was not constitutionally entitled to the appointment of an independent psychiatrist or a psychologist.

First, Petitioner did not raise insanity as a defense. At most, he sought to show that his mental capacity was diminished through drug and alcohol use, and that this allegedly deprived him of the specific intent necessary to convict him of intentional murder. Although *Ake* does not establish a bright line test for determining when a defendant has demonstrated that "sanity at the time of the offense will always be a significant factor," it is clear that *Ake* requires that the defendant, at a minimum, make allegations supported by a factual showing that the defendant's sanity is in fact at issue in the case. *Cartwright*, 802

F.2d at 1211–12; *see also Volson*, 794 F.2d at 176.

Second, such a showing is not made by merely positing that Petitioner was a habitual drug and alcohol abuser. *See Kordenbrock*, 919 F.2d at 1119; *see also Pedrero v. Wainwright*, 590 F.2d 1383, 1390–91 (5th Cir.1979) (pre-*Ake* case holding that insanity is not made an issue by showing defendant was a drug addict entitling him to a state-funded defense psychiatrist).

Having reviewed trial counsels' alleged failure to obtain an independent psychologist in the mitigation phase of Petitioner's trial, this Court finds that it too lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland*. In particular, Petitioner fails to establish that counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency, in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to subclaim 3(h).

### 3(i). *Failure To Present Good Behavior*[32]

Petitioner asserts that prior good behavior and good adjustment to prison life is a

---

**30.** In *Ake*, the Supreme Court held that an indigent defendant is entitled under the due process clause to expert psychiatric assistance where a defendant's sanity is a significant issue in the case. *See Kordenbrock v. Scroggy*, 919 F.2d 1091, 1103 (6th Cir.1990) (citing *Ake*, 470 U.S. at 83, 105 S.Ct. 1087). The Supreme Court further held that a defendant did not have "a constitutional right to choose a psychiatrist of his personal liking...." *Id.* (quoting *Ake*, 470 U.S. at 83, 105 S.Ct. 1087). The Supreme Court expressed concern that the indigent defendant have access to a "competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense." *Id.*

**31.** The Supreme Court in *Ake* never directly addressed the issue of a court-appointed psychologist. Nonetheless, this Court finds the

principles of "fair play and fundamental fairness" that were expressed in *Ake* are relevant to the issues presented by Petitioner. However, this Court also finds that Petitioner was not constitutionally entitled to a court-appointed independent, defense psychiatrist or psychologist under the circumstances as presented in his Second Amended Petition.

**32.** This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the fifty-third claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(i) is not procedurally defaulted and is ripe for federal habeas review as to the merits.

well-recognized mitigating circumstances that, if presented, must be considered by the trier of fact in weighing the aggravating circumstances (doc. 46). *See Skipper v. South Carolina,* 476 U.S. 1, 5, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). Petitioner alleges that he was prejudiced because such information, if emphasized by his trial counsel, could well have shifted the balance of aggravating circumstances and mitigating factors in favor of a life sentence.

The Court finds this sub-claim to be without merit as evidence of Petitioner's prison behavior was presented in Dr. Schmidtgoessling's report and through her testimony. The fact that the trial court refused to give it the weight that Petitioner felt it was due is not the result of any deficiency in representation.

Having reviewed trial counsels' alleged failure to present good behavior and good adjustment to prison life in the mitigation phase of Petitioner's trial, this Court finds that it lacks merit with respect to the requirements of ineffective assistance of counsel under *Strickland.* In particular, Petitioner fails to establish that counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(i).

### 3(j). *Failure To Object To The State's Closing* [33]

Petitioner's final sub-claim for relief under the general claim of "ineffective assistance of trial counsel" contends that "[n]early everything said by the prosecutor in his closing was objectionable" (doc. 46).

**33.** This sub-claim was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the fifty-seventh claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on

Specifically, Petitioner alleges that trial counsel should have, but failed to object to the following:

(1) Failed to object to the provisions of Ohio's death penalty statutes that require the accused to prove mitigating factors by a preponderance of the evidence;

(2) Failed to object to the unconstitutional procedures through which Ohio's death penalty statutes are administered;

(3) Failed to object to the prosecutorial misconduct that occurred throughout the mitigation phase of Petitioner's trial;

(4) Failed to object to the panel's considering two convictions in its mitigation deliberations when there was only one victim;

(5) Failed to object to Ohio's death penalty statutes being unconstitutional;

(6) Failed to object to the unconstitutionality of executing an individual with a low IQ; and

(7) Failed to object to the mandatory nature of Ohio's death penalty statutes.

(doc. 46).

Petitioner argues that he was severely prejudiced by the above alleged acts and omissions because there exists a reasonable probability that, were it not for counsel's errors, Petitioner would not have received a death sentence in this case (*Id.*). The Court finds no merit in Petitioner's sub-claim 3(j). This Court observes that the right to the effective assistance of counsel must be gauged against its purpose—to insure a fair proceeding:

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven. This Court finds that sub-claim 3(j) is not procedurally defaulted and is ripe for federal habeas review as to the merits.

*Dennis,* 68 F.Supp.2d at 898 (quoting *Strickland,* 466 U.S. at 692–93, 104 S.Ct. 2052).

As the Supreme Court has noted, "[a] fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The difficulties inherent in such an evaluation require a court to presume that counsel performed competently. *Id.* at 689, 104 S.Ct. 2052. Thus, to prevail, a party asserting that the conduct of an attorney was constitutionally defective must show that the representation fell below an objective standard of reasonable representation. *Id.* at 687–88, 104 S.Ct. 2052. The range of objective reasonable representation is very broad. For example, in *Strickland,* the Supreme Court stated that, where there is more than one possible defense strategy and counsel investigates and makes a choice, that choice is "virtually unchallengeable." *See Dennis,* 68 F.Supp.2d at 898 (citing *Strickland,* 466 U.S. at 690–691, 104 S.Ct. 2052).

Petitioner has not set forth a substantial basis for a finding that his counsel's failure to object at certain points in the mitigation phase of his trial deprived him of a fair trial. Even if Petitioner had established that his trial counsel served him ineffectively, he would still have to show that he was prejudiced as a result. *See Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). This Court finds Petitioner was not deprived of any substantive or procedural rights to which the law entitles him.

Having reviewed Petitioner's claim related to his counsel's alleged failure to object to numerous alleged constitutional improprieties in the mitigation phase of Petitioner's trial, this Court finds that these claims lack merit with respect to the requirements of ineffective assistance of counsel under *Strickland.* In particular,

Petitioner fails to establish that counsel were ineffective and that Petitioner suffered prejudice from any alleged deficiency in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences. Therefore, the Court finds that the assistance of counsel provided to Petitioner was effective in relation to sub-claim 3(j), in particular, and claim 3, in general.

**E.** ***Petitioner's Fourth, Sixth, And Seventh Grounds For Relief: Sufficiency Of The Evidence For Claims 4, 6, & 7.***

**Smith's Murder Convictions, Aggravating Circumstances, And Death Penalty Sentences Are Not Supported By Sufficient Evidence In Violation Of His Rights To Due Process And Equal Protection As Guaranteed By The Fourteenth Amendment And Against Cruel And Unusual Punishment As Guaranteed By The Eighth Amendment (doc. 46).**

**1.** ***Claims 4, 6, & 7 Are Ripe For Federal Habeas Review***

Claim 4 was substantially raised on direct appeal before the Ohio Court of Appeals as the Second, Fourth, Fifth, Seventh, Eighth, and Eighteenth Assignments of Error; and on direct appeal before the Ohio Supreme Court as Propositions of Law Numbers Three, Four, Six and Seven. It was asserted at the trial court during post-conviction proceedings as the fifteenth, twenty-first, twenty-fourth, twenty-fifth, forty-third, and forty-ninth claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Claim 6 was substantially raised on direct appeal before the Ohio Court of Appeals as the Second, Fourth, Fifth, Seventh, Eighth, and Eighteenth Assignments of Error; and on direct appeal before the Ohio Supreme Court as Propositions of

Law Numbers Three, Four, Six, and Seven. It was asserted at the trial court during post-conviction proceedings and during post-conviction proceedings as the fifteenth, twenty-first, twenty-fourth, twenty-fifth, forty-third, and forty-ninth claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Claim 7 was raised substantially on direct appeal before the Ohio Court of Appeals as the Ninth Assignment of Error; and on direct appeal before the Ohio Supreme Court as Proposition of Law Number Thirteen. It was asserted at the trial court in post-conviction proceedings as the sixth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Having reviewed this matter, the Court finds that the Parties are correct in asserting that claims 4, 6, and 7 are not procedurally defaulted and are ripe for federal habeas review (*see* docs. 47 & 51).

### 2. *Claims 4, 6, & 7 Are Without Merit*

#### 2(a). *Insufficient Evidence: Jackson v. Virginia*

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt every element necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Harris v. Marshall*, 687 F.Supp. 1166, 1168 (S.D.Ohio 1987). When a state prisoner challenges his conviction on the grounds that the jury's verdict is not supported by sufficient evidence, the standard of review is as follows:

[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *see also Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).

In other words, the reviewing court does not ask itself whether it believes the record evidenced at trial established guilt beyond a reasonable doubt or whether the instructions given the jury were proper. Instead, the court examines the evidence in a light most favorable to the government, and every inference from the evidence presented must be drawn in favor of the government. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Johnson*, 406 U.S. at 362, 92 S.Ct. 1620; *Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir.1985).

We recognize that, at a minimum, "reasonable doubt" is one based upon "reason" created either from the evidence or a lack thereof. *Jackson*, 443 U.S. at 317 n. 9, 99 S.Ct. 2781; *see also Johnson*, 406 U.S. at 360, 92 S.Ct. 1620. The evidence need not be absolute in convincing the trier of fact of the defendant's guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.1983) (stating that "the inquiry as to the sufficiency of the evidence does not require or permit a court 'to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.'"); *see also Coleman v. Edwards*, 168 F.3d 489 (6th Cir.1998). Moreover, in federal habeas review, all possible interpretations of the evidence except guilt beyond a reasonable doubt need not be ruled out. *Harris*, 687 F.Supp. at 1168 (citing *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986)); *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984) (indicating that circumstantial evidence alone may be sufficient to sustain a conviction, and that such evidence need

not remove every reasonable hypothesis except that of guilt).

When a federal court is presented with a record that supports conflicting inferences, it must presume that the trier of fact would resolve any conflict in favor of the prosecution. *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. It was the jury's duty to choose which of defendant's statements it believed, *Scott v. Perini,* 662 F.2d 428, 434 (6th Cir.1981), and not the district court's responsibility to weigh the credibility of witnesses. *Walker,* 703 F.2d at 970. Furthermore, the district court is not permitted to overturn a conviction merely because it would have acquitted the defendant had it acted as the finder of fact. *Brown,* 752 F.2d at 1147; *Walker,* 703 F.2d at 969. The Fourteenth Amendment imposes "no requirement that all other interpretations of the evidence except guilt of the defendant be ruled out." *Delk v. Atkinson,* 665 F.2d 90, 100 (6th Cir. 1981). Thus, the due process "sufficient evidence" guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the crime. *See Allen v. Redman,* 858 F.2d 1194, 1196–98 (6th Cir.1988). Having reviewed the standard set by the Supreme Court for a claim of insufficient evidence, the Court will now examine the record that is before us in order to determine if the evidence that lead to Petitioner's conviction was sufficient.

### 2(b). *Sufficient Evidence Found In The Record*

■ The Court finds that Petitioner's allegations set forth in claims 4, 6, and 7 present issues concerning the sufficiency of the State's evidence that was presented at his trial (doc. 46). Petitioner's argument that, insufficient evidence existed to convict him of aggravated murder, to convict him of the aggravating circumstances or to sentence him to death may be dealt with collectively and summarily. Respondent submits, and this Court agrees, that the Ohio Supreme Court,[34] applying federal constitutional precedent, reasonably and correctly disposed of Petitioner's insufficiency of the evidence claims. The Ohio Supreme Court wrote:

In [P]roposition of Law III, Smith argues that the prosecution failed to prove that Bradford was still alive when Smith had sex with her. Smith contends that Bradford died within three or four minutes of fatal wounds eight and nine and that these wounds must have been inflicted while Bradford was still in the living room. However, the evidence shows that Bradford was alive when Smith raped her. Smith admitted "she [Bradford] was still breathing" when he had sex with her after she had been stabbed.

Moreover, the facts support the view that wounds eight and nine must have been inflicted while Bradford was in the bedroom. Smith's pretrial confession suggests that the chest stabbings occurred after he had sex with her in the bedroom, since he ascribed her earlier loss of blood while in the living room to the stomach wound. The absence of signs of struggle in the apartment, and the absence of defensive and twisting wounds in Bradford's body, tend to prove that Smith stabbed her several times while in the bedroom after he raped her. The physical evidence, including Bradford's bloodstained pants and panties scattered on the bedroom floor, is also consistent with her being raped while alive in the bedroom. Moreover, Smith could have raped her while in the bedroom even if he had inflicted stab wounds eight and nine while in the living room just minutes before. Thus, all the elements of rape are established.

In [P]roposition of Law IV, Smith argues that the evidence fails to establish

34. *See Smith,* 61 Ohio St.3d at 289–91, 574 N.E.2d at 515–517.

that his intent to take Bradford's property or the actual taking of the property coincided with his threat or use of force and hence he is not guilty of aggravated robbery. In effect, Smith argues Bradford was already dead before he decided to take her property.

However, the victim of a robbery, killed just prior to the robber's carrying off her property, is nonetheless the victim of an aggravated robbery. The victim need not be alive at the time of the asportation. A robber cannot avoid the effect of the felony-murder rule by first killing a victim, watching her die, and then stealing her property after the death (citations omitted).

Moreover, the evidence establishes Smith's intent to rob Bradford even before he stabbed her. According to Smith, he was angry when he returned and discovered his cocaine gone. He wanted "restitution" from Bradford, and took it initially in the form of sex. "[B]ut then after I got that it wasn't good enough, you know, so I asked her like you got any money and stuff, you know. She said she ain't have no money. So we start arguing and stuff and next thing ... [she got a knife]." Thus, Smith, even before the stabbing, was demanding money and property "as restitution," and the stabbing occurred as a result of those demands for money and property.

Additionally, the panel could have found, under the evidence, that Bradford was not dead when Smith began taking her property. Bradford was clearly alive, according to Smith, when he had sex with her after she had been stabbed in the stomach. He could well have inflicted wounds eight and nine (the most lethal) any time after that, and the coroner testified that Bradford could have lived up to five minutes after those stab wounds. Smith may have even inflicted those stab wounds after he started carrying away her property because he admitted he made four trips to his car.

In [P]ropositions of Law V and VI, Smith argues that the State failed to prove the specified aggravating circumstances that the murder occurred while Smith was committing or attempting to commit or fleeing immediately after committing or attempting to commit the offenses of rape and robbery. However, as discussed, the prosecution proved that the murder occurred in the course of rape and robbery. The term "while" in R.C. 2903.01(B) means only "that the murders were associated with the kidnapings, robbery, and rapes 'as part of one continuous occurrence....' "

In [P]roposition of Law VII, Smith argues that the trial court should have convicted him only of voluntary manslaughter because the victim attacked him first and he was under extreme emotional stress. "Extreme emotional stress," as described in R.C. 2903.03, is a "circumstance, the establishment of which mitigates a defendant's criminal culpability" (citations omitted).

"Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force..." (citation omitted).

However, the evidence supports the commission of aggravated murder and not manslaughter (citations omitted). The trial panel may have believed that Smith did not lose any cocaine in the house or, that if he did, Bradford was not responsible for that loss. In any event, her refusal to provide "restitution" did not constitute "serious provocation occasioned by the victim" within the meaning of R.C. § 2903.03.

Bradford, a small, asthmatic forty-seven year old woman, facing demands for sex, money and other property, could defend herself by a knife from her own kitchen. Even if she did so, and got stabbed in the ensuing struggle, she did

not provoke the nine stab wounds that Smith thereafter viciously inflicted on her.

The lack of any defensive wounds or bruises on her body supports the lack of provocation and Smith admitted that he sliced Bradford's throat to silence her because she called him a name.

In sum, the evidence was more than adequate to sustain the convictions against challenges to the sufficiency of the evidence (citation omitted).

*Smith,* 61 Ohio St.3d at 289–91, 574 N.E.2d at 515–517 (citations omitted).

Thus, upon review of the record and the facts herein, we conclude that there was sufficient evidence from which the three-judge panel could find Petitioner guilty of murder, with aggravating circumstances, and subsequently sentenced him to death. This Court finds claims 4, 6, and 7 to also be without merit.

### F. *Petitioner's Fifth Ground For Relief: Claim 5*

**The Trial Court Violated Smith's Rights To Due Process And Equal Protection As Guaranteed By The Fourteenth Amendment, Against Cruel And Unusual Punishment As Guaranteed By The Eighth Amendment, And To A Fair Trial, Effective Assistance Of Counsel, And Confrontation As Guaranteed By The Sixth Amendment, When The Trial Court Denied Smith's Request For A Pharmacologist (doc. 46).**

#### 1. *Claim 5 Is Ripe For Federal Habeas Review.*

Claim 5 was raised on direct appeal before the Ohio Court of Appeals as the Sixteenth Assignment of Error; and on direct appeal before the Ohio Supreme Court as Proposition of Law Number Two. It was also asserted before the trial court in post-conviction proceedings as the sixteenth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Having reviewed this matter, the Court finds that the Parties are correct in asserting that claim 5 is not procedurally defaulted and is ripe for federal habeas review (*see* docs. 47 & 51).

#### 2. *Claim 5 Is Without Merit*

Petitioner asserts that, prior to trial, counsel unsuccessfully moved the trial court to appoint a pharmacologist to evaluate Petitioner to determine the psychological and physiological effects of prolonged drug and alcohol abuse upon Petitioner (doc. 46). Petitioner contends that a pharmacologist would have determined what effect drugs and alcohol had on Petitioner the night of the offense and when he made his statement to the police. In addition, a pharmacologist would have further presented evidence in this regard at the mitigation hearing. Petitioner argues that he was prejudiced by the denial of a pharmacologist to the defense team because alcohol and drug abuse and their effects on the body and mind of Petitioner were substantial factors to be considered by the trier of fact.

Under 28 U.S.C. § 2254(d) and pre AEDPA law, a reviewing federal court must initially decide whether there was a factual determination issue in a state court proceeding. The Northern District Of Ohio's court observed that:

> [Section 2254(d)] makes no distinction between the factual determinations of a state trial court and those of a state appellate court. Nor does it specify any procedural requirements that must be satisfied for there to be a "hearing on the merits of a factual issue," other than that the habeas applicant and the state or its agent be parties to the state proceeding and that the state-court determination be evidenced by "a written finding, written opinion, or other reliable and adequate written indicia." Section

2254(d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court.

*Cooey,* 988 F.Supp. at 1074–75 (quoting *Sumner,* 449 U.S. at 546, 101 S.Ct. 764).

If a state court made a factual determination, then the reviewing federal court must then presume that the determination was correct unless the petitioner can demonstrate any of the following eight factors:

(1) That the merits of the factual dispute were not resolved in the state court hearing;

(2) that the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the state court hearing;

(4) that the state court lacked jurisdiction of the subject matter or over the person of the applicant in the state court proceeding;

(5) that the applicant was an indigent and the state court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the state court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the state court proceeding; or

(7) that the applicant was otherwise denied due process of law in the state court proceeding; or

(8) unless that part of the record of the state court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

*Cooey,* 988 F.Supp. at 1075 (quoting U.S.C. § 2254(d) (1994)).

In addition to minimizing the friction between the state and federal courts, "the limited nature of the review provided by § 2254 also serves the interest that both society and the individual criminal defendant have in insuring that there will at some point be the certainty that comes with an end to litigation." *Cooey,* 988 F.Supp. at 1075, (quoting *Sumner,* 449 U.S. at 550 n. 3, 101 S.Ct. 764); *see also Sanders,* 373 U.S. at 24–25, 83 S.Ct. 1068 (Harlan, J., dissenting); *Schneckloth,* 412 U.S. at 262, 93 S.Ct. 2041 (Powell, J., concurring).

Having reviewed the record before us, this Court finds that the Ohio Supreme Court [35] reasonably and correctly rejected this claim:

In [P]roposition of Law II, Smith argues the trial court erred in declining to appoint a pharmacologist to advise and perhaps testify as to the effect of alcohol and drugs on Smith's system. In deciding any requests for experts paid for by the state, a trial court must make an informed decision if the services are "reasonably necessary for the proper representation" of an indigent defendant under R.C. § 2929.024. In addition, the court must also consider the availability of alternative devices to fulfill those same functions (citation omitted).

Here, Smith's bare assertion of need, without particular facts to support that assertion, fails to establish reasonable necessity for those services. Moreover, Smith has alternate methods to fulfill that need. Smith's lawyers could have consulted the mental health professionals appointed by the court, who had examined Smith, to advise them on how drugs and alcohol affected Smith's mental state. In fact, Dr. Nancy Schmidt-goessling, Ph.D.,[a licensed psychologist] testified about the effects of cocaine, marijuana and alcohol on Smith. Thus,

---

**35.** *See Smith,* 61 Ohio St.3d at 288–89, 574 N.E.2d at 515–516.

the trial court did not abuse its discretion in denying the request (citation omitted.)

*Smith,* 61 Ohio St.3d at 288–289, 574 N.E.2d at 515–16 (citations omitted).

■■■■ The Ohio Supreme Court's analysis for the appointment of experts is consistent with federal law. A trial court's denial of a motion to appoint experts on behalf of a defendant will be reviewed for an abuse of discretion. No constitutional right exists for the absolute appointment of any expert, investigator, or other professional a defendant seeks to have appointed. A valid claim in *habeas corpus* is only present where denial of the assistance sought causes substantial prejudice to the defense. *See Coleman,* 802 F.2d at 1236. For the reasons cited by the Ohio Supreme Court, this Court finds no such showing has been made in this case. Thus, claim 5 is without merit.

### G. Petitioner's Eighth Ground For Relief: Claim 8

**The Trial Court's Weighing Of Aggravated Circumstances Against Mitigating Factors Was Flawed Violating Smith's Rights To Due Process And Equal Protection As Guaranteed By The Fourteenth Amendment, Against Cruel And Unusual Punishment As Guaranteed By The Eighth Amendment, And The Effective Assistance Of Counsel As Guaranteed By the Sixth Amendment (doc. 46).**

### 1. Claim 8 Is Ripe For Federal Habeas Review

Claim 8 was raised on direct appeal before the Ohio Court of Appeals as the Third and Thirteenth Assignments of Error; and on direct appeal before the Ohio Supreme Court as Propositions of Law Numbers Nine and Ten. It was also asserted at the trial court during post-conviction proceedings as the first, seventh, and thirty-sixth claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Having reviewed this matter, the Court finds that the Parties are correct in asserting that claim 8 is not procedurally defaulted and is ripe for federal habeas review (*see* docs. 47 & 51).

### 2. Claim 8 Is Without Merit

■■ Petitioner alleges that the trial court's reasoning supporting its decision that he should die discloses that the court failed to comply with its constitutional mandates (doc. 46). First, Petitioner asserts that the trial court improperly considered the non-statutory aggravating circumstances as its reasons for imposing death. Petitioner also asserts that the trial court failed to consider what few mitigating factors had been presented by counsel at that time. Petitioner argues that he was prejudiced because the consideration of non-statutory and inflammatory aggravator weighted the scales toward death. Moreover, it is particular egregious, Petitioner contends, because there is a strict prohibition in Ohio against the consideration of non-statutory aggravating circumstances. In addition, Petitioner submits that the Ohio Court of Appeals repeated the trial court's error when it indicated that the mitigating circumstances were outweighed by the nature and circumstances of the crime.

Having reviewed the record before us, the Court finds that the Ohio Supreme Court reasonably and correctly rejected Petitioner's contention. The Ohio Supreme Court wrote:

In [P]roposition of Law X, Smith argues that the trial court used the nature and circumstances of the offense as a non-statutory aggravating circumstance; however, Smith's argument lacks merit because the panel's opinion listed only the nature and circumstances of the offense as a possible, but not relevant, mitigating factor. Their opinion did not list any non-statutory aggravating cir-

cumstances. Their reference to the nature and circumstances of the offense was proper since, "[u]nder R.C. § 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors" (citation omitted).

*Smith*, 61 Ohio St.3d at 293, 574 N.E.2d at 518 (citations omitted).

Having reviewed this matter, the Court finds that the Ohio Supreme Court reasonably and correctly determined that the trial court followed the dictates of state law in performing its penalty-phase deliberations at trial. The latter determination is consistent with constitutional requirements, as set forth by the United States Supreme Court. The states enjoy wide freedom to structure and shape the parameters of the consideration of mitigating evidence. *See Boyde*, 494 U.S. at 376, 110 S.Ct. 1190; *see also Walton v. Arizona*, 497 U.S. 639, 652, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Thus, to the extent that Petitioner's contention is construed as a constitutional claim allegedly cognizable in federal habeas review, it is precluded by well-established Supreme Court precedent. For the reasons cited by the Ohio Supreme Court, this Court finds that claim 8 is without merit.

## H. *Petitioner's Ninth Ground For Relief: Claim 9*

**Petitioner Smith Was Denied His Rights To A Fair Trial, To Due Process, And To A Reliable Death Sentence By The State's Improper Arguments And Tactics Throughout This Trial. Accordingly, Petitioner's Rights Under The Fifth, Sixth, Eighth, And Fourteenth Amendments Were Violated And His Convictions And Sentences Are Void Or Voidable (doc. 46).**

### 1. *Sub-Claims 9(a) & 9(b) Are Ripe For Federal Habeas Review* [36]

Claim 9(a) was asserted on direct appeal before the Ohio Court of Appeals as the Sixth Assignment of Error, Subparagraph (B); and on direct appeal before the Ohio Supreme Court as Proposition of Law Number Twelve, Subparagraph (B).

Claim 9(b) was raised on direct appeal before the Ohio Court of Appeals as the Seventeenth Assignment of Error; and on direct appeal before the Ohio Supreme Court as Proposition of Law Number Eight. It was also asserted at the trial court during post-conviction proceedings as the twelfth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Having reviewed this matter, the Court finds that the Parties are correct in asserting that sub-claims 9(a) and 9(b) are not procedurally defaulted and are ripe for federal habeas review (*see* docs. 47 & 51).

### 2. *Supreme Court Case Law On Prosecutorial Misconduct*

In *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Supreme Court noted that, on habeas review, "the relevant question is, whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Furthermore, it is well-established that prosecutorial comments that do not render a trial fundamentally unfair when evaluated in the context of the totality of the circumstances cannot serve as the basis for re-

---

**36.** Petitioner also alleges, as sub-claim 9(c), prosecutorial misconduct in the guilt phase of the trial. However, as this sub-claim does not appear to have been raised as an independent claim in any state court proceeding, it is found to be procedurally barred.

versal of a conviction. This determination must be made by considering the totality of the circumstances of each case. *See, e.g., United States v. Hurst,* 951 F.2d 1490, 1502–03 (6th Cir.1991); *Lundy v. Campbell,* 888 F.2d 467, 481 (6th Cir.1989); *United States v. Causey,* 834 F.2d 1277, 1284 (6th Cir.1987); *Beam v. Foltz,* 832 F.2d 1401, 1408 (6th Cir.1987); *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982).

In *United States v. Reed,* 2 F.3d 1441, 1450 (7th Cir.1993), the Seventh Circuit explained the requisite considerations a court should ponder when deciding the issue of prosecutorial misconduct:

> To succeed in his claim, [the petitioner] must demonstrate that "the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" (citation omitted). "When analyzing allegations of prosecutorial misconduct during arguments, we look at the disputed remarks in isolation to determine if they are proper. If the statements are proper, our analysis ends. If the statements are improper, our second step is to look at the remarks in light of the entire record to determine if the defendants were deprived of a fair trial... " (citation omitted). [The] five factors to be considered when weighing the propriety of a prosecutor's comments are: (1) the nature and seriousness of the prosecutorial misconduct, (2) whether the prosecutor's statements were invited by the conduct of defense counsel, (3) whether the trial court instructions to the jury were adequate, (4) whether the defense was able to counter the improper argument through rebuttal, and (5) was the weight of the evidence against the defendant.

*Id.,* 2 F.3d at 1450 (citations omitted).

### 3. *Sub–Claims 9(a) & 9(b) Are Without Merit*

#### 3(a). *Prosecutorial Misconduct In Charging Decision*

■ Petitioner alleges in sub-claim 9(a) that the policies adopted by the Hamilton County Prosecutor's Office reflect a racial bias in the charging and prosecuting of capital offenses (doc. 46). Petitioner further alleges that, based on the 1980 Census of Population and Housing prepared by the U.S. Bureau of Census, the population of Hamilton County was 19.0% African–American. However, Petitioner asserts that, 62% of the death sentences in Hamilton County has been imposed on African–Americans (*Id.*). Petitioner argues that, because the administration of capital punishment in Ohio is infected with racism, Ohio's administration of capital punishment, as applied to Petitioner, violates the Eighth and Fourteenth Amendments to the United States Constitution.

Petitioner primarily contends that, based on statistical analysis and reasoning, the death penalty is imposed in a racially discriminatory manner. Nonetheless, in *McQueen v. Scroggy,* 99 F.3d 1302, 1333 (6th Cir.1996), the Sixth Circuit reaffirmed that references to statistical studies or anomalies is insufficient to establish a claim of racial discrimination:

> McQueen presents a hodge-podge of claims about the functioning of the Kentucky death penalty statute. The primary claim appears to be that the death penalty is disproportionately applied to blacks in the State of Kentucky .... The evidence offered by McQueen amounts to the same kind of statistical studies that the Supreme Court found insufficient in *McCleskey v. Kemp,* 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

*Id.* 99 F.3d at 1333.

In the present case, the data that Petitioner cites to is nothing more than the same type of data already rejected by the Supreme Court in *McCleskey* and the Sixth Circuit in *McQueen* and is insufficient to support a claim for racial bias. Nonetheless, Petitioner maintains that precedents such as *McCleskey* and *McQueen* are either inapplicable to or dis-

tinguishable from the facts presented in this case.

The Court would like to emphasize that, although Petitioner has not carried the day in regards to this claim, we believe that the statistics referred to by Petitioner in his Second Amended Petition reflect a sad state of affairs in regards to race and the criminal justice system. This Court is very much cognizant of the great racial divide that manifests itself in the application of the death penalty in our society. However, we are bound by the aforementioned decisions, and, thus we conclude that the statistics presented by Petitioner cannot support his claim for habeas relief in this action.

Having reviewed this matter, the Court finds sub-claim 9(a) is without merit.

### 3(b). *Prosecutorial Misconduct During Mitigation* [37]

■ Petitioner next alleges in sub-claim 9(b) that improper arguments by the prosecutor during the mitigation phase prejudiced his fundamental rights (doc. 46). Specifically, Petitioner asserts that the prosecutor violated Petitioner's rights by: (1) introducing Petitioner's alleged lack of remorse in the rape, robbery, and death of Mary Bradford; (2) injecting an insanity standard to prove Petitioner knew right from wrong; and (3) closing his case by improperly urging the three-judge panel to consider non-statutory aggravating circumstances in their decision-making.

Having reviewed the record in this matter, this Court finds that the Ohio Supreme Court [38] reasonably and correctly rejected Petitioner's allegations. The Ohio Supreme Court wrote:

In [P]roposition of Law VIII, Smith claims that the prosecutor's remarks during sentencing caused prejudicial error.

Smith first complains that the prosecutor compared him with various notorious murderers. However, Smith's counsel objected, and the court sustained the objection and told the prosecutor that he "should be arguing this case." Thus, at most, the prosecutor made improper comments at a bench trial, an objection was made and sustained, and the trial proceeded. In a criminal bench trial, the presumption is that the court considered only relevant, material and competent evidence in arriving at its judgment (citation omitted). In this case, the court affirmatively rejected the prosecutor's comments. Thus, Smith's claim of prejudicial error lacks any merit.

Smith also argues that the prosecutor, in his penalty phase argument, improperly referred to mitigating factors not raised by the defense. However, the prosecutor only briefly referred to some statutory factors simply to demonstrate those factors were not involved. His comments did not inject improper comments before a jury as previously condemned in *State v. DePew*, 38 Ohio St.3d 275, 289, 528 N.E.2d 542, 557–58 (1988). Additionally, the panel of judges must be presumed to have based their judgment only on relevant factors (citation omitted). Moreover, Smith's counsel did not object to the prosecutor's remarks and thereby waived all but plain error (citation omitted). Finally, our independent reassessment of the sentence will eliminate any sentencing error that may have occurred.[39]

---

**37.** We further stated that this court indulges … in the usual presumption that in a bench trial in a criminal case, the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.
*State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65, 70 (1968).

**38.** *Smith*, 61 Ohio St.3d at 291–92, 574 N.E.2d at 517–18.

**39.** *See Lott*, 51 Ohio St.3d at 170, 555 N.E.2d at 304; *Landrum*, 53 Ohio St.3d at 124, 559 N.E.2d at 729.

*Smith,* 61 Ohio St.3d at 291–92, 574 N.E.2d at 517–18 (citations omitted).

This Court finds that, after reviewing the totality of the circumstances surrounding Petitioner's claims of prosecutorial misconduct, the prosecutor's comments did not "so infect the trial with unfairness as to make the conviction a denial of due process." *Darden,* 477 U.S. at 181, 106 S.Ct. 2464. Therefore, we also find that claim 9(b) is without merit.

## I. *Petitioner's Tenth Ground For Relief: Claim 10*

**The State's Suppression Of Material And Exculpatory Evidence Interfered With Smith's Right To The Effective Assistance Of Counsel In Violation Of The Fifth, Sixth, Eighth, And Fourteenth Amendments (doc. 46).**

### 1. *Claim 10 Is Ripe For Federal Habeas Review*

Claim 10 was not raised on direct appeal. Insofar as it relates to Petitioner's general allegations that his counsel were not provided with discovery prior to trial, it was asserted at the trial court during post-conviction proceedings as the thirty-third, thirty-seventh, and forty-seventh claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Even though claim 10 was not raised on direct appeal by Petitioner, Respondent does not assert that claim 10 is procedurally defaulted and only objects to the merits of Petitioner's claim (doc. 47). Petitioner asserts that Respondent, by addressing only the merits of claim 10, waived any procedural default defenses he may have possessed. *See Lawrence v. Armontrout,* 31 F.3d 662, 666 (8th Cir.1994); *United States ex rel. Johnson v. Gilmore,* 860 F.Supp. 1291, 1294 (N.D.Ill.1994) (doc. 51). Therefore, Petitioner argues that this Court must address the merits of the above claim.

Having reviewed this matter and the record before us, the Court finds that claim 10 is not procedurally defaulted and is deemed ripe for federal habeas review (*see* docs. 47 & 51).

### 2. *Brady v. Maryland*

Petitioner is asserting a *"Brady* claim" from the United States Supreme Court case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Court set forth the proper standard regarding a state's obligation to disclose information favorable to a defendant.

■ The Court in *Brady* recognized that the state cannot withhold evidence favorable to the accused with respect to matters of guilt or sentencing. *Dennis,* 68 F.Supp.2d at 900 (citing *Brady,* 373 U.S. at 87, 83 S.Ct. 1194). To establish a *Brady* violation, a petitioner must prove that: (1) the prosecution suppressed the evidence; (2) the evidence would have been favorable to the accused; and (3) the suppressed evidence was material. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194; *see also Blasco,* 702 F.2d at 1327 ("If the defense makes a specific request for material that is suppressed, the standard of materiality is whether the suppressed evidence might have affected the outcome of the case.").

As noted earlier, materiality is an essential element of a *Brady* violation. A prosecutor is "not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Bagley,* 473 U.S. at 675, 105 S.Ct. 3375. "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose." *Dennis,* 68 F.Supp.2d at 900 (quoting *United States v. Agurs,* 427

U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

■ Evidence is material if "there is a reasonable possibility that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375; *see also Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Agurs,* 427 U.S. at 104, 96 S.Ct. 2392 ("A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."). In determining whether a petitioner has satisfied these requirements, the court must view the undisclosed evidence in relation to the record as a whole, as the materiality of exculpatory evidence will vary with the overall strength of the state's case. *Dennis,* 68 F.Supp.2d at 900.

The *Brady* rule is based upon the requirements of due process. Its purpose "is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *Bagley,* 473 U.S. at 675–76, 105 S.Ct. 3375. *Brady* simply recognizes the disparity in resources between the defendant and the state and attempts to level the playing field to some extent.

### 3. *Claim 10 Is Without Merit*

This Court also finds claim 10 to be without merit. Petitioner alleges that the State failed to disclose a statement from witness Brenda Henson that the defense could have used for impeachment purposes. In addition, Petitioner accuses the State of deliberately failing to disclose an allegedly exculpatory statement from another witness by the name of Janice Echols (doc. 51). Petitioner further alleges that he did not have the benefit of knowing that a patron at the bar could not identify Smith as the individual who left with Ms. Bradford on the night in question. Petitioner also asserts that one of

the State's witnesses made inconsistent statements in relation to the murder of Ms. Bradford. Petitioner fails to provide any arguments related to how these alleged statements were suppressed by the State, their materiality, or their exculpatory value to Petitioner.

■ The Court believes that it is important to note that *Brady* obviously does not apply to information that is not wholly within the control of the state. There is no *Brady* violation "where a defendant 'knew or should have known of the essential facts permitting him to take advantage of any exculpatory information,' or where the evidence is available ... from another source". *Clark,* 928 F.2d at 738 (quoting *United States v. Davis,* 787 F.2d 1501, 1505 (11th Cir.1986)); *see also United States v. Grossman,* 843 F.2d 78, 85 (2d Cir.1988) ("The rationality for our rule is that *Brady* is designed to assume that the defendant will not be denied access to exculpatory evidence only known to the [g]overnment."); *United States v. McMahon,* 715 F.2d 498, 501 (11th Cir.1983). Petitioner has not asserted any alleged *Brady* violations that are outside of this non-prejudicial category.

■ Without deciding whether the State actually withheld the evidence, this Court finds that the witness statements alleged to have been withheld by the State are neither exculpatory or material (*see* doc. 47, Ex. DD). First, with respect to the identification of Petitioner by Ms. Henson, the fact that she identified Petitioner as a patron of the bar, as well as a possible perfume salesman are neither contradictory to her testimony, nor material. There were no inconsistencies in the identification of Petitioner and no showing has been made by Petitioner that the standards for materiality have been met. Second, the testimony of Janice Echols was not material, as she could neither include nor exclude Petitioner as the person who left the bar with the victim. In sum, the allegedly withheld "exculpatory" evidence is simply

not compelling. This Court also finds claim 10 to be without merit.

### J. Petitioner's Eleventh Ground For Relief: Claim 11

**The Weighing Process Has Been Skewed By Allowing Two Counts Of Aggravated Murder With Two Duplicative Specifications Under Each Count To Be Weighed In Violation Of Smith's Double Jeopardy, Due Process, Equal Protection And Against Cruel And Unusual Punishment Rights Under The Fifth, Eighth, And Fourteenth Amendments (doc. 46).**

#### 1. Claim 11 Is Partially Procedurally Defaulted

Petitioner asserts two sub-claims to claim 11. First Petitioner asserts that he was erroneously convicted of two counts of aggravated murder based on the murder of a single victim (doc. 46). Respondent alleges that sub-claim 11(a) is procedurally defaulted and asserts that this Court should not review this sub-claim as to its merits.

Sub-claim 11(a) was not raised on direct appeal. It was asserted in Petitioner's petition for rehearing before the Ohio Supreme Court as Issue Number One. It was again asserted at the trial court in post-conviction proceedings as the twenty-eighth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

By failing to raise the foregoing sub-claim on direct appeal, Petitioner effectively waived that claim. The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of res judicata. Cole, 2 Ohio St.3d at 113, 443 N.E.2d at 169. Absent a showing of cause and prejudice, the procedural default rule set forth in Wainwright, 433 U.S. at 87, 97 S.Ct.

2497, precludes a federal district court from hearing an issue to which the state appellate courts applied a procedural bar. See Maupin, 785 F.2d at 135.

Having reviewed the record, this Court finds no cause or prejudice sufficient to excuse or justify Petitioner's failure to raise this sub-claim on direct appeal. The Court recognizes that the cause and prejudice requirements may be overlooked if a petitioner presents an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 496, 106 S.Ct. 2639. However, the Court finds that this Petitioner has not demonstrated or asserted a claim of factual innocence.

Furthermore, Petitioner has also not demonstrated that the failure of this Court to consider sub-claim 11(a) for relief will result in a "fundamental miscarriage of justice" in this matter. Accordingly, based on the foregoing application of the standards set forth in Wainwright and Maupin, the Court finds that sub-claim 11(a) is procedurally defaulted. Nevertheless, we also find that, even if the procedural default rule did not apply to sub-claim 11(a), sub-claim 11(a) should also be denied as to its merits.

Second, Petitioner asserts in sub-claim 11(b) that his convictions and death sentences are unconstitutional because the State "used the same operative facts to first elevate what would be 'ordinary murder' to aggravated murder, and then to capital, death-eligible, aggravated murder" (doc. 46). Respondent does not assert that sub-claim 11(b) is procedurally defaulted, but does object to sub-claim 11(b) as to the merits (doc. 47).

Sub-claim 11(b) was raised on direct appeal before the Ohio Court of Appeals as the First and Sixth Assignments of Error (Subparagraph (C)); and on direct appeal before the Ohio Supreme Court as Propositions of Law Numbers Eleven and Twelve (Subparagraph (C)). It was also asserted at the trial court in post-convic-

tion proceedings as the eleventh claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

The Court finds that sub-claim 11(b) is not procedurally defaulted and is ripe for federal habeas review.

### 2. *Claim 11 Is Without Merit*

■ Even assuming that Respondent's first sub-claim to claim 11 (i.e., "the two counts for one body theory") is not procedurally defaulted, it nonetheless lacks any merit. Petitioner argues that his rights have been violated due to the fact that he was indicted for two counts of aggravated murder and was subsequently found guilty on both counts. However, contrary to Petitioner's arguments, the sentencing for the two aggravating murder convictions were merged at sentencing (*see* doc. 47, Ex. B). Thus, the Court finds that no due process or double jeopardy violation has occurred.

Next, Petitioner attacks the manner in which the aggravating specifications were applied to his case. Respondent does not object to this sub-claim being procedurally defaulted and the Court finds no procedural bar to deciding this second sub-claim to claim 11 on its merits.

■ Petitioner contends that he was prejudiced because Ohio's statutory scheme, in the felony murder context, fails to narrow the class of offenders eligible for death, thus rendering meaningful appellate review impossible (doc. 46). In addition, Petitioner argues that this scheme violates Petitioner's right to equal protection under the law since the statutes allow death to be imposed upon less proof in aggravated felony murder cases than is required in cases of aggravated murder committed with prior calculation and design. Petitioner further argues that the aggravating specifications contained in Ohio Rev.Code § 2929.04(A)(7) merely duplicates the definition of felony murder found in § 2903.01(B), and, thus, the same act both convicts and aggravates. The Court finds that this argument lacks any merit. As noted by the Ohio Supreme Court:

> [W]hile a conviction under R.C. § 2903.01(B) cannot be sustained unless the defendant is found to have intended to cause the death of another, the state, in order to prevail upon an aggravating circumstance under R.C. § 2929.04(A)(7), must additionally prove that the offender was the principal offender in the commission of the aggravated murder or, if the offender was not the principal offender, that the aggravated murder was committed with prior calculation and design.

*Scott,* 58 F.Supp.2d at 782 (quoting *Jenkins,* 15 Ohio St.3d at 176, 473 N.E.2d at 280 n. 17).

Thus, the trial court had to find that Petitioner committed murder while committing or attempting to commit aggravated robbery and/or rape, and, further, that Petitioner was the principal offender or that the murder was premeditated. *See Barnes,* 25 Ohio St.3d at 206–07, 495 N.E.2d at 925. This additional factor does "narrow the class of persons eligible for the death penalty." *See Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). By using such a limitation, the category of death-eligible aggravated murderers are narrowed in compliance with *Zant* and no constitutional violations arise. *Id.,* 462 U.S. at 877, 103 S.Ct. 2733.

■ Moreover, even if it were true that the same act perpetrated by Petitioner both convicts and aggravates under § 2903.01(B) and § 2929.04(A)(7), this alone would not provide grounds for the issuance of the requested writ. The fact that the aggravating circumstance duplicates one of the elements of the crime does not alone make a death sentence infirm. *See Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The narrowing function required by *Zant*

"may be performed by the state legislature prior to and distinct from the sentencing process" to ensure that the number of those eligible for the death penalty are smaller than the number of those convicted. *Lowenfield,* 484 U.S. at 246, 108 S.Ct. 546. With § 2929.04(A), the Ohio General Assembly "narrow[ed] the class of felony murders subject to the death penalty by excluding those who commit [murder in the course of an] arson, robbery, burglary or escape, unless they are charged with different aggravating circumstances." *Scott,* 58 F.Supp.2d at 783 (quoting *Buell,* 22 Ohio St.3d at 136, 489 N.E.2d at 807).

Having reviewed this matter, the Court finds Petitioner's eleventh claim to be without merit.

### K. *Petitioner's Twelfth Ground For Relief: Claim 12*

**The Ohio Supreme Court's Failure To Consider Viable Mitigating Circumstances Violated Smith's Rights To Effective Assistance Of Counsel, Due Process, Equal Protection, And Against Cruel And Unusual Punishment, As Guaranteed By The Sixth, Eighth, And Fourteenth Amendments To The United States Constitution (doc. 46).**

#### 1. *Claim 12 Is Ripe For Federal Habeas Review*

Claim 12 was asserted in Petitioner's petition for rehearing before the Ohio Supreme Court as Issue Number Two. It was also asserted at the trial court in post-conviction proceedings as the second claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Respondent does not argue that Petitioner's twelfth claim is procedurally defaulted and only objected to the merits of the claim (doc. 47). Petitioner asserts that the Respondent has waived any procedural defenses he may have possessed by ad-

dressing the merits of claim 12. *See Lawrence,* 31 F.3d at 666; *Gilmore,* 860 F.Supp. at 1293. Having reviewed the record, the Court finds that claim 12 is ripe for federal habeas review.

#### 2. *Claim 12 Is Without Merit*

Petitioner next contends that the Ohio Supreme Court's failure to consider mitigating evidence arose during the discussion of Petitioner's background and upbringing as mitigating evidence (doc. 46). Specifically, Petitioner asserts that the Ohio Supreme Court found, "[w]hile unfortunate, Petitioner's upbringing did not result in a mental disease or defect, as opposed to a character defect" (doc. 46). *Smith,* 61 Ohio St.3d at 297, 574 N.E.2d at 521. Petitioner submits that it is unnecessary that his upbringing be determined to have caused a mental disease or defect before it may be considered as a viable mitigating evidence. Petitioner argues that he was prejudiced because the court's failure to consider viable mitigating evidence improperly skewed the Ohio Supreme Court's re-weighing of the factors in favor of death.

The Court finds that Petitioner's contention is unwarranted, unfair, and ultimately without merit. The Ohio Supreme Court stated that, "[a]s to significant 'other factors,' we recognize Smith's deprived childhood, flawed upbringing, character defects, and drug and alcohol dependency as mitigating [factors]." *Id.* at 297, 574 N.E.2d at 521. In addition, there are several other instances throughout the Ohio Supreme Court's analysis when the issue of Petitioner's "atrocious childhood" is referenced and taken into account by the court. *See Id.* at 294–97, 574 N.E.2d at 519–21.

The central focus of Petitioner's contention is that the Ohio Supreme Court did not consider his less than desirable upbringing. However, as indicated above, the Ohio Supreme Court explicitly recognized under Ohio Rev.Code § 2929.04(B)(7) Petitioner's drug depen-

dency, childhood, and various character defects as mitigating circumstances.

Having reviewed the record, this Court finds Petitioner's twelfth claim to be without merit.

## L. *Petitioner's Thirteenth Ground For Relief: Claim 13*

**Executing An Individual Who Is Borderline Mentally Retarded Violated Smith's Rights To Due Process, Equal Protection, And Against Cruel And Unusual Punishment, As Guaranteed By The Eighth And Fourteenth Amendments To The United States Constitution (doc. 46).**

### 1. *Claim 13 Is Ripe for Federal Habeas Review*

This claim was asserted on direct appeal before the Ohio Supreme Court as Proposition of Law Number Sixteen. It was also asserted at the trial court during post-conviction proceedings as the fifth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Respondent and Petitioner agree that claim 13 is ripe for federal habeas review. Having reviewed the record, this Court finds no procedural default exists as to this claim, and, thus, will review claim 13 on its merits.

### 2. *Claim 13 Is Without Merit*

 Petitioner alleges Dr. Schmidt-goessling testified that he has an IQ of about 70, which indicates borderline intelligence (doc. 46).[40] In addition, Petitioner asserts that he suffers from an organic brain disorder. Moreover, Petitioner pleads that it robs any moral force to execute an individual so intellectually impaired.

Petitioner fails to present a claim cognizable as a violation of the United States Constitution. *See Penry*, 492 U.S. at 308 n. 1, 109 S.Ct. 2934. First, Petitioner cannot demonstrate that he is retarded. At trial, testimony revealed that Petitioner's IQ had been measured on several occasions and that it never fell below 70. *Smith*, 61 Ohio St.3d at 295–96, 574 N.E.2d at 519–20 ("[T]he evidence does not show Smith to be mentally retarded, and, in fact, Smith tested in prison as showing an IQ of 91 in 1980 and 1986 or 1987."). An IQ of 70 represents the numeric threshold of mild retardation according to the United States Supreme Court's analysis of a similar claim presented in *Penry*. However, Petitioner's IQ scores have ranged from a borderline score of 70 to a normal score of 101. In *Penry*, the Court rejected the claim of a verifiably retarded individual who challenged his death sentence as unconstitutional. *Id.*, 492 U.S. at 340, 109 S.Ct. 2934 (finding that Penry had a mental age of a seven year old child). The Supreme Court held that:

> [m]ental retardation is a factor that may well lessen a defendant's culpability for

---

**40.** In *Penry v. Lynaugh*, 492 U.S. 302, 308 n. 8, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Supreme Court wrote:

> Persons who are mentally retarded are described as having "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period."

*Penry*, 492 U.S. at 308 n. 1, 109 S.Ct. 2934 (quoting H. Grossman, *The American Association on Mental Deficiency: Classification in Mental Retardation* (1st ed.1983)).

> To be classified as mentally retarded, a person generally must have an IQ of 70 or below. Under the classification system, individuals with IQ scores between 50–55 and 70 have "mild" retardation. Individuals with scores between 35–40 and 50–55 have "moderate" retardation. "Severely" retarded people have IQ scores between 20–25 and 35–40, and "profoundly" retarded people have scores below 20 or 25.

*Id.* (citations omitted).

a capital offense. But we cannot conclude today that the Eighth Amendment precludes the execution of any mentally retarded person of Penry's ability convicted of a capital offense simply by virtue of his or her mental retardation alone. So long as sentencers can consider and give effect to mitigating evidence of mental retardation in imposing sentence, an individualized determination whether death is the appropriate punishment can be made in each particular case. While a national consensus against execution of the mentally retarded may someday emerge reflecting the "evolving standards of decency that mark the progress of a maturing society," there is insufficient evidence of such a consensus today.

*Id.* at 340, 109 S.Ct. 2934.

In sum, Petitioner has failed in fact and in law to set forth a cognizable constitutional claim. Having reviewed this matter, the Court finds Petitioner's thirteenth claim is to be without merit.

### M. *Petitioner's Fourteenth And Fifteenth Grounds For Relief*

**Ohio Courts Fail To Fulfill Their Obligation Of Conducting A Meaningful Proportionality Review In Violation Of Smith's Rights To Due Process, Equal Protection, And Against Cruel And Unusual Punishment As Guaranteed By The Fifth, Eighth And Fourteenth Amendments (doc. 46).**

**Smith's Death Sentence Is Disproportionate When Compared To The Sentences Of Other Hamilton County Defendants In Violation Of The Eighth Amendment Prohibition Against Cruel And Unusual Punishment And The Due Process And Equal Protection Clauses Of The Fifth And Fourteenth Amendment (doc. 46).**

#### 1. *Claims 14 & 15 Are Ripe For Federal Habeas Review*

Claims 14 and 15 was raised on direct appeal before the Ohio Court of Appeals as the Eleventh and Twelfth Assignments of Error; and on direct appeal before the Ohio Supreme Court as Propositions of Law Numbers Fourteen and Fifteen. They were again asserted in Petitioner's petition for rehearing before the Ohio Supreme Court as Issue Number Three. This claim was subsequently asserted at the trial court during post-conviction proceedings as the twenty-second and twenty-seventh claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Respondent does not object to claims 14 and 15 on the basis of procedural default, but he does dispute the merits of these claims. Having reviewed the record, the Court also finds that Petitioner's fourteenth and fifteenth claims for relief are ripe for federal habeas review.

#### 2. *Claims 14 & 15 Are Without Merit*

In claim 14, Petitioner contends that Ohio Rev.Code § 2929.05(A) requires reviewing courts to *de novo* compare death sentences with sentences imposed in similar cases (doc. 46). However, Petitioner alleges that the state appellate courts failed to consider cases in which a death penalty was sought but not obtained. Petitioner argues that he was prejudiced because of the limited pool of cases that are reviewed by the state appellate courts in order to determine proportionality guarantees that are then applied to ensure that every death sentence will be determined to be proportional and not an inappropriate measure of punishment. Moreover, Petitioner argues that, in fact, under Ohio's current statutory scheme, no death sentence has ever been determined to be disproportionate, as opposed to inappropriate.

In claim 15, Petitioner asserts that, from 1982 though 1985, there were no fewer than ten defendants in Hamilton County

who were indicted and convicted of aggravated murder in the commission of aggravated robbery who were capitally eligible but not capitally charged (doc. 46, Ex. 11). Petitioner argues that, he was sentenced to death and at least ten others were not, along with perhaps many others whose names are not known at this time; yet all eleven have been convicted of acts rendering them equally eligible for the death penalty. Petitioner further argues that, after a review of these and similar cases in Ohio in which a defendant is death-eligible, a reasonable observer can only conclude that the death penalty is arbitrarily applied in general, and is specifically disproportionate in the instant case. Moreover, Petitioner alleges that he was prejudiced because he would never have been sentenced to death had a proportionality review been properly and actually conducted in his case.

In regards to claim 14, this Court finds that Ohio's scheme regarding state appellate review is rational and within constitutional requirements. The original sentencer effectively makes an appropriateness determination when it weighs aggravating and mitigating factors. In addition, Petitioner's assertions that the appellate courts' reviews are cursory are conclusory. "[W]hen a state appellate court expressly states that it has conducted a proportionality review, this court may not assume that the review was inadequate [or did not really occur] merely because the state court did not describe in writing all aspects of its review." *Scott*, 58 F.Supp.2d at 797–98.

Petitioner's underlying contention in regards to claim 15 is that he should not have been sentenced to death because others equally or more deserving of death did not receive the same ultimate punishment as Petitioner. In 1996, the Sixth Circuit rejected a similar argument in *McQueen*, 99 F.3d at 1333–34. Defendant McQueen, like Petitioner, alleged that his sentence was disproportionate to other sentences given for crimes of similar or greater magnitude. *Id.*, 99 F.3d at 1333–34. The Sixth Circuit rejected his disproportionality claim, finding that:

> There is no federal constitutional requirement that a state appellate court conduct a comparative proportionality review (citation omitted). Nonetheless, the Kentucky Supreme Court conducted such a review and found that the sentence was not disproportionate to the crime committed. McQueen provides no factual or legal basis for reversing this determination. McQueen partially misapprehends the issue. It is not simply whether other people have received the death penalty for crimes similar to McQueen's; it is also whether McQueen's death sentence is disproportionate to McQueen's crime. The death penalty is required by the Constitution to be an individualized sanction based on both the nature of the crime and the criminal. McQueen received such an assessment. That the determination was adverse does not make it unconstitutional.

*Id.*, 99 F.3d at 1333–34.

Having reviewed this matter, the Court finds that Petitioner's fourteenth and fifteenth claims are also without merit.

### N. *Petitioner's Sixteenth and Eighteenth Grounds For Relief*

**Errors By The Trial Court Denied Smith His Rights Of Due Process, Equal Protection And Against Cruel And Unusual Punishment As Guaranteed By The Fifth, Eighth And Fourteenth Amendments To The United States Constitution (doc. 46).**

**The Admission Of Shocking, Inflammatory, And Gruesome Photographs Of The Victim With Negligible, Probative Value Denied Smith The Right To A Fundamentally Fair Trial As Guaranteed By The Due Process Clause Of The Fourteenth Amendment (doc. 46).**

### 1. *Claims 16 and 18 Are Procedurally Defaulted*

 Respondent alleges that claims 16 and 18 are procedurally defaulted (doc. 47). Petitioner counters that *res judicata* is not an adequate and independent basis for a procedural default of these claims (doc. 51). Moreover, Petitioner contends that he did not have a fair and reasonable opportunity to present his claims for relief in state court.

Claim 16 was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the thirty-fifth and fortieth claims for relief (admission of clothing); the thirty-sixth claim for relief (alleged consideration of improper matters, lack of sequestration); and the forty-second and forty-sixth claims for relief (alleged lack of a complete record). It was again asserted on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Claim 18 was not raised on direct appeal. It was asserted at the trial court in post-conviction proceedings as the fifty-first claim for relief; on post-conviction proceedings as the fifty-first claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

By failing to raise the foregoing claims on direct appeal, Petitioner effectively waived those claims. The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata. State v. Cole,* 2 Ohio St.3d at 113, 443 N.E.2d at 169. Absent a showing of cause and prejudice, the procedural default rule set forth in *Wainwright,* 433 U.S. at 87, 97 S.Ct. 2497, precludes a federal district court from hearing an issue to which the state appellate courts applied a procedural bar. *See Maupin,* 785 F.2d at 135.

Having reviewed the record, this Court finds no cause or prejudice sufficient to excuse or justify Petitioner's failure to raise these claims on direct appeal. The Court recognizes that the cause and prejudice requirements may be overlooked if a petitioner presents an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray,* 477 U.S. at 496, 106 S.Ct. 2639. However, the Court finds that this Petitioner has not demonstrated or asserted a claim of factual innocence.

Furthermore, Petitioner has also not demonstrated that the failure of this Court to consider his sixteenth and eighteenth claims for relief will result in a "fundamental miscarriage of justice" in this matter. Accordingly, based on the foregoing application of the standards set forth in *Wainwright* and *Maupin,* the Court finds that claims 16 and 18 are procedurally defaulted. Nevertheless, we also find that even if the procedural default rule did not apply to these claims, claim 16 and 18 should also be denied as to their merits.

### 2. *Claims 16 & 18 Are Without Merit*

Petitioner alleges that the mitigation deliberations were conducted improperly, the three-judge panel was not sequestered, and improper matters were considered by the sentencing panel in violation of his due process rights (doc. 46). For example, Petitioner alleges that the bloody clothing found by police at his mother's home was actually worn by a friend of Petitioner, Greg Smith.[41] Petitioner explains any in-

---

41. However, the Ohio Supreme Court's statement of facts contradicts Petitioner:

[Bertha] Reid showed police clothing that her son had worn on September 26 and 27, which police seized. Subsequent forensic analysis revealed that Smith's shirt and shoes bore traces of human blood.... When police interviewed Smith, they also seized a pair of undershorts from him

consistency in the record by asserting that he was prejudiced by the trial court's failure to maintain a complete record of all proceedings. Thus, according to Petitioner, the Ohio Court of Appeals and the Ohio Supreme Court were unable to review the entire trial and mitigation proceedings. Petitioner contends that he was also prejudiced because the introduction into evidence of the blood-stained clothing inflamed the triers of fact. This alleged prejudice resulted in encouraging them to find a connection between the blood stains and Petitioner, which the evidence could not have otherwise established.

Upon our own independent review of the Ohio Court of Appeals's and Ohio Supreme Court's decisions and the record now before us, this Court cannot agree with Petitioner's characterization of the state court's analysis. Petitioner's assertions directly contradict the record that is now before this Court. The record clearly indicates that the clothing admitted into evidence belonged to, was worn by, or was found on the person of William Smith, and no one else. Therefore, Petitioner fails to assert any basis that would warrant a finding of fundamental prejudice as to claim 16.

In regards to claim 18, Petitioner asserts that since the cause of death of Ms. Bradford was not contested, the admission into evidence of "gruesome photographs" could only serve to raise emotions, inflame passions, and prejudice Petitioner in the eyes of the triers of fact (doc. 46). Petitioner contends that these "shocking pictures were introduced into evidence in order to create unfair prejudice, and served

as one of the State's emotional appeals for a sentence of death." The admission of these pictures, Petitioner argues, deprived him of due process and a fair trial.

 To succeed on claim 18, Petitioner must show that the state's evidentiary rulings violated due process. *See Dennis,* 68 F.Supp.2d at 892. Erroneous evidentiary rulings do not, in and of themselves, violate the Constitution. *See Lewis,* 497 U.S. at 780, 110 S.Ct. 3092 ("[F]ederal *habeas corpus* relief does not lie for errors of state law."). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Dennis,* 68 F.Supp.2d at 892 (citing *Estelle,* 502 U.S. at 68, 112 S.Ct. 475).

The ultimate question, then, is whether the claimed error was so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of the defendant's guilt. *See Lundy,* 888 F.2d at 473; *see also Lewis,* 497 U.S. at 780, 110 S.Ct. 3092;[42] *Donnelly,* 416 U.S. at 643, 94 S.Ct. 1868 (holding that, absent a specific constitutional violation, federal habeas review of trial error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

 Here, the admission of these photographic exhibits did not make Petitioner's trial unfair or in any way nullify the legitimacy of the substantial additional evidence of Petitioner's guilt. Thus, their admission did not violate Petitioner's constitutional rights.[43] *See, e.g., United*

---

stained with blood of the same type as [Mary] Bradford.
*Smith,* 61 Ohio St.3d at 287–286, 574 N.E.2d at 513–14. There was no evidence presented in the court's statement of facts that the clothing seized and tested belonged to anyone else but Petitioner.

**42.** The Supreme Court stated in *Jeffers:*
Where the issue is solely whether a state court has properly found the existence of a constitutionally narrowed aggravating circumstance, we have never required federal

courts to "peer majestically over the [state court's] shoulder so that [they] might second-guess its interpretation of facts that quite reasonably—perhaps even quite plainly—fit within the statutory language.
*Jeffers,* 497 U.S. at 780, 110 S.Ct. 3092.

**43.** Indeed, as observed by United States District Judge Bell in *Cooey v. Anderson,* 988 F.Supp. at 1095 (citing *United States v. Krol,* 374 F.2d 776 (7th Cir.1967)):
It is well settled that in a non-jury trial, the introduction of incompetent evidence does

*States v. Brady*, 595 F.2d 359, 361–62 (6th Cir.1979) (finding that photos were admissible under Rule 403, even though the photos displayed bank robbery victims lying in pools of their own blood); *see also United States v. Boise*, 916 F.2d 497, 504 (9th Cir.1990) (finding to be admissible the autopsy photo of murdered child); *Futch v. Dugger*, 874 F.2d 1483, 1487–88 (11th Cir.1989) (finding that the gory photos of crime victims are not generally a violation of a defendant's right to a fair trial); *Jones v. Butler*, 864 F.2d 348, 368 (5th Cir.1988) (finding that the photos of the bloody genitals of a rape-murder victim were not so inflammatory as to deny due process). Thus, we find Petitioner's assertions in regard to the photos admitted into trial are without merit.

Similarly, Petitioner fails to set forth any basis for a finding that the trial court's alleged failure to ensure a complete record of proceedings resulted in fundamental prejudice. In alternately addressing the merits of the claim during post-conviction proceedings, the Ohio Court of Appeals determined:

> In his fifth assignment of error, Smith argues that the trial court erred in dismissing his petition for post-conviction relief since the record was incomplete and incorrect. According to Smith's own brief, he filed a motion asking the trial court to hold the post-conviction action in abeyance pending a review of some newly transcribed trial transcripts. The trial court granted him time to file a supplemental brief explaining what effect the transcripts had on the merits of his existing causes of action. Instead, Smith filed a motion for an oral hearing regarding the incomplete and incorrect record of the trial proceedings.
>
> Nowhere in his brief filed in the present appeal does Smith provide any information concerning what might have occurred during the un-transcribed proceedings which would rise to the level of a constitutional violation of his rights such that his conviction is void or voidable. The mere assertion that certain hearings were not transcribed and that oversight alone "warrants reversal of Mr. Smith's conviction and death sentence" is a misstatement of the law. The petitioner must provide the court with evidence in order to show that a constitutional violation occurred which would warrant the voiding of his judgment or conviction.
>
> As Smith concedes in his brief, the trial court granted him time to file a supplemental brief to explain what effect the transcripts had on the merits of his causes of action. Without making such a showing, Smith has failed to raise a constitutional claim under R.C. § 2953.21 and the court properly dismissed his motion.

(doc. 47, Ex. II).

This Court finds no constitutional infirmities in the Ohio appellate courts's deference to the superior legal abilities of a judicial panel. *See Post*, 32 Ohio St.3d at 384, 513 N.E.2d at 759 (citing *State v. White*, 15 Ohio St.2d 146, 239 N.E.2d 65 (1968)) (finding that great deference is to be given to the findings and deliberations of a judicial panel, as opposed to a jury of lay-persons under the same or similar circumstances). Having reviewed this matter, the Court finds Petitioner's sixteenth and eighteenth claims to be without merit.

### O. *Petitioner's Seventeenth Ground For Relief: Claim 17*

**Smith's Sentences Are Invalid Due To The Mandatory Submission Of A Mental Evaluation In Violation Of His Rights To Counsel, Due Process, Equal Protection, Against Self Incrimination, And Cruel And Unusual**

---

not require a reversal in the absence of an affirmative showing of prejudice. The presumption is that the improper testimonial evidence, taken under objection, was given no weight by the trial judge and the court considered only properly admitted and relevant evidence in rendering its decision. *Id.*, 988 F.Supp. at 1095.

Punishment Under The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution (doc. 46).

### 1. Claim 17 Is Procedurally Defaulted

██ Respondent alleges that claim 17 is procedurally defaulted (doc. 47). Petitioner counters that *res judicata* is not an adequate and independent basis for a procedural default of this claim (doc. 51). Moreover, Petitioner contends that he did not have a fair and reasonable opportunity to present his claim for relief in state court.

Claim 17 was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the fourteenth claim for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

By failing to raise the foregoing claim on direct appeal, Petitioner effectively waived that claim. The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata*. *Cole*, 2 Ohio St.3d at 113, 443 N.E.2d at 169. Absent a showing of cause and prejudice, the procedural default rule set forth in *Wainwright*, 433 U.S. at 87, 97 S.Ct. 2497, precludes a federal district court from hearing an issue to which the state appellate courts applied a procedural bar. *See Maupin*, 785 F.2d at 135.

Having reviewed the record, this Court finds no cause or prejudice sufficient to excuse or justify Petitioner's failure to raise this claim on direct appeal. The Court recognizes that the cause and prejudice requirements may be overlooked if a petitioner presents an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 496, 106 S.Ct. 2639. However, the Court finds that this Petitioner has not demonstrated or asserted a claim of factual innocence.

Furthermore, Petitioner has also not demonstrated that the failure of this Court to consider his seventeenth claim for relief will result in a "fundamental miscarriage of justice" in this matter. Accordingly, based on the foregoing application of the standards set forth in *Wainwright* and *Maupin*, the Court finds that claim 17 is procedurally defaulted. Nevertheless, we also find that even if the procedural default rule did not apply to this claim, claim 17 should also be denied as to its merits.

### 2. Claim 17 Is Without Merit

██ Petitioner asserts that Ohio Rev. Code § 2929.03(D)(1) mandates that the findings of a mental examination and presentence report must be furnished to the trial court, the jury and the prosecutor, and any information learned about Petitioner could be used against him at the mitigation phase of the proceedings (doc. 46). Petitioner contends that he was prejudiced by the application of Ohio Rev.Code § 2929.03(D)(1) to his circumstances because it ultimately resulted in the sentencer receiving unreliable information concerning him, which in turn resulted in an unreliable death verdict. Thus, Petitioner argues, Ohio Rev.Code § 2929.03(D)(1) is unconstitutional on its face and is in direct violation of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Ohio Rev.Code § 2929.03(D)(1) (1999) provides, in pertinent part:

A pre-sentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or the offender's counsel for use under this division. The court and the trial jury, if the offender was tried by a jury, shall consider any report pre-

pared pursuant to this provision ... and that is relevant to the aggravating circumstances the offender was found guilty of committing. . . .

*Id.*

In *Ake,* the Supreme Court held that an indigent defendant was entitled under the due process clause to *expert psychiatric assistance* where a defendant's *sanity* is at issue. *Id.,* 470 U.S. at 83, 105 S.Ct. 1087 (emphasis added). The Supreme Court further held that a defendant did not have "a constitutional right to choose a psychiatrist of his personal liking. . . ." *Id.* The Supreme Court expressed concern that the indigent defendant have access to a "competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense." *Id.*

The Supreme Court's holding in *Ake* arises from its earlier holding that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); *see also Douglas v. California,* 372 U.S. 353, 357–58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (finding that the state must ensure that a defendant has a meaningful opportunity to present his defense); *Griffin v. Illinois,* 351 U.S. 12, 19–20, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (finding that the state must furnish indigent defendant with a copy of the trial's transcript).

The Supreme Court in *Ake* expanded the definition of the "basic tools" that the state should furnish to a defendant to include a psychiatrist for an indigent defendant where sanity is a significant factor at trial. *Id.,* 470 U.S. at 83, 105 S.Ct. 1087. The *Ake* Court found that "a criminal trial is fundamentally unfair if the state proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the buildings

of an effective defense." *Id.* at 77, 105 S.Ct. 1087.

In the case at bar, Petitioner's pretrial mental examination was prepared and submitted by Dr. Schmidtgoessling as provided by the state statute. Petitioner cannot direct the Court's attention to any authority in support of his argument that he had a constitutional right to prevent its consideration by the three-judge panel. Although Petitioner cites frequently to *Ake,* as previously noted, *Ake* does not support Petitioner's proposition. *Ake* holds that an indigent defendant, such as Petitioner, was entitled to a court-appointed psychiatrist *only* when his sanity was an issue at trial. *Id.* at 83, 105 S.Ct. 1087. Nonetheless, the trial court did provide to Petitioner the services of a *psychologist,* Dr. Schmidtgoessling, to aid in his defense. Petitioner received all the due process that he was entitled to in relation to this claim. The fact that the statute also dictated that the trier of fact, the sentencer, and the prosecution get copies of the same report that was requested and furnished to Petitioner does not establish a cognizable constitutional violation that requires granting Petitioner's writ.

Having reviewed this matter, this Court finds that Claim 17 is without merit.

### P. *Petitioner's Nineteenth Ground For Relief: Claim 19*

**Ohio And Hamilton County Have Deprived Smith Of A Meaningful Opportunity To Collaterally Challenge His Convictions And Death Sentences Violating His Rights To Due Process And Equal Protection As Guaranteed By The Fifth And Fourteenth Amendments (doc. 46).**

#### 1. *Claim 19 Is Ripe For Federal Habeas Review*

Claim 19 claim was asserted in substance during Petitioner's post-conviction appeal before the Ohio Court of Appeals as Assignments of Error Numbers One through Five, Seven, and Eight. It was

again asserted on post-conviction appeal before the Ohio Supreme Court as Propositions of Law Numbers One through Six, Eight, and Nine.

Respondent does not assert that claim 19 is procedurally defaulted and only objects as to its merits. Having reviewed the record, this Court finds that claim 19 is ripe for federal habeas review.

### 2. *Claim 19 Is Without Merit*

Petitioner next alleges that the Hamilton County Prosecutor's Office and the Hamilton County Common Pleas Court have adopted policies and procedures designed to summarily dispose of all capital, state, post-conviction petitions filed in Hamilton County, Ohio (doc. 46). Furthermore, Petitioner alleges that no relief has ever been granted in a death penalty post-conviction case under the present system. Moreover, Petitioner asserts that, neither the Ohio Courts of Appeals nor the Ohio Supreme Court has ever reversed on the merits a death penalty post-conviction appeal.

Nonetheless, Petitioner has failed to present a claim cognizable in federal habeas corpus. In *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir.1986), the Sixth Circuit, relying on *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), rejected a claim that state post-conviction proceedings could be challenged in a federal *habeas corpus* petition:

> Our conclusion that *habeas corpus* is not applicable to Kirby is bolstered by the decisions of other circuits facing the question of whether *habeas corpus* can be used to challenge state post-conviction proceedings. These courts have concluded, in agreement with the *Preiser* analysis, that the writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings, such as Kirby claims here, because the claims address collateral matters and not the un-

derlying state conviction giving rise to the prisoner's incarceration.

*Kirby,* 794 F.2d at 247.

The Sixth Circuit has also relied on the decision of the Eighth Circuit in *Williams v. Missouri,* 640 F.2d 140, 144 (8th Cir. 1981), which held that errors in state post-conviction proceedings did not set forth errors that were recognizable in a petition for federal *habeas corpus* relief:

> Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal *habeas corpus* relief since appellant's claim here represents an attack on a proceeding collateral to the detention of appellant and on the detention itself, which we have found to be lawful.

*Id.*

■ Respondent asserts, and we agree, that errors in post-conviction proceedings are not cognizable in federal *habeas corpus*. Generally, pursuant to Title 28 U.S.C. § 2254(a), *habeas corpus* is available to a state prisoner on the ground that he or she is in custody in violation of the Constitution or laws or treaties of the United States. Thus, the essence of a petition for *habeas corpus* relief is that it is "an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from the illegal custody." *Preiser,* 411 U.S. at 484, 93 S.Ct. 1827. We find that Petitioner's assertions in this case, namely that his post-conviction proceedings were meaningless, is merely a claim that the state post-conviction proceeding was erroneous in the manner it dealt with his case. However, such a claim of error cannot serve as a basis for federal *habeas corpus* relief. *See, e.g., Kirby,* 794 F.2d at 247–48; *accord Williams–Bey v. Trickey,* 894 F.2d 314, 317 (8th Cir.1990) (indicating that § 2254 does not authorize federal courts to review the infirmities in a state post-conviction relief proceeding); *Bryant v. Maryland,* 848 F.2d 492, 493 (4th Cir. 1988); *Vail v. Procunier,* 747 F.2d 277, 278 (5th Cir.1984) ("Infirmities in state *habeas*

*corpus* proceedings do not constitute grounds for federal habeas relief."); *Mitchell v. Wyrick,* 727 F.2d 773, 774 (8th Cir.1984); *Williams v. Missouri,* 640 F.2d 140, 144 (8th Cir.1981) ("Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal *habeas corpus* relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself."); *Cornell v. Maryland,* 396 F.Supp. 1092, 1094 n. 3 (D.Md.1975); *Stokley v. Maryland,* 301 F.Supp. 653, 657 (D.Md.1969).

The *habeas corpus* petition must directly dispute the fact or duration of the confinement. *Kirby,* 794 F.2d at 248 (declining to allow the scope of the writ of *habeas corpus* to reach complaints about the deficiencies in state post-conviction proceedings). This claim does not directly dispute the fact or duration of Petitioner's confinement, and, thus, it too is without merit. Accordingly, we find that any errors that Petitioner asserts occurred in his state post-conviction proceedings are not amendable to federal habeas relief. Therefore, Petitioner's claim that he was denied a fair review in state court of his petition for post-conviction relief is not a cognizable claim for a writ of *habeas corpus.*

Having reviewed this matter, the Court finds Petitioner's nineteenth claim to be without merit.

### Q. *Petitioner's Twentieth Ground For Relief: Claim 20*

**Smith Was Deprived Of The Effective Assistance Of Counsel On His Direct Appeals As Of Right In Violation Of The Sixth And Fourteenth Amendment (doc. 46).**

#### 1. *Claim 20 Is Ripe For Federal Habeas Review*

Respondent alleges that Petitioner has procedurally defaulted his ineffective assistance of appellate counsel claims because Petitioner failed to timely file a Motion to Reconsider or a *Murnahan* application with the Hamilton County Court of Appeals (doc. 47). Petitioner counters that his were properly and timely presented to the Ohio Supreme Court and were not procedurally defaulted (doc. 51).

A review of the record indicates that claim 20 was initially asserted on direct appeal in Petitioner's Application for Delayed Reconsideration before the Ohio Court of Appeals, which was initially filed on June 3, 1993. The Ohio Court of Appeals rejected Petitioner's Application as untimely. Then on December 15, 1993, the Ohio Supreme Court affirmed the judgment of the court of appeals and rejected Petitioner's Propositions of Law Numbers One and Two. Having reviewed the record, this Court finds that Petitioner has not procedurally defaulted claim 20 for the following reasons.

First, as earlier stated, Petitioner was represented by his trial counsel in his direct appeal to the Ohio Court of Appeals. In that circumstance, his appellate counsel could not have reasonably been expected to assert a claim of ineffective assistance of appellate counsel against themselves. *See State v. Cole,* 2 Ohio St.3d at 113, 443 N.E.2d at 169. Consequently, Petitioner's appellate counsel could not have asserted an ineffective appellate counsel claim because the state appellate courts restricted them from raising their own ineffectiveness due to untimeliness.

Second, Petitioner filed his Motion for Reconsideration in the Ohio Supreme Court alleging that his counsel was ineffective for failing to allege thirty-eight (38) propositions of law. Petitioner submitted abridged briefing in support of each proposition of law. The court's entry denying the motion read:

This cause came on for further consideration upon appellant's request for delayed reinstatement. Upon consideration thereof, IT IS ORDERED by the court that the motion for delayed rein-

statement be, and the same is, hereby denied.

(doc. 46, Ex. GGG).

Petitioner was represented by Dale Schmidt and Robert Ranz during his capital trial (docs. 47 & 51). Messrs. Schmidt and Ranz continued their representation of Petitioner before the Ohio Court of Appeals in Petitioner's direct appeal as a matter of right to that same appellate court. In reviewing Petitioner's direct appeal to the Ohio Court of Appeals, it is apparent that counsel failed to raise their own ineffectiveness on appeal. In *Cole*, the Ohio Supreme Court held:

> Where defendant, represented by *new counsel* upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without evidence dehors the record, *res judicata* is a proper basis for dismissing defendant's petition for post-conviction relief.

*Id.*, 2 Ohio St.3d at 114, 443 N.E.2d at 171 (citing *Hester*, 45 Ohio St.2d at 74, 341 N.E.2d at 307) (emphasis added).

Nonetheless, one can inversely reason that a defendant, who is represented by his trial counsel during his direct appeal, cannot raise an ineffective assistance of counsel claim in his post-conviction relief without fearing the imposition of *res judicata*. The *Cole* court also recognized that "[s]ince our pronouncements in *State v. Perry*, this court and several lower courts have recognized exceptions to the absolute application of the doctrine of *res judicata* in proceedings for post-conviction relief where ineffective assistance of counsel is claimed." *Id.* at 113 (citing *Carter*, 36 Ohio Misc. at 173, 304 N.E.2d at 417); *see also Hester*, 45 Ohio St.2d at 71, 341 N.E.2d at 304 n. 12 (citing *Carter*, 36 Ohio Misc. at 173, 304 N.E.2d at 417). One of the exceptions was a defendant who was represented on his direct appeal by his trial counsel. *See State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975).

The reason for the *Cole* court's analysis was because "counsel cannot realistically be expected to argue his own incompetence." *Carter*, 36 Ohio Misc. at 173, 304 N.E.2d at 417; *see also Robinson v. Norris*, 60 F.3d 457, 459–60 (8th Cir.1995); *Ciak v. United States*, 59 F.3d 296, 304–05 (2nd Cir.1995); *United States v. Galloway*, 56 F.3d 1239, 1241 (10th Cir.1995). Moreover, other federal courts have recognized the *Cole* exception to the application of *res judicata* for ineffective assistance of counsel. *See Terrell v. Morris*, 493 U.S. 1, 2–3, 110 S.Ct. 4, 107 L.Ed.2d 1 (1989) (recognizing that *Cole* provided guidance as to when *res judicata* would bar the consideration of ineffective assistance of counsel claims initially raised in a post-conviction petition); *Strickland v. Marshall*, 632 F.Supp. 590, 601 (S.D.Ohio 1986) (finding that a claim for ineffective assistance of counsel "could have been raised on direct appeal, because defendant had new counsel for the latter proceedings).

Elizabeth Agar undertook Petitioner's representation during Smith's direct appeal to the Ohio Supreme Court (docs. 47 & 51). However, the fact that Petitioner was represented by new counsel in his direct appeal to the Ohio Supreme Court does not effect the above analysis. First, we note that the Ohio Supreme Court will not consider federal constitutional claims that have not been initially presented to the court of appeals. *Williams*, 51 Ohio St.2d at 112, 364 N.E.2d 1364. In fact, the Ohio Supreme Court refused to consider Petitioner's ineffective assistance of appellate counsel claim because Petitioner had not previously presented the constitutional claim to the appeals court. *Smith*, 61 Ohio St.3d at 293–94 574 N.E.2d at 518–19. This appears to be a sort of "Catch 22" in which Petitioner was faced with a lose-lose situation due to the simple fact that: (1) it was totally unrealistic and unreasonable to expect Mr Schmidt and Mr. Ranz to argue their own ineffectiveness, and (2) by the time Petitioner had new appellate counsel (i.e., Ms. Agar), she was restricted by the Ohio Supreme Court in asserting previous

appellate and/or trial counsel's ineffectiveness.

Thus, a post-conviction petition is the only appropriate remedy for asserting ineffective assistance of appellate counsel claims when a defendant is represented by his trial counsel in his direct appeal to the court of appeals and regardless of a change of counsel in an appeal to the Ohio Supreme Court.

Having reviewed this matter, and for the sake of brevity, this Court finds for many of the same reasons that we mentioned in our discussion of Petitioner's claim of ineffective assistance of trial counsel (claim three) that Petitioner's claim of ineffective assistance of appellate counsel should also be reviewed on its merits. Having found that Petitioner's twentieth claim is not procedurally defaulted and is ripe for federal habeas review, this Court must now review the merits of claim 20.

### 2. *Claim 20 Is Without Merit*

Petitioner contends that his appellate counsel did not exercise professional judgment in presenting his direct appeals to the Ohio appellate courts (doc. 46). In addition, Petitioner contends that his appellate counsel unreasonably failed to raise numerous meritorious issues, apparent on the face of the record, that he alleges would have resulted in the reversal of his capital conviction and/or sentences.

 A defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts,* 469 U.S. at 396, 105 S.Ct. 830. The two-part test enunciated in *Strickland,*[44] is also applicable to claims of ineffective assistance of appellate counsel. Petitioner must first show that his appellate counsel's performance was deficient. Next, Petitioner must show that the deficient performance so prejudiced the defense that the proceedings were unfair and the result unreliable. *Scott,* 58

F.Supp.2d at 816 (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052). However, an appellant has no constitutional right to have every non-frivolous issue raised on appeal. *Jones v. Barnes,* 463 U.S. 745, 750, 103 S.Ct. 3308 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. *Perry,* 908 F.2d at 59. Moreover, an attorney is not required to present an argument on appeal for which there is no good-faith factual support in order to avoid a charge of ineffective representation. *Scott,* 58 F.Supp.2d at 816 (citing *Krist v. Foltz,* 804 F.2d 944, 946–47 (6th Cir.1986)).

 This Court believes that, in capital cases, appellate counsel should approach the traditional process of winnowing out claims with extreme caution. *See Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ("We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed."); *see also Barnes,* 463 U.S. at 751–52, 103 S.Ct. 3308. This does not mean that counsel on appeal should raise frivolous issues that are clearly without merit.

 Petitioner's basic contention is that his appellate counsel were ineffective because they did not assert all possible issues on his behalf. The cases decided by the Sixth Circuit on the issue of ineffective assistance of appellate counsel suggest the following considerations that ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious"?

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

---

44. In order to succeed on this claim, Petitioner must "show both that his counsel's performance 'fell below an objective reasonable-

ness' and that he was prejudiced as a result." *Glenn,* 71 F.3d at 1206 (quoting *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052).

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the petitioner and appellate counsel meet and go over the possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

See *Mapes v. Coyle,* 171 F.3d 408, 427–28 (6th Cir.1999).

Applying this analysis to Petitioner's case, it appears that the answers to most, if not all, of these questions would not be favorable to Petitioner. Furthermore, Petitioner has not demonstrated sufficient prejudice as to any particular answer that may be construed in his favor. Petitioner has not come close to showing that his appellate counsel was ineffective. Petitioner asserts that his counsel's choices not to raise certain issues on appeal was deficient, but Petitioner does not explain how his counsel's judgment was objectively unreasonable, and the Court finds that it was not. In addition, Petitioner has not ·set forth any basis for a determination that a particular issue or alleged error not raised by his appellate counsel was stronger than the issues or alleged errors that were raised. Furthermore, Petitioner has "failed to establish prejudice because he has not shown that the direct appeal of [those] issue[s] [that appellate counsel did not raise] would likely have been successful." *Leggett,* No. 96–3392, 101 F.3d 702, 1996 WL 665580, at *2.

We need not review in detail each of Petitioner's arguments related to his ineffective assistance of appellate counsel claim. The actions of counsel, examined under *Strickland,* are found to be largely attributable to strategy and legal judgment, therefore; it is inappropriate for us to second-guess the outcome of such decisions. Furthermore, Petitioner has failed to demonstrate that his appellate counsel were ineffective. More importantly, even if all of Petitioner's allegations of ineffective appellate counsel had some basis in merit, this Court finds that Petitioner has also utterly failed to satisfy the "prejudice" element of *Strickland,* by showing a "reasonable probability" that the outcome of the appeal would have differed "but for" appellate counsel's actions. Therefore, we find that Petitioner received effective assistance of appellate counsel under the *Strickland* standard.

Having reviewed this matter, the Court also finds that, in the absence of objectively unreasonable appellate representation and resulting prejudice, claim 20 is also without merit.

### R. *Petitioner's Twenty–First Ground For Relief: Claim 21*

**Petitioner Smith Was Represented By One Attorney In The Ohio Supreme Court Which Denied Petitioner His Rights To Counsel, Effective Assistance Of Counsel, Due Process, Equal Protection, And Against Cruel And Unusual Punishment As Guaranteed By The Sixth, Eighth, And Fourteenth Amendments To United States Constitution (doc. 46).**

#### 1. *Claim 21 Is Procedurally Defaulted*

Respondent alleges that claim 21 was not raised in any state court proceeding and is therefore procedurally defaulted (doc. 47). Petitioner asserts that the Respondent, by going to the merits of claim 21, waived any procedural defenses he may have possessed (doc. 51). *See Armon-*

*trout,* 31 F.3d at 666; *Gilmore,* 860 F.Supp. at 1293. Therefore, Petitioner argues, this Court must address the merits of the above claim.

The Court does not find Petitioner's argument persuasive. The Supreme Court in *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), noted that:

> [a] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

*Id.* 489 U.S. at 264 n. 10, 109 S.Ct. 1038.

■ The same rationale holds true for the Respondent as well. This Court therefore holds that Respondent has not waived his assertion that this claim is procedurally barred when he in the alternative addresses the asserted lack of merit in Petitioner's claim as well. *See Coe v. Bell,* 161 F.3d 320, 330 (6th Cir.1998).

■ By failing to raise the foregoing claim on direct appeal, Petitioner effectively waived that claim. The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata. Cole,* 2 Ohio St.3d at 113, 443 N.E.2d 169. Absent a showing of cause and prejudice, the procedural default rule set forth in *Wainwright,* 433 U.S. at 87, 97 S.Ct. 2497, precludes a federal district court from hearing an issue to which the state appellate courts applied a procedural bar. *See Maupin,* 785 F.2d at 135.

Having reviewed the record, this Court finds no cause or prejudice sufficient to excuse or justify Petitioner's failure to raise this claim on direct appeal. The Court recognizes that the cause and preju-

dice requirements may be overlooked if a petitioner presents an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray,* 477 U.S. at 496, 106 S.Ct. 2639. However, the Court finds that this Petitioner has not demonstrated or asserted a claim of factual innocence.

Furthermore, Petitioner has also not demonstrated that the failure of this Court to consider his twenty-first claim for relief will result in a "fundamental miscarriage of justice" in this matter. Accordingly, based on the foregoing application of the standards set forth in *Wainwright* and *Maupin,* the Court finds that claim 21 is procedurally defaulted. Nevertheless, we also find that even if the procedural default rule did not apply to this claim, claim 21 should also be denied as to its merits.

### 2. *Claim 21 Is Without Merit*

■ Petitioner submits that Elizabeth Agar and another counsel originally represented him in his direct appeal to the Ohio Supreme Court (doc. 46). However, according to Petitioner, Ms. Agar's co-counsel removed herself from the case due to family problems, although a formal withdrawal motion had never been filed with the state's appellate court. Moreover, Petitioner asserts that Ms. Agar recognized at the time that Rule 65 [45] allegedly requires two attorneys to review death penalty appeals in the Ohio Supreme Court, but Ms. Agar never filed a motion requesting the assistance of another attorney to assist her on the appeal. Petitioner further alleges that having only one counsel in his direct appeal to the Ohio Supreme Court substantially prejudiced him.

The facts reveal that Ms. Agar never objected to the fact that she was not assigned another co-counsel to assist her in Petitioner's appeal. Furthermore, Peti-

---

**45.** *See* The Ohio Supreme Court Rules of Superintendence for the Court of Common Pleas.

tioner does not demonstrate that he was prejudiced by having only one counsel representing him before the Ohio Supreme Court. A more substantive showing of cause and prejudice is required before this Court may issue a writ under these circumstances.

Finally, whether Petitioner should have been provided two attorneys according to the Ohio rules of procedure is purely a question of state law which is not cognizable in federal *habeas* review. *See Pulley*, 465 U.S. at 41, 104 S.Ct. 871; *see also Hutchison*, 744 F.2d at 46 ("A federal court may not set aside a state court interpretation of state statutes."); *Rose v. Hodges*, 423 U.S. 19, 21–22, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975); *Rogers v. Peck*, 199 U.S. 425, 434, 26 S.Ct. 87, 50 L.Ed. 256 (1905). This Court will not set aside the state court's interpretation of its own statutes and rules of procedure, and the Court finds that Petitioner's claim raises a violation of state law for which federal habeas relief is unavailable. The Court notes that it is a necessary predicate for the granting of habeas relief "is a determination by the federal court that [petitioner's] custody violates the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 2254(a).

This Court finds that Petitioner was not deprived of any substantive or procedural right to which the law entitles him. Having reviewed this matter, we hereby conclude that, in the absence of objectively unreasonable representation and resulting prejudice, claim 21 is also without merit.

### S. *Petitioner's Twenty–Second Ground For Relief: Claims 22*

**Smith's Convictions And Sentences Are Unconstitutional Because The Ohio Death Penalty Scheme Violates The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution (doc. 46).**

### 1. *Claim 22 Is Ripe For Federal Habeas Review*

Claim 22 was raised on direct appeal before the Ohio Court of Appeals as the First and Sixth Assignments of Error; and on direct appeal before the Ohio Supreme Court as Propositions of Law Numbers Eleven and Twelve. It was again asserted at the trial court during post-conviction proceedings as the third, tenth, eleventh, thirteenth, seventeenth, and twentieth claims for relief; on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

Respondent does not assert any specific objections to claim 22 as being procedurally defaulted, but does object to claim 22 as to its merits. Having reviewed the record, this Court finds that claim 22 is ripe for federal habeas review.

### 2. *Claim 22 Is Without Merit*

Petitioner first argues that the Ohio death scheme is unconstitutional because it is not imposed in accordance with "evolving standards of decency" and is disproportionately exacted on African–Americans. Petitioner alleges that the uncontrolled discretion of prosecutors in the indictment decisionmaking process results in the death penalty having a racially disparate impact on African–Americans. Furthermore, Petitioner asserts that the death penalty does not deter others from committing crime. In essence, Petitioner contends that Ohio's statutory scheme does nothing more than degrade the dignity of human beings, especially African–Americans.

Petitioner proffers a study prepared by the office of the Ohio Public Defender (hereinafter, the "Ohio Report") in support of his claim that the death penalty scheme in Ohio has a racially disparate impact on African–Americans. For the purposes of the analysis below, the Court will assume that the statistical conclusions presented in

the Ohio Report are true and accurate (*see* docs. 46 & 51).

Petitioner alleges that, while African–Americans number less than twenty percent of Ohio's population, half of those on Ohio's death row are African–American. Petitioner also asserts that 54 percent of death row residents are minorities of some classification. Moreover, Petitioner contends that, while only two Caucasians were sentenced to Ohio's death row for killing African–Americans, over 43 African–Americans now sit on Ohio's death row for killing Caucasians. Petitioner further argues that Ohio's statistical disparity in sentencing according to the race of the victim is "tragically consistent with the national findings of a 1990 General Accounting Office Study" on the same issue. Petitioner accuses the Ohio courts of failing to insure that such race discrimination does not play a role in capital sentencing.[46]

We note that similar studies have been offered by defendants in death penalty cases. In *McCleskey v. Kemp,* a seminal case in this vein, the United States Supreme Court addressed a similar study (hereinafter, "the *McCleskey* study") that purported to show a disparity in the imposition of the death penalty in Georgia based on the race of the murder victim and, to a lesser extent, the race of the defendant. *Id.,* 481 U.S. at 286, 107 S.Ct. 1756. The *McCleskey* study concluded that prosecutors sought the death penalty in a greater percentage of cases involving an African–American defendant and a Caucasian victim than in cases where the defendant and the victim were of the same race, or where the defendant was Caucasian and the victim was African–American. *Id.* at 286–87, 107 S.Ct. 1756. However, the Court rejected the *McCleskey* study's findings, holding that the study was insufficient to support an inference that any of the decision-makers in the defendant's case acted with discriminatory purpose.

*Id.* at 292, 107 S.Ct. 1756. The Court declared that, to prevail under the Equal Protection Clause, a defendant must prove that the decision-makers in his case acted with discriminatory purpose. *Id.* at 293–94, 107 S.Ct. 1756.

The *McCleskey* Court also rejected an analogous claim brought by the defendant that the state had violated the Equal Protection Clause by adopting a death penalty statute and allowing it to remain in force despite its allegedly discriminatory application. *Id.* at 297–98, 107 S.Ct. 1756. The Court concluded that for such a claim to prevail, the defendant would have to prove that the legislature enacted or maintained the death penalty statute because of an anticipated racially discriminatory effect. *Id.* at 298, 107 S.Ct. 1756.

■ In the instant case, the Ohio Report, standing alone, does not support an inference that racial considerations affected Petitioner's sentencing or the decision-makers in his case. Furthermore, Petitioner has proffered no evidence showing that the Ohio Legislature either enacted or maintains its death penalty statute to ensure a racially disparate impact on minorities.

The *McCleskey* Court also addressed the defendant's claim that racial considerations may have influenced capital sentencing decisions in violation of the Eighth Amendment. *Id.* at 311–12, 107 S.Ct. 1756. In its analysis of this claim, the Court in *McCleskey* concluded that, although the study at issue indicated a discrepancy that appeared to correlate with race, it did not demonstrate a constitutionally significant risk of racial bias affecting the Georgia capital sentencing process. *Id.* at 312–13, 107 S.Ct. 1756.

The Court would like to emphasize that, although Petitioner has not carried the day in regards to this claim, we believe that the statistics referred to by Petitioner in

---

46. Petitioner indicates that, at the time of filing his Traverse, 73 of the 141 death row inmates are African–American.

his Second Amended Petition reflect a sad state of affairs in regards to race and the criminal justice system. This Court is very much cognizant of the great racial divide that manifests itself in the application of the death penalty in our society. However, we are bound by the aforementioned decisions, and, thus we conclude that the statistics presented by Petitioner cannot support his claim for habeas relief in this action.

This Court therefore concludes that, for the same reasons cited by the Supreme Court in *McCleskey*, this sub-claim is without merit.

Next, Petitioner argues that the Ohio death penalty scheme violates the Constitution by requiring proof of aggravating circumstances in the guilt phases of capital trials. Specifically, Petitioner claims that Ohio Rev.Code § 2929.04(A)(7), which provides that a defendant is eligible for the death penalty if he commits murder during the commission of an aggravated robbery, duplicates or repeats an element of aggravated felony murder under Ohio Rev.Code § 2903.01(B). In opposition, Respondent proffers the case of *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), to demonstrate that the Supreme Court has rejected this argument. *Id.*, 484 U.S. at 244, 108 S.Ct. 546.

The Eighth Amendment requires that a "capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield*, 484 U.S. at 244, 108 S.Ct. 546 (quoting *Zant*, 462 U.S. at 877, 103 S.Ct. 2733). The *Lowenfield* Court stated that the requirement to narrow the class of capital offenses may be achieved in two ways:

> The legislature may itself narrow the definition of capital offenses ... so that the jury's finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing of the jury's find-

ings of aggravating circumstances at the penalty phase.

*Id.* at 246, 108 S.Ct. 546.

It is undisputed that Ohio Rev.Code §§ 2929.04(A)(7) and 2903.01(B) contain substantially similar language as that in *Lowenfield*, and the sentencing panel in this case made its findings of an aggravated circumstance at the guilt phase on the record in the state court trial proceeding.

However, Petitioner maintains that Ohio has not narrowed the class of capital offenses under either method described in *Lowenfield*. Petitioner argues that Ohio, unlike the State of Louisiana in *Lowenfield*, has not narrowed the class of capital offenses by narrowing the definition of the underlying offense because an Ohio jury may find a person guilty of aggravated murder and yet find that person ineligible for the death penalty. He further argues that the Ohio death penalty scheme does not comply with *Lowenfield* because the evidence supporting the aggravating circumstances is introduced at the guilt phase of the trial rather than the penalty phase. This Court, however, disagrees that these are appropriate grounds with which to distinguish *Lowenfield*.

In *Lowenfield*, the Supreme Court explained the role of aggravating circumstances in guiding the discretion of the sentencing body as follows:

> The use of "aggravating circumstances" is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by the jury's findings at either the sentencing phase of the trial or the guilt phase.

*Id.*, 484 U.S. at 244–45, 108 S.Ct. 546.

Thus, the Court's principal concern is whether the class of death-eligible persons is narrowed. Ohio Rev.Code § 2929.04(A)(7) performs this narrowing function by requiring that the aggravated

murder be committed while the offender was "committing ... kidnaping, rape, aggravated arson, aggravated robbery, or aggravated burglary." The fact that a person is found guilty of aggravated murder does not necessarily make that person death-eligible. A defendant found guilty of aggravated murder may, in certain circumstances, receive a penalty of life imprisonment only. Thus, we conclude that this claim is without merit.

Petitioner also argues that the Ohio death penalty scheme is unconstitutional because it imposes an impermissible risk of death on capital defendants who choose to exercise their right to a jury trial. However, this Court adopts the reasoning of the Ohio Supreme Court in *State v. Buell,* 22 Ohio St.3d 124, 138, 489 N.E.2d 795, 808–809 (1986), which dismissed a similar claim raised by the defendant in that case.

In addition, Petitioner contends that Ohio Rev.Code § 2929.03(D)(1), which provides that if a presentence investigation or mental examination is requested by the defendant then it shall be provided to the jury, violates his rights to due process and effective assistance of counsel. Specifically, Petitioner argues that giving this information to the jury forfeits his right to control and present a penalty phase defense as well as his right to counsel. The Court finds this argument unpersuasive. Under § 2929.03(D)(1), the court may not require a presentence report or mental examination unless it is requested by the defendant. While a defendant who requests such information takes the risk of exposing to the jury potentially incriminating evidence, this Court concludes, as did the court in *Buell,* and *Esparza,* that there is nothing constitutionally infirm in providing a defendant with this option. Therefore, the Court concludes that this claim is without merit.

The next argument Petitioner presents is that the Ohio death penalty scheme is unconstitutional because it does not provide adequate proportionality review. In addressing this argument, the Court first notes that a proportionality review of Petitioner's sentence is not required by the U.S. Constitution. *Pulley,* 465 U.S. at 44–45, 104 S.Ct. 871. Nevertheless, Ohio has chosen to require its appellate courts review a judgment in a capital case to determine whether a death sentence is appropriate. *See* Ohio Rev.Code § 2929.05(A). A reviewing court satisfies § 2929.05(A) by comparing the case under review to other cases where it imposed the death penalty. *State v. Steffen,* 31 Ohio St.3d 111, 123–25, 509 N.E.2d 383, 394–95 (1987). Here, Petitioner argues that the proportionality review in Ohio violates the Due Process Clause because the reviewing courts are not required to consider cases where a life sentence was imposed.

■ While the decision in *Pulley* was based on the Eighth Amendment, we conclude, for the same reasons, that the Due Process Clause is not violated where Ohio decides to limit its proportionality review to those cases where the death penalty has been imposed. At best, Petitioner's claim constitutes a challenge to the Ohio Supreme Court's interpretation and application of Ohio Rev.Code § 2929.05(A). A federal court, however, may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley,* 465 U.S. at 41, 104 S.Ct. 871; *Olsen v. McFaul,* 843 F.2d 918, 933 (6th Cir.1988) ("For excellent reasons, claims that a state erred in interpreting or applying its own criminal laws or procedural rules are almost always rejected as grounds for granting a writ of habeas corpus."). Consequently, this Court concludes that this claim is also without merit.

Furthermore, Petitioner contends that the fatal flaw of Ohio's mandatory death penalty statutes is that, without specific standards, the process of deciding who is to be sentenced to death is shielded from judicial review. Petitioner alleges that by failing to require the conscious desire to kill, or pre-mediation and deliberation, as the culpable mental state, Ohio Rev.Code

§§ 2903.01(B) and 2929.04(A)(7) run afoul of the federal and state constitutional guarantees of Due Process. Petitioner lists a whole myriad of other alleged flaws to the Ohio death penalty statutes and its enforcement in relation to him and as to all defendants. In particular, Petitioner argues that he was prejudiced when he was sentenced to death under this unconstitutional scheme that fails to ensure that arbitrary and discriminatory impositions of the death penalty will not occur.

■■■■■■ The Court finds that the aggravating circumstance for felony murder is not, contrary to Petitioner's suggestion, unconstitutionally vague. Petitioner fails to provide any sound argument as to why Ohio Rev.Code §§ 2903.01(B) and 2929.04(A)(7) [47] is in any way ambiguous or constitutionally vague. These provisions provide more than adequate guidance to the sentencer, and thus pass constitutional muster. *See Dennis,* 68 F.Supp.2d at 903; *see also Walton,* 497 U.S. at 654–55, 110 S.Ct. 3047. In addition, the United State Supreme Court does not require proof of intent to kill as a prerequisite to the imposition of capital punishment. *See Tison v. Arizona,* 481 U.S. 137, 157–58, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Moreover, the Supreme Court has not found that the United States Constitution requires any form of proportionality review, yet alone the type of review Petitioner seeks. *See Pulley,* 465 U.S. at 50–51, 104 S.Ct. 871

("There is no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it.").

Furthermore, although Ohio Rev.Code § 2929.03(D)(1) places the burden of production of evidence of mitigating factors on the defendant, the burden of proof that aggravating circumstances outweigh mitigating circumstances correctly remains with the state. The Supreme Court has clearly authorized this burden-shifting analysis.[48]

■■■■ Petitioner alleges that the Ohio capital punishment scheme allows for the imposition of the death penalty in an arbitrary and discriminatory manner, and Petitioner argues that, therefore, the scheme violates the protections mandated in *Furman v. Georgia,* 408 U.S. 238, 249, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny (doc. 46). *See Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Robinson v. State of California,* 370 U.S. at 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. For example, Petitioner cites to the uncontrolled discretion of prosecutors in the indictment process that allows for the arbitrary and discriminatory imposition of the death penalty.

Moreover, the United States Supreme Court has never found that prosecutorial discretion, in and of itself, diminishes the legitimacy of a capital punishment scheme.

---

**47.** Ohio Rev.Code § 2929.04(A)(7) provides for the aggravating circumstances for felony murder:

(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt: ....

(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnaping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

*Id.*

**48.** *See Walton,* 497 U.S. at 650, 110 S.Ct. 3047:

So long as a[s]tate's method of allocating the burdens of proof does not lessen the [s]tate's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

*Id.*

Indeed, as the Sixth Circuit has noted, discretion is inherent in the criminal justice system:

> It is well-settled that the procedural aspects of the administration of criminal justice abound with situations in which the exercise of discretion by a myriad of participants occupies a significant role in determining the destiny of an alleged offender.

*United States v. Talbot,* 825 F.2d 991, 999 (6th Cir.1987).

In addition, as set forth in an earlier discussion on the issue of alleged racial discrimination against Petitioner, the Sixth Circuit reaffirmed in *McQueen* that references to statistical studies or anomalies is insufficient to establish a claim for racial discrimination. *Id.,* 99 F.3d at 1333. In the case at hand, the data that Petitioner cites is nothing more than the same type of data already rejected by the United States Supreme Court in *McCleskey,* 481 U.S. at 286–87, 107 S.Ct. 1756.

Petitioner's remaining constitutional arguments are precluded by well-established United States Supreme Court precedents. *See Enmund,* 458 U.S. at 790–91, 102 S.Ct. 3368 (holding that no constitutional requirement mandates that a capital defendant commit murder with premeditation or deliberation); *Zant,* 462 U.S. at 876 n. 13, 103 S.Ct. 2733 (citing *Jurek,* 428 U.S. at 270, 96 S.Ct. 2950); *Briley,* 750 F.2d at 1244–45 (finding that a specific method of balancing aggravating against mitigating circumstances is not constitutionally required); *Walton,* 497 U.S. at 649–50, 110 S.Ct. 3047 (finding that a state is not prohibited from requiring that a capital defendant prove the existence of mitigating factors by a preponderance of the evidence); *Tison,* 481 U.S. at 153–54, 107 S.Ct. 1676 (holding that the death penalty may be constitutionally imposed where a conviction is based upon a felony-murder); *Gardner v. Florida,* 430 U.S. 349, 361, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (holding only that "the record on appeal [must] disclose to the reviewing court the consid-erations which motivated the death sentence," but it does not require that the trial court identify the precise mitigating factors it weighed).

Having reviewed this matter, the Court finds Petitioner's twenty-second claim to be without merit.

**T.** *Petitioner's Twenty–Third Ground For Relief: Claim 23*

**Execution By The Electric Chair Constitutes Cruel And Unusual Punishment Under The Eighth Amendment To The United States Constitution (doc. 46).**

**1.** *Claim 23 Is Procedurally Defaulted*

▮ Respondent alleges that claim 23 is procedurally defaulted due to the doctrine of *res judicata* (doc. 47). Petitioner counters that *res judicata* is not an adequate and independent basis for a procedural default of this claim. In addition, Petitioner argues that, because the State refused to address the merits of the claim, it has waived any defenses that it might have possessed (doc. 46). Petitioner also submits that he did not have a fair and reasonable opportunity to present claim 23 to the state courts.

Claim 23 was not raised on direct appeal. It was asserted at the trial court during post-conviction proceedings as the twentieth claim for relief, subparagraphs (D) and (E); on post-conviction appeal before the Ohio Court of Appeals as Assignment of Error Number Six; and on post-conviction appeal before the Ohio Supreme Court as Proposition of Law Number Seven.

By failing to raise the foregoing claim on direct appeal, Petitioner effectively waived that claim. The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata. Cole,* 2 Ohio St.3d at 113, 443 N.E.2d at 169. Absent a showing of cause and prejudice,

the procedural default rule set forth in *Wainwright*, 433 U.S. at 87, 97 S.Ct. 2497, precludes a federal district court from hearing an issue to which the state appellate courts applied a procedural bar. *See Maupin*, 785 F.2d at 135.

Having reviewed the record, this Court finds no cause or prejudice sufficient to excuse or justify Petitioner's failure to raise this claim on direct appeal. The Court recognizes that the cause and prejudice requirements may be overlooked if a petitioner presents an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 496, 106 S.Ct. 2639. However, the Court finds that this Petitioner has not demonstrated or asserted a claim of factual innocence.

Furthermore, Petitioner has not demonstrated that the failure of this Court to consider his twenty-third claim for relief will result in a "fundamental miscarriage of justice" in this matter. Accordingly, based on the foregoing application of the standards set forth in *Wainwright* and *Maupin*, the Court finds that claim 23 is procedurally defaulted. Nevertheless, we also find that even if the procedural default rule did not apply to this claim, claim 23 should also be denied as to its merits.

### 2. *Claim 23 Is Without Merit*

■ Petitioner alleges that the prohibition against cruel and unusual punishment is violated when the State executes an individual via the electric chair (doc. 46). Petitioner further contends that executions set socially sanctioned examples of, and provide an inducement to, violence, and, thus, do not serve any legitimate State purpose in decreasing the number of homicides. Moreover, Petitioner argues that there is no deterrent purpose served by executions that is not more effectively and more efficiently served by a sentence of life in prison.

We find Petitioner's assertions unpersuasive in light of federal case law to the contrary, such as *In re Kemmler*, 136 U.S. 436, 441, 10 S.Ct. 930, 34 L.Ed. 519 (1890), and *Campbell v. Wood*, 18 F.3d 662, 682 (9th Cir.1994), in which the federal courts have consistently upheld these methods of execution as being constitutional.[49] The Ohio Legislature has determined that its citizens continue to benefit from the availability of capital punishment. This Court will not second-guess this determination. *See Penry*, 492 U.S. at 331, 109 S.Ct. 2934 (noting that legislative acceptance is "the clearest and most reliable objective evidence" of community values); *see also Enmund*, 458 U.S. at 788–96, 102 S.Ct. 3368.

As for the barbarity of capital punishment, this Court necessarily defers to United States Supreme Court precedent. The Supreme Court has declared capital punishment constitutional, and, thus, found acceptable whatever barbarity that may be inherent in such a punishment. As the Northern District of Ohio stated, "[t]hough what constitutes cruel and unusual punishment will inevitably change with society's 'evolving standards of decency,' the Supreme Court stands as the final arbiter as to when such a change might occur with respect to capital punishment." *Dennis*, 68 F.Supp.2d at 905 (citing *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Furthermore, this Court concludes that Ohio's scheme of allowing Petitioner to choose between death by electrocution and death by lethal injection relieves any constitutional infirmities that may exist with electrocution alone. *See* Ohio Rev.Code § 2949.22(B). Petitioner does not argue that death by lethal injection is especially cruel and unusual. Thus, that option remains available to Petitioner.

**49.** *See, e.g., Sullivan v. Dugger*, 721 F.2d 719, 720 (11th Cir.1983) (electrocution); *Spinkellink v. Wainwright*, 578 F.2d 582, 616 (5th Cir.1978) (electrocution); *State v. Hinchey*, 181 Ariz. 307, 315, 890 P.2d 602, 610 (1995) (lethal injection); *Harrison v. State*, 644 N.E.2d 1243, 1258 (Ind.1995) (electrocution).

Having reviewed this matter, the Court finds Petitioner's twenty-third claim to be without merit.

### U. *Petitioner's Twenty–Fourth Ground For Relief: Claim 24*

**Smith Was Sentenced To Death In A County In Which African–Americans Were Under–Represented In The Pools From Which Smith's Grand Jury Was Selected, In Violation Of The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution (doc. 46).**

#### 1. *Claim 24 Is Procedurally Defaulted*

 Respondent contends that claim 24 is procedurally defaulted because it was not asserted in any state court proceeding and is barred due to the doctrine of *res judicata* (doc. 47). Petitioner counters that *res judicata* is not an adequate and independent basis for a procedural default of this claim. In addition, Petitioner asserts that Respondent waived its procedural bar arguments when he chose to address the merits of the claim (doc. 46). Petitioner also submits that he did not have a fair and reasonable opportunity to present claim 24 to the state courts.

By failing to raise claim 24 on direct appeal, Petitioner effectively waived this claim. The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata. Cole,* 2 Ohio St.3d at 113, 443 N.E.2d at 169. Absent a showing of cause and prejudice, the procedural default rule set forth in *Wainwright* 433 U.S. at 87, 97 S.Ct. 2497, precludes a federal district court from hearing an issue to which the state appellate courts applied a procedural bar. *See Maupin,* 785 F.2d at 135.

Having reviewed the record, this Court finds no cause or prejudice sufficient to excuse or justify Petitioner's failure to raise this claim on direct appeal. The Court recognizes that the cause and preju-

dice requirements may be overlooked if a petitioner presents an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray,* 477 U.S. at 496, 106 S.Ct. 2639. However, the Court finds that Petitioner has not demonstrated or asserted a claim of factual innocence.

Furthermore, Petitioner has not demonstrated that the failure of this Court to consider his twenty-fourth claim for relief will result in a "fundamental miscarriage of justice" in this matter. Accordingly, based on the foregoing application of the standards set forth in *Wainwright* and *Maupin,* the Court finds that claim 24 is procedurally defaulted. Nevertheless, we also find that even if the procedural default rule did not apply to this claim, claim 24 should also be denied as to its merits.

#### 2. *Claim 24 Is Without Merit*

 Petitioner's final claim asserts that African–Americans were under-represented in the pools from which Petitioner's grand jury was selected (doc. 46). Petitioner alleges that this was the result of under-representation. In addition, Petitioner alleges that a comparison of the jury pools from which Petitioner's grand jury was drawn and Hamilton County's African–American population, independently and collectively establishes a violation of Petitioner's rights that entitle him to habeas relief.

A violation of the United State Constitution only occurs when a defendant "is indicted by a grand jury from which members of a racial group purposely have been excluded." *Vasquez v. Hillery,* 474 U.S. 254, 262, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). The Sixth Circuit addressed the test for determining whether such a violation occurred in *Jefferson v. Morgan,* 962 F.2d 1185, 1188–89 (6th Cir.1992):

> In order to prove discrimination in the selection of grand jurors, a petitioner must show that the procedure employed

by the state resulted in a substantial under-representation of his race or of the identifiable group to which he belongs.[50] Specifically, to establish a prima facie case of discrimination, a petitioner must satisfy a three-part test. First, he must establish that the group excluded from the grand jury is one that is a recognizable, distinct class capable of being singled out for different treatment under the laws. Second, he must establish that the selection procedure used by the state to select grand juries is susceptible to abuse or is not racially neutral. Finally, he must establish the degree of under-representation occurring over a significant period of time by comparing the proportion of the excluded group in the total population to the proportion serving as grand jurors. Courts refer to this final part of the three-part test as the "rule of exclusion." The rationale behind the "rule of exclusion" is that if a disparity is sufficiently large over a significant period of time, then it is unlikely that the disparity is due solely to chance or to accident, and in the absence of evidence to the contrary, a court should conclude that racial or other class-related factors entered into the selection process. Once the petitioner has established a prima facie case, the burden shifts to the state to rebut the inference of intentional discrimination.

*Id.,* 962 F.2d at 1188–89 (citations omitted).

In the case at bar, Petitioner has not met the three-part test as explained in *Jefferson,* 962 F.2d at 1188–89, and his allegations of under-representation are insufficient to establish a constitutional violation. Having reviewed this matter, this Court finds Petitioner's twenty-fourth claim to be without merit.

## VIII. *THE COURT'S SUMMARY*

At its core, a petition for the writ of *habeas corpus* poses a simple question:

"Has the respondent detained the petitioner in violation of constitutional or federal law?" The answer to this question, however, is rarely as simple. When considering the petition of an individual sentenced to death, the answer becomes even more complex, for the penalty of error is greater than in any other circumstance in all of the law. In light of this complexity, a court must proceed cautiously and deliberately, as well-noted by then Chief Judge Merritt of the Sixth Circuit in his concurring opinion in *O'Guinn v. Dutton,* 88 F.3d at 1414 n. 1:

It is not the function of the federal courts to kowtow to the political passions of the day that decree that we supply only a swift execution without regard to whether the accused is guilty or received a fair trial. In the judicial arena, there is no traditional social value or constitutional principle requiring the rapid execution or extinction of human life. . . .

It is our job to make sure that the traditional principles of federalism are honored. It is our job to see that a life is not taken in the absence of a fair trial in which the constitutional rights granted to the accused are observed or to allow an execution while there remains a serious unanswered question about whether the accused is in fact guilty of the crime charged. The process of deliberation, reflection, trial, review, and the elimination of error and uncertainty takes time, including the time it takes to review new evidence when it becomes necessary. The traditional deliberative process must be fully complied with in order to insure that innocent life and the attributes of human dignity are preserved in the face of the biological passion and hostility in our species that lead us to kill each other without reason. If this traditional process of deliberation and reflection takes time, we must take the time. In light of the fallibility of

---

50. *See Castaneda v. Partida,* 430 U.S. at 494– 95, 97 S.Ct. 1272.

human judgment, it is better that even the life of a guilty man be spared for a few years while we make sure that we are not making another fatal mistake.

*Cooey*, 988 F.Supp. at 1100–01 (quoting *O'Guinn*, 88 F.3d at 1414 n. 1) (Merritt, J., concurring); *see also Cooey*, 988 F.Supp. at 1100.

Having heeded Judge Merritt's well-advised caution, this Court concludes that Petitioner is not being detained in violation of constitutional or federal law. For the reasons provided above, we also conclude that Petitioner's asserted claims are either procedurally defaulted, or, alternatively, are without any merit (doc. 46).

## IX. *CONCLUSION*

After painstakingly considering the arguments and issues presented in this action, the Court finds that Petitioner fails to show that he is in custody in violation of the Constitution or the laws or treaties of the United States. For the reasons detailed above, the Court generally concludes that the claims presented by Petitioner in his Second Amended Petition are either procedurally barred or lacking in merit. Therefore, we hereby DENY Petitioner's Second Amended Petition for a Writ of *Habeas Corpus* and DISMISS this action with prejudice. The Court also hereby GRANTS a stay of execution pending appeal. Furthermore, pursuant to the pre-AEDPA language of Title 28 U.S.C. § 2253, the Court ISSUES a certificate of probable cause.

SO ORDERED.